

**FILED**

Alvaro Quezada P-90436 B5-125up

Name and Prisoner/Booking Number

KERN VALLEY STATE PRISON (KVSP)

Place of Confinement

P.O. Box 5102

Mailing Address

Delano, CA 93216

City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

**JUN 0 1 2009**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

**RECEIVED**

JUN 0 1 2009

EASTERN DISTRICT COURT
BY DISTRICT OF CALIFORNIA
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

ALVARO QUEZADA,

(Full Name of Plaintiff)                    Plaintiff,

vs.

(1) A. HEDGPETH, WARDEN, AND 'OTHERS'

(Full Name of Defendant)

(2) _____

(3) _____

(4) _____

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 1:08-cv-01404-FRZ

(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint

☐ First Amended Complaint

☒ Second Amended Complaint

### A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:

    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983

    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

    ☒ Other: 42 USC § 1985(3), VENUE UNDER 28 USC § 1391(b).

2. Institution/city where violation occurred: KERN VALLEY STATE PRISON (from herein will be referred as KVSP).

**550/555**

1   5). N. GRANNIS,                    Position: The DLR's Chief Inmate Appeals Coordinator
                                                  for Sacramento.
2

3        At all times mentioned in this complaint, each individual defendant listed in this complaint
        defendants' 1 through 5 were acting under the color of State Law.
4
         All of the defendants' listed in this complaint 1 through 5 each of them, are also sued in
5       their individual capacities for the claims alleged and/or asserted in this complaint, and due to
        their intentional/deliberate acts of indifference that lead to plaintiff's 1st, 8th, and 14th amend-
6       ment rights to be violated be each individual defendant listed in this complaint, defendants'
        1 through 5.

7        Plaintiff would like to inform this Honorable Court that plaintiff went
        over the '15 ADDITIONAL PAGE LIMIT, BY TWO PAGES' that required the listing
8       of the Defendants'.  Plaintiff prays that this Court will not use this against
        plaintiff, where plaintiff is ignorant to the law and is attempting his best
9       to comply with this Courts orders/formats.

10  //

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1   2). E.G. FLORES, CAPTAIN;

2   3). R.W. NIPPER, CAPTAIN;

3   4). J.D. SOTO, CAPTAIN;

4   5). N. GRANNIS, CHIEF INMATE APPEALS COORDINATOR FOR THE DIRECTOR'S LEVEL REVIEW (FROM HEREIN WILL BE

5   REFERRED TO AS THE DLR).

6

7

8   //

9   //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

## B. DEFENDANTS

1. Name of first Defendant: A. HEDGPEIH _____ . The first Defendant is employed as:

   WARDEN _____ at KVSP

         (Position and Title)                                                     (Institution)

2. Name of second Defendant: E.G. FLORES _____ . The second Defendant is employed as:

   CUSTODY CAPTAIN OF CENTRAL OPERATIONS _____ at KVSP

         (Position and Title)                                                     (Institution)

3. Name of third Defendant: R.W. NIPPER _____ . The third Defendant is employed as:

   B-FACILITY CAPTAIN _____ at KVSP

         (Position and Title)                                                     (Institution)

4. Name of fourth Defendant: J.D. SOTO _____ . The fourth Defendant is employed as:

   B-FACILITY CAPTAIN _____ at KVSP

         (Position and Title)                                                     (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?      ☒ Yes      ☐ No

2. If yes, how many lawsuits have you filed? __1__ . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: ALVARO QUEZADA _____ v. A. HEDGPEIH et,al, _____
      2. Court and case number: 1:06-cv-01088-OWW-MWM-PC _____ .
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) PENDING _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

### COUNT I

1.  State the constitutional or other federal civil right that was violated: Defendants 1-5 engaged in a conspiracy to implement an animus RACE BASED lockdown that violated plaintiff's 14th amendment right.

2.  **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

☐ Basic necessities      ☐ Mail            ☐ Access to the court      ☐ Medical care

☐ Disciplinary proceedings    ☐ Property        ☐ Exercise of religion     ☐ Retaliation

☐ Excessive force by an officer   ☐ Threat to safety  ☒ Other: RACE BASED DISCRIMINATION.

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

1). Defendant 1) A. Hedgpeth, the Warden for KVSP, (from herein will be referred to as Def.1) Hedgpeth), where he authorized the implementation of an animus RACE BASED lockdown policy that targeted all Hispanic inmates, including plaintiff, from Jan. 4, 2007 through Aug. 22, 2007 that lead to the discrimination of plaintiff's constitutional rights. (A lockdown is a situation in which inmates are confined to their cells for 24 hrs. a day and are not permitted out to exercise, or participate in programming activities granted to them by Statute). 2). Def.1) Hedgpeth violated plaintiff's 14th Amendment right when he implemented these RACE BASED lockdown policies that subjected plaintiff to the same standard of punitive measures that was associated with this Hispanic Prison Gang that was under a criminal investigation, and on lockdown. 3). On Jan. 11, 2007 plaintiff/his cellmate were subjected to a Discriminatory Punitive cell search that was specifically targeting the Southern Hispanic Affiliates, on the behest of Def.1) Hedgpeth. 4). Plaintiff immediately filed a group appeal on Jan. 11, 2007 on behalf of plaintiff/his cellmate regarding this punitive cell search/willful affiliation to a Hispanic Prison Gang criminal investigation that plaintiff and his cellmate did not affiliate with, because we were classified as OTHERS/not as SOUTHERN HISPANICS. 5). Plaintiff asserts that the group appeal that was filed on Jan. 11, 2007 was willfully obstructed by Def.1) Hedgpeth's subordinates through their concerted conspiracy to willfully manipulate the screening process that ultimately obstructed this group appeal by placing it in limbo.

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Plaintiff was vindictively punished for being of Hispanic origin where Defendants' 1-5 all concertedly conspired to discriminate plaintiff for his RACE violating plaintiff's 14th amendment rights. Plaintiff was illegally confined for being of Hispanic origin, where he was subjected to harsher conditions of disciplinary confinement.

5.  **Administrative Remedies:**

a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                  ☒ Yes   ☐ No

b.  Did you submit a request for administrative relief on Count I?                ☒ Yes   ☐ No

c.  Did you appeal your request for relief on Count I to the highest level?          ☒ Yes   ☐ No

d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

_____.

3

6). On Jan. 11, 2007 plaintiff also immediately filed a handwritten constructive notice to Def.1)
Hedgpeth seeking redress from this discriminatory lockdown policy. Plaintiff informed Def.1) Hedgpeth
that he was implementing a PREFERENTIAL lockdown that was impermissible/unconstitutional. Def.1)
Hedgpeth was also provided with relevant chronos that established plaintiff's NON-AFFILIATION to
ANY PRISON GANG or GROUP, and plaintiff informed Def.1) Hedgpeth that plaintiff was a NON-AFFILIATED
OTHER who was housed with an OTHER.

7). On Feb. 22, 2007 plaintiff filed another Notice to Def.1) Hedgpeth, with an enclosed complaint
dated Feb. 5, 2007 seeking redress from the continued Discrimination Policy that was BASED ON RACE,
that continued to illegally confine plaintiff solely because plaintiff was of Hispanic Origin.

8). On March 1, 2007 plaintiff filed another group appeal regarding the continued practice of imple-
menting RACE BASED lockdowns/denying plaintiff to no outdoor exercise for being of Hispanic Origin.

9). On March 23, 2007 plaintiff received a written response dated March 19, 2007 by Def.1) Hedgpeth,
where he responded back to plaintiff's complaint dated Feb. 5, 2007 that was filed on Feb. 22, 2007.
Def.1) Hedgpeth refused to redress the illegal confinement issues that was confining plaintiff
because plaintiff was of HISPANIC ORIGIN.

10). On April 5, 2007 plaintiff received a response to plaintiff's filed Notice dated Jan. 11, 2007
that was filed to Def.1) Hedgpeth. Def.1) Hedgpeth refused to redress the PREFERENTIAL lockdown
policies that had racially discriminated plaintiff for being of HISPANIC DECENT.

11). On July 17, 2007 plaintiff filed another 602 appeal seeking redress to the continued illegal
confinement the was initially implemented since Jan. 4, 2007, by Def.1) Hedgpeth's RACE BASED policy.

12). On Aug. 3, 2007 plaintiff filed another Notice to Def.1) Hedgpeth, once again seeking redress
to the appeal that was initially filed on July 17, 2007, that was repeatedly being obstructed by
his subordinates willful manipulation of the screening process that had ultimately placed this appeal
in limbo. Plaintiff's Appeal/Notice were never address by Def.1) Hedgpeth.

13). Plaintiff asserts that Def.1) Hedgpeth willfully violated plaintiff's protected 14th amendment
rights to be FREE from intentional DISCRIMINATORY ANIMUS upon NON-AFFILIATED HISPANIC INMATES, RIGHTS
afforded to all other NON-AFFILIATED INMATES that were housed at KVSP.

//
//

1  14). Defendant 2) E.G. Flores the Custody Captain of Central Operations (from herein will be referred

2  to as Def.2) Flores), where he continued the conspiracy to the cause of actions that Def.1) Hedgpeth

3  set in motion back in Jan. 4, 2007, that violated plaintiff's 14th amendment rights to be FREE from

4  ANIMUS DISCRIMINATION POLICIES, that are RACE BASED, that willfully affiliated plaintiff to the

5  SOUTHERN HISPANIC SCENARIO.

6  15). Def.2) Flores authorized the continual lockdown of all HISPANIC INMATES, including plaintiff,

7  by implementing PSRs' log# KVP-CO-07-012 dated Feb. 15, 2007, and Feb. 27, 2007. See Ex. "A-1" PSRs'

8  dated Feb. 15,/Feb. 27, 2007.

9  16). Def.2) Flores continued the illegal RACE BASED lockdowns that discriminated plaintiff and

10 extend the period of cell confinement for 24 hrs. a day since Jan. 4, 2007, while implementing

11 preferential treatment by allowing other races, (i.e. Black, Whites, and Others) to be utilized

12 as critical workers, and then granting them canteen privileges, however, denying the Hispanic Inmates

13 including plaintiff, of these same A-1-A privileges that was being afforded to the other races.

14 17). Def.2) Flores violated plaintiff's 14th amendment rights to the equal protection clause, where

15 Def.2) Flores implemented the impermissible RACE BASED lockdowns with PREFERENTIAL treatment policies

16 that were BASED RACED, and such cause of action to invidiously discriminate plaintiff with these

17 policies that illegally confined plaintiff, without ever providing plaintiff to a hearing prior

18 to the suspension of plaintiff's liberties that were granted by Statute, automatically triggers

19 a myriad of rights connected with a hearing that the 14th amendment is designed to shield plaintiff.

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

1  18). Defendant 3) R.W. Nipper B-facility Captain, (from herein will be referred to as Def.3) Nipper),

2  where Def.3) Nipper violated plaintiff's 14th amendment rights to be FREE from ANIMUS RACE BASED

3  DISCRIMINATION POLICIES, that invidiously targeted inmates based on their RACE.

4  19). Def.3) Nipper continued the concerted conspiracy to the cause of actions that Def.1) Hedgpeth,

5  and Def.2) Flores all set in motion since Jan. 4, 2007, that continued to violate plaintiff's 14th

6  amendment rights to be FREE FROM ANIMUS DISCRIMINATIONS. Def.3) Nipper implemented PREFERENTIAL RACE

7  BASED lockdowns that placed plaintiff on greater restrictions than other races, (i.e. Blacks, Whites,

8  and Others), solely because plaintiff was of Hispanic Origin.

9  20). On March 1, 2007 Def.3) Nipper implemented PSR log# KVP-B-07-014 that remained plaintiff on

10 continual lockdown because plaintiff was of Hispanic Origin, while preferentially allowing other

11 races, (i.e. Blacks, Whites, and Others) to resume to normal program granting them all their A-1-A

12 privileges, however, stripping plaintiff of all his A-1-A privileges without a hearing. See enclosed

13 appeal Ex. "A-1", PSR dated March 1, 2007.

14 21). Def.3) Nipper cause of action deprived plaintiff of all his liberties, rights, and equal

15 protection under the laws to 'Due Process', and to be 'Free From Animus Discrimination Policies'

16 that were RACE BASED, and such preferential policies did not serve any penological interest.

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

1 | 22). Defendant 4) J.D. Soto B-facility Captain, (from herein will be referred to as Def.4) Soto),

2 | where Def.4) Soto violated plaintiff's 14th amendment rights to be FREE FROM ANIMUS RACE BASED

3 | DISCRIMINATION policies that invidiously target inmates BASED ON RACE.

4 | 23). Def.4) Soto continued the conspiracy to the cause of actions that Def.1) Hedgpeth, Def.2) Flores,

5 | and Def.3) Nipper all set in motion since Jan. 4, 2007, that continued to violate plaintiff's 14th

6 | amendment rights to the equal protection clause, where Def.4) Soto implemented several PSRs', log#s'

7 | KVP-B-07-014, and KVP-B-07-024, that remained plaintiff on a greater restriction than other races,

8 | (i.e. Whites, and Others) solely because of plaintiff's RACE.

9 | 24). On June 3, 2007 plaintiff filed a constructive notice to Def.4) Soto requesting redress from

10 | the continued Discriminatory lockdowns/willful affiliation to the Souther Hispanic Prison Gang.

11 | Plaintiff enclosed his informative chronos that confirmed plaintiff's Non-Affiliation Status to ANY

12 | Prison Gang or Groups, along with the I.A.C. Roster that Def.4) Soto authorized and acknowledged

13 | plaintiff as the I.A.C. Rep. for the Others. See enclosed exhausted appeal Ex. "A-3".

14 | 25). On July 19, 2007 plaintiff received a response by Def.4) Soto to the Notice that was filed to

15 | him on June 3, 2007 by plaintiff. The response openly admits to the implementing of Animus Race Based

16 | Discriminatory policies that specifically targeted the Hispanic Population. Def.4) Soto refused to

17 | redress the discriminatory policies/illegal confinement that willfully associated plaintiff to the

18 | Hispanic Prison Gang that was on lockdown.

19 | 26). Def.4) Soto intentionally deprived plaintiff of his liberty interest rights and equal protection

20 | of the laws to be Free from Animus Discrimination, where plaintiff was consecutive confined for 24

21 | hrs. a day without no outdoor exercise being provided from 6/2/07 through 8/22/07. See Ex. "A-2"

22 | PRSs'.

23 | 27). Plaintiff asserts that he was never provided any due process to a hearing prior to the confine-

24 | ment and suspension of plaintiff's A-1-A privileges for the duration of this illegal confinement

25 | that Def.4) Soto implemented against plaintiff.

26 | //

27 | //

28 | //

28). Defendant 5) N. Grannis the Chief Inmate Appeals Coordinator, (from herein will be referred to as Def.5) Grannis), where Def.5) Grannis violated plaintiff's 14th amendment rights to be FREE FROM ANIMUS RACE BASED DISCRIMINATORY policies that invidiously targeted plaintiff for being of Hispanic Origin.

29). Def.5) Grannis continued the conspiracy to the cause of actions that Defendants' 1-4 all set in motion since Jan. 4, 2007 through Aug. 22, 2007, where multiple back-to-back lockdowns that were BASED ON RACE that violated plaintiff's 14th amendment rights to be Free from Preferential lockdowns that illegally confined plaintiff to his cell for 24 hrs. a day, solely because plaintiff was of Hispanic Origin.

30). On Nov. 5, 2007 plaintiff received a DIR by Def.5) Grannis dated Oct. 28, 2007, where Def.5) Grannis denied plaintiff's Group Appeal Log# KVSP-O-07-00823 that was filed to her level on July 25, 2007. Def.5) Grannis failed to redress the DISCRIMINATORY RACE BASED lockdown policies, and the willful affiliation to a Prison Gang and their illegal suspension of plaintiff's A-1-A privileges, where no Due Process was ever provided prior to the imposition of confinement, and/or suspension of plaintiff's A-1-A privileges.

31). Plaintiff was denied the equal protection of the law by Def.5) Grannis, where plaintiff attempted to file Three other appeal grievances through the appeal system. On May 15, 2007/On Oct. 30, 2007 plaintiff filed TWO constructive notices with the enclosed appeals that were being willfully obstruct-ed by KVSP officials. Plaintiff sought redress from the willful manipulations of the screening pro-cess that KVSP Appeals Coordinators' were intentionally obstructing these THREE appeals. The THREE appeals were related to the continued RACE BASED lockdowns that Defendants' 1-4 were illegally impos-ing on plaintiff. However, Def.5) Grannis failed to perform her obligatory duty by refusing to redress these egregious violations that were being committed against plaintiff's constitutional rights to the 14th amendment, based on her denial responses dated June 28, 2007/Jan. 9, 2008 to the TWO constructive notices that plaintiff filed to her on May 15, 2007/On Oct. 30, 2007.

32). Defendants' 1-5 all concertedly violated plaintiff's 14th amendment rights, where their cause of actions created an atypical and significant hardship on plaintiff's protected rights.

//

## COUNT II

1.  State the constitutional or other federal civil right that was violated: Defendants' 1-5 violated plaintiff's 8th Amendment rights that created an atypical hardship by illegally confining plaintiff for extended period.

2.  **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

    ☐ Basic necessities      ☐ Mail      ☐ Access to the court      ☐ Medical care

    ☐ Disciplinary proceedings      ☐ Property      ☐ Exercise of religion      ☐ Retaliation

    ☐ Excessive force by an officer      ☐ Threat to safety ☒ Other: 8th amendment/ an atypical hardship...

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

1). Def.1) Hedgpeth illegally confined plaintiff to his cell for 24 hrs. a day with no outdoor exercise ever being provided to plaintiff for an approximate 8 month period solely because plaintiff was of Hispanic Origin. Thus violating plaintiff's 8th amendment rights for being deliberately indifferent to plaintiff's health and for the lack of outdoor exercise for a prolonged period, where plaintiff was denied no movement that threaten plaintiff's health, while other RACES, (i.e. Black, Whites, and Others) were granted outdoor exercise privileges. 2). Def.1). Hedgpeth violated plaintiff's 8th amendment right when he implemented his RACE BASED lockdowns that illegally confined plaintiff to his cell for 24 hrs. a day for an extended period where all movement was deprived and plaintiff's muscles were subjected to 'ATROPHY' because of the lack of outdoor exercise. Plaintiff suffered 'FROM ANXIETY, SLEEP DEPRESSION, HEADACHES, MUSCLE CRAMPING, AND GREAT EMOTIONAL DISTRESS' due to the continued cell confinement.

3). On Feb. 22, 2007 plaintiff filed a Constructive Notice to Def.1) Hedgpeth with an enclosed complaint dated Feb. 5, 2007 seeking redress from the continued RACE BASED lockdowns that had plaintiff illegally confined for 24 hrs. a day with no outdoor exercise, while other races, (i.e. Black, Whites, and Others) were being granted these SAME A-1-A privileges that plaintiff was being denied since Jan. 4, 2007.

4). On March 23, 2007 plaintiff received a written response dated March 19, 2007 by Def.1) Hedpeth, where he responded to plaintiff's Notice and enclosed complaint that was filed on Feb. 22, 2007. Def.1) Hedgpeth refused to provide plaintiff with ANY redress to the an typical hardship that his RACE BASED lockdown policies were subjecting plaintiff to, where plaintiff remained on continuous lockdown since Jan. 4, 2007 through Aug. 22, 2007.

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Plaintiff suffered from atrophy, anxiety, sleep depression, headache, muscle cramping, and great emotional distress a result of the prolonged cell confinement where plaintiff was punished for solely being of Hispanic origin. Plaintiff also suffers from fear of KVSP officials continued attempts in vendictively punishments.

5.  **Administrative Remedies.**

    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?      ☒ Yes    ☐ No

    b.  Did you submit a request for administrative relief on Count II?      ☒ Yes    ☐ No

    c.  Did you appeal your request for relief on Count II to the highest level?      ☒ Yes    ☐ No

    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

1    5). On July 17, 2007 plaintiff attempted to file another 602 appeal seeking redress from the contin-

2    ued cell confinement that was for 24 hrs. a day, where no outdoor exercise had been provided to

3    plaintiff for a prolonged period, since Jan. 4, 2007. Plaintiff's grievance was once again willfully

4    obstructed by Def.1) Hedgpeth's subordinates intentional manipulations of the screening process

5    that placed this appeal in limbo.

6    6). On Aug. 3, 2007 plaintiff filed another Constructive Notice to Def.1) Hedgpeth seeking redress

7    from the willful manipulations of the screening process by his subordinates, where they were intent-

8    ionally obstructing the processing of plaintiff's July 17, 2007 grievance that sought relief from

9    the 24 hrs. a day lockdown that Def.1) Hedgpeth implemented since Jan. 4, 2007 through Aug. 3, 2007.

10   Plaintiff never received a response to this Notice, nor did the grievance ever receive a log# or

11   a written response by KVSP officials.

12   7). Def.1) Hedgpeth intentionally violated plaintiff's rights under Federal Laws that clearly

13   prohibit the use of extended periods of 'ILLEGAL CONFINEMENT/SUSPENSION' of plaintiff's rights

14   to outdoor exercise/due process of law. California law grants plaintiff a protected liberty interest

15   in remaining FREE from confinement or restraint, unless plaintiff is found GUILTY of a prison Rule

16   or Regulation. In plaintiff's case, plaintiff was illegally confined 'SOLELY BECAUSE PLAINTIFF

17   WAS OF HISPANIC DECENT".

18   8). Plaintiff suffered extremely do to the Deliberate Indifference of Def.1) Hedgpeth not providing

19   plaintiff with "ANY" regular outdoor exercise for an extremely prolonged period of time, which

20   is extremely important to the psychological/physical well being of plaintiff's health/safety.

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1  9). Def.2) Flores further continued the conspiracy to the cause of actions that Def.1) Hedgpeth

2  set in motion, where Def.2) Flores authorized the illegal confinement of all HISPANIC INMATES,

3  including plaintiff, to a 24 hr. a day RACE BASED lockdown that violated plaintiff's 8th amendment

4  rights, because plaintiff remained illegally confined for a prolonged period of time with no outdoor

5  exercise ever being provided to plaintiff since Jan. 4, 2007.

6  10). Def.2) Flores implemented TWO PSRs' from Feb. 15, 2007/Feb. 27, 2007, where plaintiff was

7  continued to be deprived of all OUTDOOR EXERCISE, and was confined to his cell for 24 hrs. a day

8  without **'ANY FRESH AIR'**, while other races, (i.e. Blacks, Whites, and Others) were granted greater

9  privileges than plaintiff. Plaintiff suffered from anxiety, sleep depression, muscle cramping,

10  and great emotional distress as a direct result of being illegally confined for a prolonged period

11  of time.

12  11). Def.2) Flores engaged in unconstitutional acts that willfully violated plaintiff's 8th amend-

13  ment rights to be FREE from treatment of cruel/usual punishment that created an atypical/signifi-

14  cant hardship to plaintiff's health/safety. As a direct result of Def.2) Flores RACE BASED lock

15  downs that illegally confined plaintiff to cell for 24 hrs. a day with no outdoor exercise ever

16  being provided to plaintiff, plaintiff has suffered direct injury.

17  12). Plaintiff asserts that he filed TWO medical slips on 7/16/07 and on 8/02/07 seeking medical

18  attention from the anxiety, sleep depression, etc. that was resulting from being illegally confined

19  for 24 hrs. a day with no outdoor exercise. Plaintiff asserts that he was never ducated to see

20  the Doctor at B-facility to address these conditions that plaintiff was suffering from as a direct

21  result of being illegally confined for an extended period of time.

22  13). Plaintiff did not continue to complain, and/or request for any other medical attention because

23  out of FEAR of further vindictive retaliatory punishments by the Defendants' since Defendants'

24  1-4 had already went to the extreme of illegally confining/affiliating plaintiff to a Prison Gang

25  and their lockdowns, that illegally confined plaintiff to his cell for 24 hrs. a day for a prolonged

26  period of time with no outdoor exercise.

27  //

28  //

4-B

1 14). Def.3) Nipper further continued the conspiracy to the cause of actions that Def.1) Hedgpeth,

2 and Def.2) Flores all set in motion, where Def.3) Nipper authorized the continued illegal confine-

3 ment of ALL HISPANIC INMATES, including plaintiff to a 24 hrs. a day RACE BASED lockdowns that

4 violated plaintiff's 8th amendment rights. Plaintiff was illegally confined to his cell for 24

5 hrs. a day for an extended period of time with no outdoor exercise ever being provided to plaintiff

6 since Jan. 4, 2007.

7 15). On March 1, 2007 Def.3) Nipper implemented a preferential lockdown that was RACE BASED when

8 he implemented PSR log# KVP-B-07-014, that resumed all other RACES to normal program, (i.e. Blacks,

9 Whites, and Others) however, remaining the Hispanic Inmates including plaintiff, on continued

10 confinement for 24 hrs. a day with no outdoor exercise or any A-1-A privileges ever being provided

11 to plaintiff, solely because plaintiff was of Hispanic Origin.

12 16). Plaintiff was continued on a more rigorous form of disciplinary confinement solely because

13 of plaintiff's ethnicity, where plaintiff was penalized by being deprived of all access to any

14 outdoor exercise, or fresh air for a great period of time. Thus violating plaintiff's 8th amendment

15 rights by subjecting plaintiff to this type of an typical and significant hardship, as a direct

16 result of Def.3) Nipper's cause of actions that was taken against plaintiff.

17 17). Def.3) Nipper's cause of actions to illegally continue the unconstitutional confinement, and

18 deprivations of plaintiff's right to outdoor exercise did not serve any penological interest other

19 than, to egreiously violate plaintiff's constitutional rights.

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

4-C

1   18). Def.4) Soto further continued the conspiracy to the cause of actions that Def.1) Hedgpeth,

2   Def.2) Flores, and Def.3) Nipper all set in motion, where Def.4)Soto authorized the illegal confine-

3   ment of all HISPANIC INMATES, including plaintiff, and the BLACK INMATES for a riot that occurred

4   on June 2, 2007 between the Southern Hispanic Prison Gang, and the Black Prison Gang known as the

5   Blood's, where plaintiff was once again subjected to the illegal lockdowns that confined plaintiff

6   for 24 hrs. a day with no outdoor exercise being provide to plaintiff, violating plaintiff's 8th

7   amendment rights.

8   19). On June 3, 2007 plaintiff immediately filed a Constructive Notice to Def.4) Soto seeking

9   redress to the continued RACE BASED lockdowns/willful affiliations to the SOUTHERN HISPANIC PRISON

10  GANG, that had subjected plaintiff to multiple back-to-back lockdowns that illegally confined plain-

11  tiff to his cell for 24 hrs. a day with no outdoor exercise for a prolonged period. Plaintiff

12  enclosed Def.4) Soto his informative chronos that were provided by KVSP officials that clearly

13  documented plaintiff's NON-AFFILIATION to ANY PRISON GANG, and that plaintiff was housed with an

14  Other, and was also the officially elected I.A.C. Rep. for the Others.

15  20). On June 4, 2007 Def.4) Soto implemented PSR log# KVP-B-07-014 for the June 2, 2007 incident

16  that involved TWO different Prison Gangs that plaintiff did not affiliate to neither groups that

17  had caused the lockdown.

18  21). Plaintiff was once again vindictively affiliated to the Hispanic Prison Gang's SAME STANDARD

19  OF PUNITIVE MEASURE that was associated to the Southern Hispanic Gang, that plaintiff did not

20  affiliate with, nor was plaintiff ever housed with a Southern Hispanic Affiliate to even justify

21  this illegal lockdown.

22  22). Plaintiff was continued on a more restrictive form of disciplinary confinement by Def.4) Soto's

23  RACE BASED lockdowns/willful affiliations to the Southern Hispanic Prison Gang, solely because

24  plaintiff was of Hispanic Origin. Plaintiff was illegally denied all access to any outdoor exercise

25  or fresh air for great period of time, while other races, (i.e. Whites, and Others) were granted

26  access to yard privileges, thus violating plaintiff's 8th amendment rights by subjecting plaintiff

27  to an atypical and significant hardship as a direct result of Def.4) Soto's cause of actions.

28  //

1 | 23). Def.5) Grannis further continued the conspiracy to the cause of actions that Defendants' 1-4

2 | all set in motion, where Def.5) Grannis refused to correct the continued 8th amendment violations

3 | that plaintiff raised in the Group Appeal Log# KVSP-O-07-00823, regarding the multiple RACE BASED

4 | lockdowns that had illegally confined plaintiff to his cell for 24 hrs. a day, that deprived plain-

5 | tiff of all access to outdoor exercise **'SOLELY'** because plaintiff was of Hispanic Origin. See

6 | enclosed exhausted appeal.

7 | 24). Plaintiff's constitutional rights were violated by Def.5) Grannis failure to act when a duty

8 | to act existed. Def.5) Grannis had an obligatory duty to redress the unconstitutional violations

9 | that Defendants' 1-4 were concertedly conspiring at KVSP against plaintiff, where they engaged

10 | in the illegal confining of plaintiff for 24 hrs. a day, for a prolonged period that ultimately

11 | injured plaintiff, where plaintiff suffered from anxiety, sleep depression, headaches, muscle cramp-

12 | ing, and great emotional distress as a direct result of the continued RACE BASED lockdowns that

13 | Defendants' 1-4 implemented against plaintiff.

14 | 25). Plaintiff also attempted on TWO different occasions to seek redress from the unconstitutional

15 | deprivations of being illegally confined with no outdoor exercise, when plaintiff filed TWO Constru-

16 | ctive Notices to Def.5) Grannis on May 15, 2007/on Oct. 30, 2007. Plaintiff sought relief from

17 | the continued willful manipulations of the screening process that KVSP Appeals Coordinators' were

18 | willfully obstructing plaintiff's THREE appeals, where plaintiff attempted to file these appeals

19 | through the appeals system. These appeals were related to the continued illegal confinement of

20 | plaintiff. Def.5) Grannis refused to redress the issues of the willful obstructions that the TWO

21 | Notices that were filed to her on May 15, 2007/on Oct. 30, 2007 that had been raised to her.

22 | 26). Def.5) Grannis further the cause of actions that Defendants 1-4 all set in motion, where plain-

23 | tiff suffered extreme sever emotional distress from Jan. 4, 2007 through Aug. 22, 2007, based on

24 | the Defendants 1-5 cause of actions that illegally confined plaintiff to his cell for 24 hrs. a

25 | day, with no outdoor exercise ever being provided to plaintiff for the duration of these multiple

26 | lockdowns, and the willful/vindictive affiliation to a Prison Gang that plaintiff did not affiliate

27 | with, nor was plaintiff ever housed with a Southern Hispanic, thus creating an typical hardship on

28 | plaintiff's 8th amendment rights.

## COUNT III

1.   State the constitutional or other federal civil right that was violated: Defs. 1), 4), and 5) all conspired to punish plaintiff for his participation in a constitutionally protected activity that violated his 1st Amend. rights.

2.   **Count III.** Identify the issue involved.  Check **only one**.  State additional issues in separate counts.

☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care

☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☒ Retaliation

☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____.

3.   **Supporting Facts.**  State as briefly as possible the FACTS supporting Count III.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1). Def.1) Hedgpeth violated plaintiff's 1st amendment right to petition the government, when he concertedly conspired to further the retaliations against plaintiff-for-plaintiff's active role as an I.A.C. Rep. where plaintiff was filing numerous 602 appeals, staff complaints, and was maintaining a civil suit against KVSP officials.
2). Def.1) Hedgpeth conspired to retaliate against plaintiff when he willfully confined plaintiff to his cell illegally, for 24 hrs. a day, by intentionally affiliating plaintiff to a Prison Gang's criminal investigation that plaintiff did not affiliate with, nor was plaintiff housed with any Southern Hispanic affiliate to justify such adverse lockdown against plaintiff, other than to retaliate against plaintiff in Def.1) Hedgpeth's attempt to deter or discourage plaintiff in his 1st amendment activities.
3). On Jan. 11, 2007 plaintiff filed a Group Appeal on behalf of plaintiff and his cellmate (who was classified as an OTHER) for being willfully subjected to a punitive cell search that was specifically targeting the Southern Hispanic Prison Gang that was under a criminal investigation, where plaintiff and his cellmate did not affiliate to this group. Def.1) Hedgpeth's subordinates knew that plaintiff/his cellmate were not Southern Hispanic affiliates, infact, they personally were aware of plaintiff being the officially elected I.A.C. Rep. for the OTHERS, and that plaintiff was housed with an Other. Thus, establishing their vindictive motive to punish plaintiff by willfully affiliating plaintiff to a Prison Gang's criminal investigation in the hopes of deterring plaintiff from 1st amendment activities, a service as an I.A.C. Rep. a protected activity under the 1st Amendment.

4.   **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
Plaintiff was vindictively punished for exercising his voice as an IAC Rep. where Defs. impermissibly burdened plaintiff's constitutional right of access to the courts/right to petition the government for redress of plaintiff's grievances. Plaintiff was penalized for exercising his right to complain a fundamental right that was oppressed.

5.   **Administrative Remedies.**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes  ☐ No
   b.   Did you submit a request for administrative relief on Count III? ☒ Yes  ☐ No
   c.   Did you appeal your request for relief on Count III to the highest level? ☒ Yes  ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____.

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

5

4). On Jan. 11, 2007 plaintiff filed a Constructive Notice to Def.1) Hedgpeth seeking redress from the RACE BASED lockdown, and the vindictive retaliations by KVSP officials, because of plaintiff's numerous filing of 602s, and for maintaining a civil suit against KVSP officials, where KVSP official s' were now willfully affiliating plaintiff to the Southern Hispanic Prison Gang, solely motivated to vengefully punish plaintiff because of his active role as an I.A.C. Rep. for the OTHERS, where plaintiff was now being vindictively retaliated by their willful affiliation to a Prison Gang in their attempts to discourage plaintiff from 1st amendment activities.

5). On Feb. 22, 2007 plaintiff filed another Constructive Notice to Def.1) Hedgpeth with an enclosed complaint dated Feb. 5, 2007, appealing the continued illegal confinement/willful retaliations that KVSP officials were subjecting plaintiff to for his active role as an I.A.C. Rep. for the OTHERS.

6). On March 9, 2007 plaintiff filed a staff complaint against KVSP officials for retaliating against plaintiff by refusing plaintiff to conduct I.A.C. business as the assigned Rep. for the OTHERS. Def.1) Hedgpeth's subordinates retaliated against plaintiff by willfully affiliating plaintiff to the Southern Hispanic lockdown, where plaintiff remained confined and not allowed to conduct I.A.C. business, while other races, (i.e. Black, and Whites) were allowed out to conduct I.A.C. business.

7). On March 23, 2007 plaintiff received a written response by Def.1) Hedgpeth to the Constructive Notice that was filed on Feb. 22, 2007 with the enclosed complaint dated Feb. 5, 2007. Def.1) Hedgpeth refused to redress these retaliatory conditions that plaintiff was willfully being subjected to by Def.1) Hedgpeth's unconstitutional policies that he was implementing since Jan. 4, 2007.

8). On April 5, 2007 plaintiff received another written response by Def.1) Hedgpeth, where he responded to plaintiff's Notice that was filed to Def.1) Hedgpeth on Jan. 11, 2007. Def.1) Hedgpeth once again refused to redress the illegal confinement and willful affiliations to the Southern Hispanic Prison Gang's Investigation, that plaintiff was not affiliated to by any means. Def.1) Hedgpeth thus conspired to further the retaliatory punishments that were vengefully motivated to discourage plaintiff from engaging in 1st amendment activities.

9). On July 17, 2007 plaintiff filed another 602 grievance appealing the vindictive confinement that Def.1) Hedgpeth continued to implement that was illegally confining plaintiff to his cell for 24 hrs. a day, with no due process to a hearing ever being provided to plaintiff prior to being Confined.

1    Def.1) Hedgpeth's subordinates willfully conspired to intentionally obstruct this grievance by furth-

2    ering the reprisals through pretextual manipulations that ultimately inhibited plaintiff's appeal

3    to the point of being placed in limbo, thus denying plaintiff the right to a meaningful access to

4    the Court's that extends to the established prison grievance procedure. Plaintiff's fundamental right

5    of access to the Courts hinges on his ability to access the prison grievance system.

6    10). On Aug. 3, 2007 plaintiff filed another Notice to Def.1) Hedgpeth with the attached grievance

7    that was filed on July 17, 2007. Plaintiff sought redress from the continued retaliatory screenouts

8    by his subordinates willful manipulations of the screening of plaintiff's appeal that did not serve

9    any penal interest, other than, to maliciously obstruct/place this appeal in limbo by these retalia-

10   tory screenouts. Plaintiff asserts that Def.1) Hedgpeth never responded to plaintiff's Notice that

11   was filed to him on Aug. 3, 2007, nor was the issue of retaliation of this appeal being willfully

12   obstructed was ever corrected.

13   11). Def.1) Hedpeth refused to redress the vindictive retaliations that his subordinates were subjec-

14   ting plaintiff to, even after Def.1) was repeatedly provided with Notices by plaintiff. Def.1)

15   Hedgpeht's inactions to the repeated requests by plaintiff to end the malicious reprisals that were

16   being taken against plaintiff by his subordinates, only establishes his concerted involvement to

17   further the conspired retaliations that were taking place with his personal knowledge.

18   12). Def.1) Hedgpeth violated plaintiff's 1st Amendment rights when he failed to "PREVENT" these

19   vengeful punishments that were arbitrarily imposed on plaintiff, from Jan. 11, 2007 through Aug. 22,

20   2007, that illegally confined plaintiff to his cell for 24 hr. a day, and was willfully affiliated

21   to a Hispanic Prison Gang's Criminal Investigation that plaintiff did not affiliate to.

22   13). Plaintiff asserts that Def.1) Hedgpeth furthered these retaliatory cause of actions based on

23   his failure to act when an obligatory duty existed for him to prevent, and/or end such egregious

24   retaliations of punishment that were being taken against plaintiff solely because he was exercising

25   his right to complain. Plaintiff asserts that his failure to redress these vindictive reprisals

26   that were designed to deter and/or chill plaintiff of ordinary firmness from exercising his right

27   to petition, only establishes his tacit acceptance to further these retaliatory punishments by his

28   inactions, that violated plaintiff's 1st amendment rights.

1   14). Def.4) Soto conspired to violated plaintiff's 1st amendment rights, where Def.4) Soto vindictiv-

2   ely penalized plaintiff when he illegally confined plaintiff to his cell for 24 hrs. a day, for

3   an extended period of time. Def.4) Soto also furthered his retaliations when he willfully affiliated

4   plaintiff to a Hispanic Prison Gang's lockdown that plaintiff did not affiliate with, nor was plain-

5   tiff ever housed with a Southern Hispanic affiliate.

6   15). On June 3, 2007 plaintiff filed a Constructive Notice to Def.4) Soto, where plaintiff enclosed

7   Def.4) Soto copies of his informative chronos that clearly informed Def.4) Soto that plaintiff was

8   not affiliated to 'ANY' Prison Gang or Groups. Plaintiff also informed Def.4) Soto that plaintiff

9   was not a Southern Hispanic Affiliate, but that he was a NON-AFFILIATED OTHER. See enclosed appeal

10  Ex. "A-3".

11  16). On July 19, 2007 plaintiff received a written response by Def.4) Soto dated July 6, 2007, where

12  Def.4) Soto responded to plaintiff's Notice that was filed on June 3, 2007. Def.4) Soto refused

13  to redress the illegal confinement/willful affiliation to Southern Hispanic lockdown. Def.4) Soto

14  had personal knowledge that plaintiff was not a Southern Hispanic Affiliate, and that plaintiff

15  was an OTHER, and despite this, Def.4) Soto knowingly continued to affiliate plaintiff to this

16  Prison Gang's lockdown solely motivated to further the conspiracy to retaliate/discourage plaintiff

17  from exercising his right to petition.

18  17). Def.4) Soto violated plaintiff's 1st amendment rights where he conspired to retaliate against

19  plaintiff when he knowingly affiliated plaintiff to a Hispanic Gang/their lockdowns as a means to

20  further the conspired retaliations of punishments that initially began on Jan. 4, 2007 by Def.1)

21  Hedgpeth. These vindictive reprisals did not serve any penal interest/were solely motivated to retal-

22  iate by attempting to deter plaintiff in I.A.C. activities that plaintiff was pro-actively engaged

23  in filing 602s'/complaining to Top CDCR officials, and maintaining a 1983 suit against KVSP officials.

24  18). Plaintiff asserts that Defendants 1-4 cause of actions did not serve a penal interest in their

25  willful affiliation to the Southern Hispanic Gang/their lockdowns. Defendants 1-4 have ceased to

26  willfully lockdown plaintiff to the Southern Hispanic Scenairo, where recent identical incidents

27  that involved the "SAME" disruptive group that Defendants 1-4 once willfully affiliated plaintiff

28  back in Jan. 4, through Aug. 22, 2007 lockdowns, are no longer being imposed on plaintiff. Plaintiff

'   's program as an Other is being afforded by KVSP officials.

5-C

1  19). Def.5) Grannis also conspired in violating plaintiff's 1st amendment rights, where she engaged

2  in the furthering of this conspiracy to retaliate against plaintiff-for-plaintiff exercising his

3  right to petition, and for being an active I.A.C. Rep., where plaintiff filed numerous appeals, staff

4  complaints, and constructive notices complaining to TOP CDCR Officials about the egregious misconducts

5  that KVSP officials were engaging in.

6  20). On May 15, 2007 plaintiff filed a Constructive Notice to Def.5) Grannis

7  seeking her intervention from KVSP appeals coordinators willful retaliations that was obstructing

8  the appeal process, that had placed plaintiff's TWO 602 appeals in limbo by their manipulations of

9  the screening process that did not serve a penal interest other than, to vengefully retaliate

10  against plaintiff by thwarting these TWO appeals. The TWO appeals were related to the RACE

11  BASED lockdowns that Def.1) Hedgpeth initially implemented back in Jan. 4, 2007 in COUNT "I".

12  21). On June 28, 2007 plaintiff received a written response by Def.5) Grannis dated June 20, 2007

13  to the May 15, 2007 Constructive Notice that was filed to her. Def.5) Grannis refused to redress

14  the continued retaliatory screenouts that was inhibiting plaintiff in having these appeals processed.

15  Def.5) Gannis failed to prevent the willful oppressions of retaliations that were being taken against

16  plaintiff's appeals that ultimately placed them in limbo.

17  22). On July 25, 2007 plaintiff filed a Third Level Review to appeal Log# KVSP-0-07-00822 to Def.5)

18  Grannis regarding the continued retaliations against plaintiff for his active role as an I.A.C. Rep.

19  for the OTHERS, where plaintiff was vindictively retaliated by KVSP officials when they refused plain-

20  tiff to conduct I.A.C. business, and as retaliation they intentionally affiliated plaintiff to the

21  continued Hispanic Prison Gang's lockdown. Plaintiff informed Def.5) Grannis that KVSP cause of

22  actions were solely motivated to vengefully punish plaintiff for his active role as an I.A.C. Rep.

23  23). On July 25, 2007 plaintiff also filed another Third Level Review Group Appeal Log# KVSP-0-07-

24  00823 to Def.5) Grannis regarding the continued RACE BASED LOCKDOWN POLICIES that plaintiff raised

25  in COUNTS "I" and "II" of this complaint, where plaintiff was continuously confined with no outdoor

26  exercise for a prolonged period of time . See enclosed exhausted appeal.

27  24). On Oct. 30, 2007 plaintiff filed another Constructive Notice to Def.5) Grannis with an enclosed

28  appeal that was filed on July 17, 2007 that was once again being willfully obstructed through the

1    retaliatory screenouts that KVSP appeals coordinators were preventing the processing of plaintiff's

2    appeal. Plaintiff sought redress from these vindictive retaliations that did not serve a penal inter-

3      est, where plaintiff's fundamental right of access to the Court's hinges on his ability to obtain

4    access to the prison grievance system, a right denied to plaintiff by Defs. 1), 4), and 5) inactions

5    to redress, prevent, and/or end these egregious oppressions of retaliations.

6    25). On Nov. 5, 2007 plaintiff received both appeal grievances that were initially filed to the DIR

7    on July 25, 2007 log#s' KVSP-O-07-00822/KVSP-O-07-00823, where Def.5) once again, failed to act

8    when a duty to act existed, where she had an obligatory duty to End, Prevent, and Redress these

9    vindictive retaliations that plaintiff was being subjected to. Def.5) Grannis was made aware by

10   numerous Constructive Notices that plaintiff was 'NOT AFFILIATED TO ANY PRISON GANG OR GROUPS', and

11   that he was being illegally confined without any due process ever being provided to plaintiff, prior

12   to being confined. To no avail.

13   26). On Jan. 9, 2007 plaintiff received a written response to the Constructive Notice that was filed

14   to Def.5) on Oct. 30, 2007, with the attached appeal that was filed on July 17, 2007, that was being

15   vindictively obstructed by KVSP appeals coordinators manipulated screenouts. Def.5) Grannis once

16   again failed to act when an obligatory duty existed for her to act, thus her inactions furthered

17   the conspiracy to retaliate against plaintiff by refusing to end, prevent, and/or redress these

18   types of egregious manipulations of the screening process that ultimately obstructed these appeals

19   to the point of being placed in limbo.

20   27). Def.5) Grannis, Def.1) Hedgpeth, and Def.4) Soto all acted despicably, knowingly, and maliciou-

21   sly with a callous disregard for plaintiff's 1st amendment rights to be 'FREE' from vengeful retali-

22   ations for exercising a protected right to petition the government. Where these Defendants' conspi-

23   red to silence and/or chill plaintiff from ordinary firmness, when they allowed the vindictive

24   interference of their subordinates to willfully obstruct the processing of plaintiff's THREE appeal

25   grievances that was seeking relief from the willful discriminations, willful affiliations to a Prison

26   Gang, and the illegal confinement of plaintiff, where plaintiff was penalized with these vengeful

27   inflictions of retaliation described in COUNTS "I" through "III", by Defendants' 1-5, as the adverse

28   consequence which flowed from plaintiff's constitutionally protected actions of service as an IAC

     Rep. for the OTHERS.

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1). That judgment against Defendants' 1-5, and each of them as follows pay compensatory damages of the amount $75,000.00, each.

2). Punitive damages according to $75,000,00.

3). Cost of the suit.

4). That Declaratory relief be provided, by the declaration of each party's rights/liberties.

5). Demand for a Jury Trial.

6). Such further relief as the Court deems proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  5/26/09
            DATE

SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach
no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you
attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

Alvaro Quezada,

v.                                            Case Number:  1:08-CV-01414 FZZ

A. Hedgpeth, Worden, and others

**PROOF OF SERVICE**

_____/

I hereby certify that on   May 26, 2009              , I served a copy
of the attached   Amended Complaint with attached Exhibits/a confirmed copy

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at

KVSP P.O. Box 5102 Delano, CA 93216  :

(List Name and Address of Each
Defendant or Attorney Served)
To THE Honorable Clerk of The EASTEENR District Court.
2500 TULARE St. Room 1-505
FRESNO, CA 93721-2201

I declare under penalty of perjury that the foregoing is true and correct.

Alvaro Quezada

(Signature of Person Completing Service)

## VERIFICATION

I am the petitioner in this matter. I have read the allegations contained in the petition and know them to be true of my own personal knowledge.

EXECUTED THIS  ___MMY___  DAY OF  ___24___  ___20___. ___09___

UNDER PENALTY OF PERJURY IN  ___Kvsl P.O. BOX 5102___ ,

CALIFORNIA, County of  ___Deland, 93216___

DECLARANT

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Alvaro Quezada,                    )        Case No. 1: 08-cv-01404-FRZ
         Plaintiff,                )        42 U.S.C. § 1983/1985 Violations of
                                   )        Civil Rights 1st, 8th, and 14th
vs.                                )        Amendments, Demand for a Jury Trial
                                   )
A. Hedgpeth, et,al.,               )
         Defendants' 1-5           )

COVER PAGE FOR EXHAUSTED APPEAL

WITH EXHIBITS "A-1" THROUGH "A-3"

IAB No: 0703874 AND LOCAL LOG No. KVSP-O-07-00823

-i-

1

# TABLE OF CONTENTS

2

3

| TABLE OF CONTENTS | PAGES |
|---|---|

4

5  ° Group Appeal with attached Exhibits (Ex.) "A-1" Through "A-3" Total Pages 45...

6  ° DLR Denial Dated Oct. 28, 2007 The First Two Pages................. (1-2)

7  ° 602 Group Appeal levels A. Through H. of plaintiff's appeal
   arguments......................................................... (3-8)

8

9  ° 602 Group Appeal responses provided by KVSP Officials to plaintiff's
   arguments of the 1st level and 2nd level stages.................... (9-12)

10  ° Group Appeal 695 screenout dated March 21, 2007................... (12-13)

11  ° Group Appeal signatures of appellants............................ (13-14)

12  ° Group Appeal (Ex.) "A-1" PRSs' from Jan. 4, 2007 Through March-
   13, 2007.......................................................... (15-24)

13
   ° Group Appeal (Ex.) "A-2" Affidavit with attached Ex. (a)(a) with
14   enclosed PSRs' from June 4, 2007 through July 18, 2007............ (25-36)

15  ° Group Appeal (Ex.) "A-3" Constructive Notice that was filed to
   Def.4) Soto with attached Ex.s' "A" through "B".................. (37-45)

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Received on Nov. 5, 2007 (Mon)

Date: OCT 2 8 2007

**Group Appeal**

In re:    Quesadea, P-90436
          Kern Valley State Prison
          P.O. Box 6000
          Delano, CA 93216


IAB Case No.: 0703874          Local Log No.: KVSP 07-00823


This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner Michael H. Jensen, Facility Captain.    All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that his facility at Kern Valley State Prison (KVSP) has been on lockdown for 25 consecutive days. The appellant contends this confinement to his cell causes severe psychological and emotional pain.    The appellant stated inmates have lost their earned privileges without being found guilty of any disciplinary infraction. He indicated the Modified Program is an underground policy that should have had the approval of the Director.    The appellant requests the Administration quit suspending the Facility-B program and discontinue the practice of 24 hour a day cell confinement.

**II    SECOND LEVEL'S DECISION:** The reviewer found the facility was placed on a Modified Program on February 8, 2007, after the discovery of missing metal stock in the visiting room.    It was stated that on February 15, 2007, the Modified Program was expanded to Facilities A, B, C, and D after a riot occurred between black and white inmates on Facility-A, and a homicide on the same yard.    The Second Level of Review (SLR) indicated the investigation was completed and the appellant's facility was returned to its regular program on March 12, 2007.    The staff response rejected the appellant's statement his due process rights were violated.    The SLR denied the appeal stating Modified Programs would continue to be implemented in order to preserve the safety of staff and inmates pursuant to California Code of Regulations, Title 15, Section (CCR) 3270.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.    FINDINGS:** The Director's Level of Review (DLR) has determined that some disturbances are racially motivated, requiring increased controls to be employed with only the involved groups. Unfortunately, those inmates not involved in the violence may suffer for the actions of a few.    The appellant stated he had been confined to his cell for 25 days when he filed his appeal.    Considering the violence at KVSP included the homicide of an inmate, the DLR does not believe that length of time was excessive.    Lockdowns are a time when staff evaluates which inmates may be released without the fear of immediate violence.    Many back to back incidents have occurred simply based upon an ethnicity believing they needed to retaliate for a previous incident.    The potential victim of this retaliation may only be identified by his ethnicity.    The CDCR has the responsibility to protect the appellant from violence even though he may not wish to be protected.

The DLR is aware of the frustration of lockdowns to inmates wishing to program.    Years ago when the CDCR began the Level series it was initiated in the attempt of separating those inmates who were causing trouble from those inmates who wished to program.    To a certain degree, the program is working.    There continues to be problems with certain groups that seem to seek out confrontation with other groups and believe that violence is the only way to resolve differences.

QUESADEA, P-90436
CASE NO. 0703874
PAGE 2

The DLR believes the administration of KVSP is attempting to separate the trouble makers from those inmates wishing to program. The warden continues to have the responsibility to safely program all inmates. When an incident occurs the initial actions and considerations must be for the safety and security of the institution. The DLR has reviewed the appeal documentation and has determined the SLR shall not be modified.

**B. BASIS FOR THE DECISION:**
CCR: 3001, 3270, 3274, 3300, 3301, 3380, 3383

**C. ORDER:** No changes or modifications are required by the institution.

The appellant shall, pursuant to CCR section 3084.2(f)(2), share this response with the other inmates who signed this appeal.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, KVSP
       Appeals Coordinator, KVSP

5084. 2 (4)(1) AND CCK· 15  3084·7 (6)(1).    Appeals ont

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location:  Institution/Parole Region  KVSP-O    Log No. 07-00823    Category  11

1:    2:

2:

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals/will be taken for using the appeals procedure responsibly.    NModified

| NAME QUEZADA ALVARO | NUMBER P-90136 | ASSIGNMENT P.M. PORTER | UNIT/ROOM NUMBER B2-212W |
|---|---|---|---|

A. Describe Problem: THIS ACTION ARISES DUE TO: THIS ADMINISTRATION'S CONTINUAL PRACTICE OF MODIFYING B-FACILITY'S PROGRAM TO THE POINT WHERE, THE GENERAL POPULATION HAS BEEN DENIED OUT DOOR EXERCISE SINCE 1-28-07, THAT'S 25 CONSECUTIVE DAYS AND COUNTING. DUE TO THE SEVERE PSHCHOLOGICAL AND EMOTIONAL PAIN THAT THE EXTENSIVE CELL CONFINEMENT IS CAUSING, AND THE PROBABILITY THAT THIS PAIN MAY RESULT IN IRREPARABLE HARM TO APPELLANT'S WELL BEING. THIS ACTION IS BEING SUBMITTED AS A CLASS ACTION. THIS ADMINISTRATION HAS SUSPENDED ALL OUT DOOR EXERCISE ACTIVITIES RESTRICTING PRODUCTIVE PROGRAM INCENTIVES, APPELLANTS' ARE REGULARLY AND ON A DAILY BASIS CONFINED

If you need more space, attach one additional sheet.    SEE ADD. TIONAL SHEET

B. Action Requested: (1) AS COURSE PRISON OFFICALS STOP SUSPENDING B FACILITY'S PROGRAM FOR INCIDENTS WHICH OCCUR ON OTHER INSTITUTIONAL FACILITYS (2) PLISON OFFICALS DISCONTINUE UNCONSTITUTIONAL PRACTICES OF PERIODS OF CONFINEMENT TO LIVING QUARTERS SPECIFICALLY FOR 24 HOURS A DAY PERIODS WITHOUT PROVIDING OUT DOOR EXERCISE TO APPELLANTS! (3) DUE PROCESS: BE PROVIDED TO APPELLANTS' WHEN EVER THEIR PRIVILEGES ARE GOING TO BE MODIFIED OR SUSPENDED.

Inmate/Parolee Signature: A. Quezada    Date Submitted: 3-1-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____



Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.



Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E. Inmate Claim Received Back with First Level Response on 5-25-07 (+)    CDC Appeal Number: _____

RECEIVED MAR 1 2 2007

C INMATE GUEZADA P-36

RECEIVED JUN 2 0 2007

t Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other

REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __4-18-07__    Due Date: __5-24-07__

erviewed by: SEE ATTACHED MEMORANDUM DATED 5-21-07

iff Signature: _____    Title: SERGEANT    Date Completed: MAY 2 1 2007
nsion Head Approved: _____    Title: _____    Returned 5/22/0 5/23
jnature: _____    Date to Inmate:

If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Appellants are Dissatisfied with first Level Response. Appellants will Reiterate The Arbitray And Capricious Due Process Deprivations That KVSP officals Are Violating By suspending B-facility's Program Functions without Providing A Hearing As Described In CCR TIT. 15 § 3575(f) And § 3044. (c) (2-3). furthermore, suspending B-facility's Program Functions for Incidents That Have occured at Other facility's Are ARBRITRAY And Capricious. SEE ATTACHED SHEET

jnature: _____    Date Submitted: 6-02-07

cond Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other

REVIEWER'S ACTION (Complete within 10 working days): Date assigned: __10-21-07__    Due Date: __7-19-07__
X See Attached Letter

gnature: _____    Date Completed: 7-11-07
arden/Superintendent Signature: _____    Date Returned to Inmate: 7-19-07

If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Appellants' are dissatisfied with second level review.

"SUPPORTING FACTS"

Appellants' will introduce "MATERIAL FACTS", that will establish, that KVSP officals' are currently practing a "STANDARD PRACTICE" on modifying/suspending the facility's program after a disturbance, 'Based on Race', and 'For 24 Hour cell confinement for lengthy periods of time'. Such preferential lockdowns are inconsient with Appellants'

ignature: _____    Date Submitted: 7-25-07

or the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other
X See Attached Letter

Date: OCT 2 8 2007

CDC 602 (12/87)

custodies/work privileges, and the "State Courts ruled that such policy practices are "UNCONSTITUTIONAL and PREFER-ENTIAL".

    Appellants further reiterate the arbitrary and capricious denial to a meaningful hearing as described in COR, tit. 15,§ 3375.(f)(1)(A-G), which mandates prison officals' to provide Appellants' with due process when ever "An Adverse Effect" could result to an inmates privileges.

    KVSP officals' actions to not adhere, nor provide Appellants' with their 'Earn Privileges', as COR tit.15, "MANDATES", /or to not provide Appellants' with the "Procedural Safe Guards" as COR, tit.15, "MANDATES", is a violation of the "Accardi Doctrine" which states in part: "The Accardi Doctrine Bars Administrative Agencies From Taking Action 'INCONSISTENT WITH THEIR INTERNAL REGULATIONS' When It Would Affect Individual Rights".

    Appellants' contend that COR has been ordered by the Del Norte Superior Court, and that order was "AFFIRMED" by the First District Appeals Court ordering COR to [R]efrain from such preferential lockdowns policies.

    Appellants' contend that the circumstances in the (Aaron Escalera V. Calvin Terhune), are some what identical in their dynamics to Appellants' circumstances.

    Synopsis of the Escalera case are as follows: A prison riot occured on Feb. 23, 2000 on facility B general population. Escalera was not involved in it nor was he on the B-yard at any time before or after the riot. Escalera was housed in A-yard.(see exhibit A-1 and compare Appellants' PSRs' KVP-CO-07-012 dated 2-23-07/KVP-B-07-014 dated 3-1-07 to the Escalera case factors', where KVSP officals continued the "Hispanic Population on lockdown while allowing 'Preferentail Treatment to be implemented based on race, while denying other inmates those same privileges because of their race').

    In the Escalera case, he and other Southern Hispanics were kept on full lockdown from May 10, through June 20, 2000, while the Others,Whites, and Black inmates were allowed to yard on alterning days. The Southern Hispanics were kept on a more restrictive lockdown than the other ethnic groups, because they were viewed as more dangerous.

    Following the evidentary hearing, the Court held that COR's policy is constitutionally permissible on a short term "EMERGENCY BASIS", however, in the Escalera case the Court deemed that COR had exceeded the time that may reasonbly be considered a short term Emergency.

    The Court ruled in the Escalera case that the lockdown from May 10 - June 20, 2000 was constitutionally impermissible, because it was preferential on the basis of ethnicity, which created a 'Culture of Separation', and contributed to inter-racial violence, creating a situation where it became necessary to impose segration.(see Del Norte County Super.Ct. No:HCPB 00 5164).

    The Court futher ruled that COR can lockdown the prison, and may release inmates from lockdown 'Base Upon Individual Behavior and Upon Informed Predictions of Individual Behavior', But 'NOT ON THE BASIS OF EHINICTY".

    Appellants' have been subjected to several back-to-back lockdowns'-that initially started in Jan. 4, 2007 - March 13, 2007.(see exhibit A-1 copies of PSRs' regarding these lockdowns'. Notice PSR KVP-B-07-014 dated march 13, 2007 where KVSP officals continued the Hispanic Population on lockdown till March 13, 20007, while KVSP officals implemented "PERERENTIAL TREATMENT" program that allowed the blacks, whites, and the others to receive their normal program privileges, while they subjected the Hispanic Population to a more restrictive lockdown).

    Appellants' will inform the DIR that the Hispanic Population was confined to their cells for 24 hours a day since Jan. 4, 2007 till March 13, 2007, that would have been "67" consecutive days without any outdoor exercise due to the illegal/extensive cell confinement, and preferential treatment that KVSP officals implemented.

    Appellants' will submit a true and correct copy of an Affidavit signed under the penalty of perjury, by an Inmate Advisory Coucil Reprisentative (I.A.C.) rep., for the Southern Hispanic Population. This Affidavit will establish that KVSP officals are currently implementing unconstitutional ploicies that are contrary to the State Courts ruling, where it ordered COR to [R]efrain from such "RACE BASE LOCKDOWNS/PREFERENTIAL PRACTICES WHEN IT CAME TO LOCKING DOWN INMATES BASED ON EIHNICITY". (see exhibit B-2 signed Affidavit with attached PSRs' from June 4, - July 18, 2007 describing the lockdown/or the modified program where the black/hispanic population have been illegally confined to their cells for 24 hours a day for "53" days without any access to outdoor exercise or any other A-1-A privileges, while KVSP officals implemented a "Preferential Modified Program" for the whites/others granting them full access to their privileges, while denying the black/hispanic those same privileges).

Appellants' once again will reiterate the Del Norte Courts decision in the Escalera case, where it ruled that CCORs' past policy, or as Ms. Gricewich stated in her Second level response, "KVSP HAS A 'STANDARD PRACTICE' IN THE DEPARTMENT TO PLACE A FACILITY ON MODIFIED PROGRAM AFTER A DISTURBANCE"., however Ms. Gricewich failed to mentioned the illegal and unconstitutional "Race Base Lockdowns", and "Preferential Treatment" that are currently being implemented at this facility based on ethnicity.

There is no question that KVSP past, and current policies of maintaining the inmate population based on race at KVSP, is identyfied as "PREFERENTIAL LOCKDOWN", and failure to complete an individualized review of each inmate, and to maintain these inmates' on continual lockdown/lenghty periods of time, violates Appellants' constitutuional rights' to be free from discrimination; And Appellants' have been left with no other alternative means of exercising these riths'. "As the Trial Court expressly recognized, 'A Lockdown 'Of All" inmates without regard to ethnicity would not be constitutionally suspect if necessary to maintain order and safety, but a preferential lockdown, placing some prisoners under 'Greater Restrictions' than others based soley on their ethnicity, "CAN NOT BE EXCUSED" merely because the disfavored group is "NOT STRIPPED OF EVERY LAST PRIVILEGE AVAILABLE TO OTHER, INMATES".(Italics added).

KVSP Second level response only confrims/establishes the fact, that this Administration contiues to practice a preferential lockdown policy that the Courts have clearly ruled it constitutionally impermissiable.

"LEGAL CAUSE OF ACTION"
First Cause Of Action
(8th Amendment/Deprivation of exercise)

KVSP actions in this case violate Appellants' rights under the Eighth Amendment to the United States Constitution by previously and presently locking Appellants' down in a small cell for "24" hours a day for several consecutive days, while allowing other inmates of the same privilege group to receive their privileges, and deliberately depriving Appellants' of our basic human need of outdoor exercise which is constitutionally required, and in violation of the Eighth Amendment's ban on cruel and unusual punishment.
"SECOND CAUSE OF ACTION"
(Title 15 California Code Of Regulation/Force Of Law)

Appellants' incorporate and make reference to those facts' contained in this appeal. KVSP actions' in this case violate Appellants' right under tit.15 CCR which have the "FORCE OF LAW" when they (i) continue or continue to confine Appellants' to their cells and deprive them of exercise more than "10" days (see tit.15 CCRS 3322 (a)(c); (ii) Deprived and continue to deprive Appellants' of outdoor recreation and program activities consistant with our custody and privilege group.(see tit.15 CCRS 3044(d)(3); (iii) Deprived and continue to deprive Appellants' of telephone access, access to yard, and report to work assignment.(see tit.15 CCRS 3044(d)(3)(D),[telephne access]; tit.15 CCRS 3044(d)(3)(E)[access to yard]; tit.15 CCRS 3041(a)(b)[report our work assignment] (iv) Discriminated and continue to discriminate against Appellants', by the preferential treatment that KVSP officals have subjected and continue to subject Appellants' to living conditions that are more restrictive than those of "ADMINISTRATIVE SEGREGATION", and comparable to the living conditions of disciplinary detention. Appellants' are not extreme menegment problems, nor have we committed any rule violations which would warrant such inhumane treatment by ( KVSP officals).

Appellants' have not engage in any type of misconduct or improper behavior to be completely stripped of rights/privileges that we are entitled to as a matter of "Administrative Regulation".

## "PRAYER FOR RELIEF"

1) Appellants' request that the DIR redress/correct the "MYRID OF RIGHTS" connected with a "HEARING AND IT'S DUE PROCESS". Such Rights', that have, and continue to be violated have triggered the "LIBERTY INTEREST CLAUSE", due to the "SUBSTANTIVE PREDICATES" that State Law specifies, and Appellants' are to be free from arbitrary, and undue restraint by Government, or it's officals'.
2) That Appellants' be provided with outdoor exercise immediately.
3) That KVSP officals act in accordance with their own Administrative Regulations as described within this appeal, and the "Accardi Doctrine" which bars Administrative Agencies from taking action "Inconsistent with their internal regulations when it would effect indiviual rights".

4) That KVSP immediately provide outdoor exercise, recreation, and program activities consistent with Appellants' custody/privileges group pursuant to tit.15 CCR§ 3044(d)(3).

5) That KVSP officals abandoned such "PREFERENTIAL LOCKDOWN" policy of locking down inmates on the basis of ethnicity, which the courts ruled impermissible.

6) That KVSP officals implement the existing alternative policy in releasing inmates form lockdown on the basis of their individual case factors/behaviors, rather than on the basis of ethnicity.

## "CONCLUSION"

Appellants' close with the following facts: KVSP officals have failed to preform a clear, present, and usual "BENEFICAL RIGHTS" to performance of that duty, as Mandated by the Courts and CCR tit.15. KVSP officals have all failed to act when a duty to act existed.

This Administration has also been placed on constructive notice pursuant to California Civil Code §,§, 18,19.

Appellant Contends. That. Sgt. Doria Cited ERRONEOUS C.C.R Tit. 15 § In her Response To Appellants' Appeal.

Based on C.C.R § 3383. (a)(b)(1-3)(c) And (d) Dose Reserves The Right To Place Inmates On "Lockdown" And "Modified Program". Note: When Then Warden Dose "Lockdown" All housing Units/subfacilities within A facility That will Exceed 24 To 72 hours, He or she "Must Require APPROVAL" At The Director's Level.

Appellants' contend That B-facility Was Placed On "Modified Program" BY An "UNDERGROUND Policy" For '33' DAYS, From January 28, 2007 Through MARCH 01, 2007 without The Approval of The Director As Described In supra.

KVSP Offical's have on Two other occasions LockDown B-facility For In-cidents' That have occured on other facilities. 1) on June 1st Through 15th of 2006 was placed on "modified Program". 2) on September 16, Through October 2nd of 2006, B-facility was once Again Placed on Lock-Down for Unrelated Incidents which occured on other facilities.

Plaintiff's will once again Request The Termination of such Deprivational Practices That have and Continued To be Inflicted upon Appellants By forcing Them To stay In their cells For "24" hours A DAy for Long Periods of Time, which Is Known To CAUSE severe Dshchological And Emotional Pain.

TO THEIR CELLS FOR 24 HOURS A DAY, SUCH EXTREMELY / LENGTHY PERIODS OF TIME, CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.

ON FEB 14, 2007 PRISON OFFICALS AUTHORIZED A CONTINUAL SUSPENSION OF OUT DOOR EXERCISE AND PROGRAM ACTIVITIES, DUE TO UNRELATED INCIDENTS WHICH OCCURED ON ON ANOTHER FACILITY.

24 HOUR CELL CONFINEMENT FOR LENGTHY PERIODS OF TIME, IS ENTIRELY INCONSISTENT WITH APPELLANTS' CUSTODIES AND PRIVILEGES GROUP STATUS, AND THESE ARBITRARY IMPLEMENTATIONS BY PRISON OFFICALS ARE IN "GROSS CONTRAVENTION" WITH 8th AMENDMENT STANDARDS AND TITLE 15.

APPELLANTS' HAVE BEEN DENIED THEIR "EARNED PRIVILEGES" PER CCR 15 § 3044 (d),(3). THIS ADMINISTRATION HAS DEPRIVED APPELLANTS' OF THEIR "EARNED PRIVILEGES", INFACT; STAFF HAS DEPRIVED APPELLANTS OF THEIR "GUARENTEED RIGHT TO DUE PROCESS OF LAW".

APPELLANTS' HAVE BEEN SUBJECTED TO PUNISHMENT, AND THEIR PRIVILEGES HAVE BEEN MODIFIED AND TEMPORARILY SUSPENDED WITHOUT DUE PROCESS OF LAW. NOTE: APPELLANTS' HAVE NOT VIOLATED ANY RULES OR REGULATIONS TO RECEIVE SUCH HARSH PUNISHMENT.

ADDITIONALLY, PURSUANT TO CCR TITLE 15 § 3314-15, IN ORDER TO "SUSPEND OR MODIFY" APPELLANTS' PRIVILEGES, APPELLANTS' "MUST BE FOUND GUILTY" FOR A DISCIPLINARY OFFENSE AS DESCRIBED IN CCR § 3044 (c).(2-3). ONLY THEN CAN A COMMITTEE, OR A HEALING OFFICER MODIFY OR SUSPEND APPELLANTS' PRIVILEGES.

THIS ADMINISTRATION ACTIONS HAVE SUBJECTED APPELLANTS' TO A ARBITRARY DEPRIVATION OF DUE PROCESS OF LAW. APPELLANTS' HAVE BEEN DENIED THE BASIC DUE PROCESS REQUIREMENTS ESTABLISHED UNDER CCR 15 § 3375 (f),(1),(A-6).

SUCH DEPRIVATIONAL PRACTICES INFLICTED UPON APPELLANTS' HAVE AMOUNTED TO CRUEL AND UNUSUAL PUNISHMENT, BEING THAT THE APPELLANTS' HAVE BEEN FORCED TO STAY IN THEIR CELLS FOR 24 HOURS A DAY, FOR 30 CONSECUTIVE DAYS, AND "CONSCIOUSLY DEPRIVING" APPELLANTS' OF OUTDOOR EXERCISE, AND PROGRAM ACTIVITIES (ie. TELEPHONE ACCESS, INMATE CANTEEN, PACKAGES etc.). ALSO, APPELLANTS' PRIVILEGES WERE "ARBITRARILY SUSPENDED AND MODIFIED WITHOUT THE BASIC DUE PROCESS" REQUIRE- MENTS THAT CCR 15 § 3375 (f),(1), (A-G) MANDATES PRISON OFFICALS TO ADHERE TO. RECEIVED

State of California          Department of Corrections and Rehabilitation

# Memorandum

Date :    JUL 1 8 2007 *Received on* 7·20·07 (*FL*)

To :    INMATE QUESADA, P90436
Kern Valley State Prison

Subject :    **APPEAL LOG # KVSP-O-07-00823**
**SECOND LEVEL RESPONSE**

**PURSUANT TO CCR SECTION 3084.2 GROUP APPEAL – IF A GROUP OF INMATES INTEND TO APPEAL A DECISION, ACTION OR POLICY AFFECTING ALL MEMBERS OF THE GROUP, ONE. APPEAL FORM WITH THE NAME AND DEPARTMENTAL IDENTIFICATION NUMBER OF THE INMATE WHO PREPARED THE APPEAL SHALL BE SUBMITTED.**

**APPEAL ISSUE:** The appellants contend twenty-four (24) hour cell confinement for lengthy periods of time constitutes cruel and unusual punishment in the form of psychological and emotional pain. They are requesting prison officials stop suspending a particular facility's program for incidents which occurred on another facility. In addition, prison officials refrain from confining inmates to their living quarters for lengthy periods of time. Lastly, they request the institution provide the appellant's due process relative to modified or suspended program.

**INTERVIEW:** The appellant was interviewed on May 9, 2007 by D.I. Doria, Correctional Sergeant, regarding his appeal. He was afforded the opportunity to further explain his issue and to provide any supporting evidence or documents.

**REGULATIONS:** The rules governing this issue are:

California Code of Regulations: CCR; Title 15, Section(s) 3001, 3270, 3271, 3380
Kern Valley State Prison (KVSP) Operational Procedure #226 – Program Status Report

## APPEAL RESPONSE:

B. Gricewich, Correctional Counselor II, was assigned to investigate this appeal at the Second Level of Review. All submitted documentation and supporting arguments have been considered. Additionally, a thorough examination has been conducted regarding the claim presented, and evaluated in accordance with KVSP Operational Procedures (OP), the California Code of Regulations (CCR) and the Departmental Operations Manual (DOM).

**QUESADA, P90436**
**CASE NO. KVSP-O-07-00823**
**Page 2**

The appellants assert that KVSP's decision to modify the Facility B program on February 8, 2007 and again on February 15, 2007 was prejudicial. They further state that keeping the general population on lockdown for weeks is simply a punishment in a fashion that is cruel and unusual.

It is noted that Facility B was placed on modified program on February 8, 2007 due to the discovery of missing metal stock in the Facility B visiting room. For this reason it was determined that searches, as well as an investigation was necessary before normal program could resume (refer to attached Program Status Report KVP-B-07-007). On February 15, 2007, Facilities A, B, C, and D were placed on a modified program due to a riot between Black and White Inmates on Facility A in addition to a homicide on the same facility. It was determined an investigation into the riot as well as the homicide was necessary before normal program could resume (refer to Program Status Report KVP-CO-07-012). This investigation was subsequently completed and normal program was restored to Facility B on March 12, 2007 (refer to Program Status Reports KVP-B-07-014).

The California Department of Corrections and Rehabilitation require that institutional security and safety of persons shall take precedence over all other considerations. It is standard practice in the Department to place a facility on modified program after disturbances. It is also appropriate for staff to investigate and question the inmate population to ascertain the current safety of staff and other inmates on a given facility. Each violent inmate incident is evaluated on its own merit because each has its own dynamics. The Warden and other administrative staff meet daily to determine the necessary restrictions on routine activities.

Based on the aforementioned, this appeal is denied. There is no merit to the appellants claim that KVSP violated their due process relative to the modification of Facility B program. The institution will continue to implement operational procedures and modified programs to preserve the safety of staff and inmates pursuant to CCR section 3270.

**DECISION**: The appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

C.J. CHRONES
Chief Deputy Warden
Kern Valley State Prison

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date : May 21, 2007

To : QUESADA, P90436
Kern Valley State Prison

Subject : **APPEAL LOG # KVSP-O-0$\mathit{4}$-00823
FIRST LEVEL RESPONSE**

**APPEAL ISSUE:** You contend the administration at Kern Valley State Prison (KVSP) continual practice of modifying B-Facility's program to the point where the general population has been denied outdoor exercise since January 28, 2007 causing severe psychological and emotional pain and the probability that this pain may result in irreparable harm to the appellants well being.

You request that prison officials stop suspending B-Facility's program for incidents which occur on other Institutional Facilities, that prison officials discontinue unconstitutional practices of periods of confinement to living quarters specifically for 24 hours a day without providing outdoor exercise to appellants, and that due process be provided to appellants when ever their privileges are going to be modified or suspended.

**INTERVIEW:** On May 9, 2007, you were interviewed by D.I. Doria, Correctional Sergeant, regarding your appeal. You were afforded the opportunity to further explain your issue and to provide any supporting evidence or documents.

**APPEAL RESPONSE:** Your appeal, the attachments, and the California Code of Regulations (CCR) Title 15 have been reviewed.

On January 28, 2007, Facility B Visiting discovered missing metal stock from the podium desk. The inmate population on Facility B was placed on Modified Program to conduct searches, pending further investigation ,and administrative review. On February 14, 2007, a riot between the black and white inmates and a homicide occurred on Facility A involving the Hispanic population. Therefore, the entire institution was placed on modified program pending an investigation. Based on the following CCR Title 15 Sections, the California Department of Corrections Rehabilitation reserves the right to place inmates on a modified program;

- CCR Title 15 3044 (4) (D)
- CCR Title 15 3271
- CCR Title 15 3300

First Level Response
Quesada, P90436
KVSP-O-00-00823
Page 2

**DECISION**: Based on the above information, your appeal is **DENIED** at the First Level of review.

If you are dissatisfied with this decision, you may appeal to the Second Level by following the instructions on your appeal form.

D.I. Doria
Correctional Sergeant
Kern Valley State Prison

S.L. Kays
Associate Warden, Complex I
Kern Valley State Prison

State of California
·CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

ReceiveD on 3-22-07 (THur)

*March 21, 2007*

*QUESADA, P90436*
*FBB200000000212U*

Log Number: KVSP-O-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Your appeal is incomplete. You must include supporting documentation. All documents must be legible. (If necessary, you may obtain copy(ies) of requested documents by sending your request with a signed trust withdrawal form to your assigned counselor.)*

*Attach Program Status Report*

B. GRICEWICH / C. PFEIFFER / W. ADAMS
Appeal Coordinator

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

RECEIVED APR 1 2 2007

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

| NAME | SIGNATURES | NUMBER | CELL |
|---|---|---|---|
| STEPHEN WILLIAMS | Stephen Williams | J-55038 | B2 - 115 |
| RODRIGUEZ DAVID | DY P. | P.03196 | B2 - 215 |
| TOVAR RICHARD | | T-01448 | B2 - 215 |
| Bryan Coleman | Bryan Coleman | K-12532 | B2 - 216 |
| Raymond McGinnit | Raymond m | P.53244 | B2 - 216 |
| Jonathan L. Williams | Jonathan L Williams | J-86047 | B2 218 |
| Ron. Kay | Ron Kay | V-90352 | B2 - 218 |
| 5. STANKo | Steve Starke | P74443 | B2-217 |
| D. MOORE | | J52867 | B2-217 |
| GARCIA | | V-05923 | B2·219 |
| Villanueva | Mario Villanueva | K-68316 | B2·219 |
| TUDHILL | Richard Tuthill | P-55863 | B2 - 211 |
| | | TD0263 | B2 911 |
| Gonzales | | e80658 | B2 112 |
| Rosas | | K38781 | B 2 117 |
| HARRIS | | D08858 | B· 2· 113 |
| JACOBS | | V68070 | B· 2· 113 |
| WINTER | | T73169 | B2 114 |
| NUNES | | 072916 | B2 114 |
| NAVARRO | | J-55486 | B2-212 low |
| JOHNSON | James Johnson | H20269 | B2-115 |
| MORALES | | K-6268 | B2-116 |
| ORKES | | 790498 | B2 116 |
| CARTER | Carter | K-96261 | B-2-117 |
| M. MARK | M. Mark | V-91619 | B 2 2/7 |
| J. Miller | | V-39447 | B2-120 up |
| Andrews | Andrew | T-56754 | B2-120 |
| Pickens | | T-81118 | B2 119 |

# EXHIBIT COVER PAGE:



Description of this Exhibit:

Exhibit

Exhibit A-1 is true and correct set of copies of KVSP PSRs' establishing the extensive cell confinement/perential lockdown policy's that KVSP officals' have been implementing at KVSP.

The PSRs' are from January 1, 2007 - March 13, 2007.

Number of pages to this Exhibit: ___-9-___ pages.

## JURISDICTION: (Check only One)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United States Surpeme Court
☐ Grand Jury

# PART B - PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| INSTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| Kern Valley State Prison | 01/04/07 | KVP-B-07-001 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☒ INITIAL | ☐ UPDATE | | ☐ CLOSURE |

## RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| ☐ INSTITUTION | ☐ ALL | ☐ BATTERY |
| ☒ FACILITY: ___B___ | ☐ BLACK | ☐ DEATH |
| ☒ HOUSING UNIT: __2 thru 8__ | ☐ WHITE | ☐ RIOT / DISTURBANCE |
| ☐ VOCATION: _____ | ☒ HISPANIC and I/M's housed with Hispanics | ☐ GROUPING |
| ☐ EDUCATION: _____ | ☐ OTHER | ☒ OTHER: _Contraband found during searches_ |
| ☐ OTHER: _____ | ☐ | |

| MOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☐ CRITICAL WORKERS ONLY | ☐ NORMAL |
| ☒ ESCORT ALL MOVEMENT in handcuffs | ☐ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| ☐ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☐ CLERKS | ☐ MODIFIED: _____ |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| ☐ OTHER: _____ | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| **FEEDING** | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: _____ |
| ☐ NORMAL | ☐ PORTERS | |
| ☒ CELL FEEDING (All inmates 2 thru 8) | ☒ NO INMATE WORKERS | **CANTEEN** |
| ☐ CONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☒ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☒ ESCORTED | ☐ MODIFIED: _____ |
| ☐ TIER AT A TIME | ☐ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☒ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: _____ |
| **DUCATS** | **MEDICAL** | |
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | **PHONE CALLS** |
| ☐ MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☐ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☐ MTA CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| ☒ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: _____ |
| **VISITING** | ☒ EMERGENCY MEDICAL ONLY | |
| ☐ NORMAL VISITING | ☐ OTHER: _____ | **RELIGIOUS SERVICES** |
| ☐ NON-CONTACT ONLY | | ☐ NORMAL |
| ☒ NO VISITING | **LEGAL LIBRARY** | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER: _____ | ☐ NORMAL | ☐ MODIFIED: _____ |
| | ☒ APPROVED COURT DEADLINES | |

**REMARKS:**
Effective January 4, 2007, all Hispanic inmates housed on Facility B, Buildings 2 thru 8 will be placed on a Modified Program. The aforementioned is due to an ongoing investigation of criminal activity on Facility B, by the Hispanic population.

| PREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) Original signed by | DATE |
|---|---|---|---|
| M. R. Phillips, Correctional Lieutenant | 01/04/07 | A. HEDGPETH, WARDEN (A) | 01/04/07 |

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| r∎UTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| ern Valley State Prison | January 17, 2007 | KVP-B-07-001 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| | ☐ INITIAL | ☒ UPDATE | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| EA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| ☐ INSTITUTION | ☐ ALL | ☐ BATTERY |
| ☐ FACILITY: ___ B ___ | ☐ BLACK | ☐ DEATH |
| ☐ HOUSING UNIT: ___ 2 thru 8 ___ | ☐ WHITE | ☐ RIOT / DISTURBANCE |
| ☐ VOCATION: _____ | ☒ HISPANIC and I/M's housed with Hispanics | ☐ GROUPING |
| ☐ EDUCATION: _____ | ☐ OTHER : | ☒ OTHER: _Contraband found during searches_ |
| ☐ OTHER: _____ | ☐ | |

| ∎VEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☐ CRITICAL WORKERS ONLY | ☒ NORMAL |
| ☐ ESCORT ALL MOVEMENT | ☐ CULINARY | ☐ NO DAYROOM ACTIVITIES |
| ☐ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☐ CLERKS | ☐ MODIFIED: _____ |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| ☐ OTHER: _____ | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| **∎EDING** | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: _____ |
| ☐ NORMAL | ☐ PORTERS | |
| ☐ CELL FEEDING | ☒ NORMAL | **CANTEEN** |
| ☐ CONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☒ NORMAL | ☒ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☐ ESCORTED | ☐ MODIFIED: _____ |
| ☐ TIER AT A TIME | ☐ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: _____ |
| **∎UCATS** | **MEDICAL** | |
| ☒ ALL DUCATS HONORED | ☒ NORMAL MEDICAL PROGRAM | **PHONE CALLS** |
| ☐ MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☒ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☐ MTA CONDUCT ROUNDS IN UNITS | ☐ NO PHONE CALLS |
| ☐ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: _____ |
| **∎ISITING** | ☐ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING | ☐ OTHER: _____ | **RELIGIOUS SERVICES** |
| ☐ NON-CONTACT ONLY | | ☒ NORMAL |
| ☐ NO VISITING | **LEGAL LIBRARY** | ☐ NO RELIGIOUS SERVICES |
| ☐ OTHER: _____ | ☒ NORMAL | ☐ MODIFIED: _____ |
| | ☐ APPROVED COURT DEADLINES | |

### REMARKS:

Effective January 4, 2007, all Hispanic Inmates housed on Facility B, Buildings 2 thru 8 will be placed on a Modified Program. The aforementioned is due to an ongoing investigation of criminal activity on Facility B, by the Hispanic population. On Saturday, January 13, 2007, interviews and searches were completed. On January 17, 2007, an administrative decision has been made to allow the Hispanic Inmate population normal dayroom activities.

| PREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| F. Reynoso, Correctional Lieutenant | 01/17/07 | A. HEDGPETH, WARDEN (A) | 01/17/07 |

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| INSTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| Kern Valley State Prison | February 8, 2007 | KVP-B-07-007 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☐ INITIAL | | ☒ UPDATE | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| ☐ INSTITUTION | ☒ ALL | ☐ BATTERY |
| ☐ FACILITY: B | ☐ BLACK | ☐ DEATH |
| ☐ HOUSING UNIT: 2-8 | ☐ WHITE | ☐ RIOT / DISTURBANCE |
| ☐ VOCATION: | ☐ HISPANIC | ☐ GROUPING |
| ☐ EDUCATION: | ☐ OTHER | ☒ OTHER: Missing Metal Stock |
| ☐ OTHER: | ☐ | |

| MOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☒ CRITICAL WORKERS ONLY No White Inmates | ☐ NORMAL |
| ☒ ESCORT ALL MOVEMENT | ☒ CULINARY No White Inmates | ☒ NO DAYROOM ACTIVITIES |
| ☐ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☒ CLERKS | ☐ MODIFIED: |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| ☐ OTHER: | ☒ CANTEEN No White Inmates | ☐ NORMAL |
| | ☒ CLOTHING ROOM No White Inmates | ☒ NO RECREATIONAL ACTIVITIES |
| **FEEDING** | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: |
| ☐ NORMAL | ☒ PORTERS No White Inmates | |
| ☒ CELL FEEDING | ☐ NO INMATE WORKERS | **CANTEEN** |
| ☐ CONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☐ NO CANTEEN |
| ☐ DORM-POD AT-A-TIME | ☐ ESCORTED | ☒ MODIFIED: Approved Critical Workers Only |
| ☐ TIER AT A TIME | ☐ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☒ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☐ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☒ MODIFIED: Approved Critical Workers Only |
| **DUCATS** | **MEDICAL** | |
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | **PHONE CALLS** |
| ☐ MEDICAL DUCATS ONLY | ☒ PRIORITY DUCATS ONLY | ☐ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☒ MTA CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| ☒ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: |
| **VISITING** | ☐ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING | ☐ OTHER: | **RELIGIOUS SERVICES** |
| ☐ NON-CONTACT ONLY | | ☐ NORMAL |
| ☐ NO VISITING | **LEGAL LIBRARY** | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER: | ☐ NORMAL | ☐ MODIFIED: |
| | ☒ APPROVED COURT DEADLINES | |

**REMARKS:**

On Sunday, January 28, 2007, staff in Facility B Visiting discovered missing metal stock from the podium desk. An inventory was completed and four metal drawer guides were discovered missing. Based on the serious nature of this incident, all inmates on Facility B will be placed on a Modified Program Status, to conduct searches, pending a further investigation and administrative review of this matter.

Effective February 8, 2007 the above privileges have been modified to allow all Critical Workers access to Canteen as well as Quarterly Packages.

| PREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| M. R. Phillips, Lieutenant | 02/08/07 | A. HEDGPETH, WARDEN (A) | 02/08/07 |

## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| INSTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| Kern Valley State Prison | February 15, 2007 | KVP-B-07-007 |

| ☒ NORMAL PROGRAM | ☐ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☐ INITIAL | ☐ UPDATE | | ☒ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| ☐ INSTITUTION | ☒ ALL | ☐ BATTERY |
| ☒ FACILITY: B | ☐ BLACK | ☐ DEATH |
| ☒ HOUSING UNIT: 2-8 | ☐ WHITE | ☐ RIOT / DISTURBANCE |
| ☐ VOCATION: | ☐ HISPANIC | ☐ GROUPING |
| ☐ EDUCATION: | ☐ OTHER | ☒ OTHER: Missing Metal Stock |
| ☐ OTHER: | ☐ | |

| MOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☐ CRITICAL WORKERS ONLY | ☒ NORMAL |
| ☒ ESCORT ALL MOVEMENT | ☐ CULINARY | ☐ NO DAYROOM ACTIVITIES |
| ☐ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☐ CLERKS | ☐ MODIFIED: |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| ☐ OTHER: | ☐ CANTEEN | ☒ NORMAL |
| | ☐ CLOTHING ROOM | ☐ NO RECREATIONAL ACTIVITIES |
| **FEEDING** | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: |
| ☒ NORMAL | ☐ PORTERS | |
| ☐ CELL FEEDING | ☒ NORMAL | **CANTEEN** |
| ☐ CONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☒ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☒ NORMAL | ☐ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☐ ESCORTED | ☐ MODIFIED: |
| ☐ TIER AT A TIME | ☐ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☒ NORMAL |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☐ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: |
| **DUCATS** | **MEDICAL** | |
| ☒ ALL DUCATS HONORED | ☒ NORMAL MEDICAL PROGRAM | **PHONE CALLS** |
| ☐ MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☒ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☐ MTA CONDUCT ROUNDS IN UNITS | ☐ NO PHONE CALLS |
| ☐ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: |
| **VISITING** | ☐ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING | ☐ OTHER: | **RELIGIOUS SERVICES** |
| ☐ NON-CONTACT ONLY | | ☒ NORMAL |
| ☐ NO VISITING | **LEGAL LIBRARY** | ☐ NO RELIGIOUS SERVICES |
| ☐ OTHER: | ☒ NORMAL | ☐ MODIFIED: |
| | ☐ APPROVED COURT DEADLINES | |

**REMARKS:**
This PSR is closed. The facility shall remain under the guidelines as set by PSR KVP-OP-07-0012.

| PREPARED BY: F. Reynoso, Lieutenant | DATE 2/15/07 | NAME / SIGNATURE (WARDEN) A. Hedgpeth, Warden (A) | DATE 2/15/07 |
|---|---|---|---|

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| ISTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| Kern Valley State Prison | February 15, 2007 | KVP-CO-07-012 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☒ INITIAL | | ☐ UPDATE | ☐ CLOSURE |

**RELATED INFORMATION (CHECK ALL THAT APPLY)**

| REA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| | ☒ ALL | ☐ BATTERY |
| NSTITUTION | | |
| ☒ FACILITY: ___A, B, C, D___ | ☐ BLACK | ☒ DEATH |
| ☒ HOUSING UNIT: ALL_____ | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| ☐ VOCATION: _____ | ☐ HISPANIC | ☐ GROUPING |
| ☐ EDUCATION: _____ | ☐ OTHER | ☐ OTHER: _____ |
| ☐ OTHER: _____ | ☐ | |

| 1OVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☒ CRITICAL WORKERS ONLY B, C, D | ☐ NORMAL |
| ☒ ESCORT ALL MOVEMENT IN HANDCUFFS | ☐ CULINARY Fac A will use A Gym inmates | ☒ NO DAYROOM ACTIVITIES |
| ☒ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☐ CLERKS | ☐ MODIFIED: _____ |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| ☐ OTHER: _____ | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| 'EEDING | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: ___ |
| ☐ NORMAL | ☐ PORTERS | |
| ☒ CELL FEEDING | ☐ NO INMATE WORKERS | **CANTEEN** |
| ☐ CONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☒ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☒ ESCORTED | ☐ MODIFIED: _____ |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: ___ |
| JUCATS | **MEDICAL** | |
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | **PHONE CALLS** |
| ☒ MEDICAL DUCATS ONLY | ☒ PRIORITY DUCATS ONLY | ☐ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☐ MTA CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| ☐ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: _____ |
| VISITING | ☐ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING-B, C, D | ☐ OTHER: _____ | **RELIGIOUS SERVICES** |
| ☐ NON-CONTACT ONLY | | ☐ NORMAL |
| ☒ NO VISITING For Facility A only | LEGAL LIBRARY | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER :visiting to be cleaned by gym inmates. | ☐ NORMAL | ☐ MODIFIED: _____ |
| | ☒ APPROVED COURT DEADLINES | |

REMARKS:

On Wednesday, February 14, 2007, at approximately 1110 hours, a riot occurred at Kern Valley State Prison (KVSP) Facility A, upper yard, between Black and White Inmates. On said date, at approximately 1900 hours, a homicide occurred on Facility A, in Housing Unit #8, C-Section. Kern Valley State Prison is placed on Modified Program status pending the completion of the investigation.

| PREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| E. G. FLORES, Custody Captain – Central Operations | 2-15-07 | A. HEDGPETH, Warden (A) | 2-15-07 |

# PROGRAM STATUS REPORT

## PART B - PLAN OF OPERATION – STAFF & INMATE NOTIFICATION

| INSTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER |
|---|---|---|
| Kern Valley State Prison | February 23, 2007 | KVP-CO-07-012 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☐ INITIAL | ☒ UPDATE | | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| **INSTITUTION** | ☒ ALL | ☐ BATTERY |
| ☒ FACILITY: _A, B, D_ | ☐ BLACK | ☒ DEATH |
| ☒ HOUSING UNIT: 1-8 | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| ☐ VOCATION: _____ | ☐ HISPANIC | ☐ GROUPING |
| ☐ EDUCATION: _____ | ☐ OTHER | ☐ OTHER: _____ |
| ☐ OTHER: _____ | ☐ | |

| MOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☒ NO HISPANIC CRITICAL WORKERS CAPTAINS WILL APPROVE ALL CRITICAL WORKERS | ☐ NORMAL |
| ☒ ESCORT ALL MOVEMENT IN HANDCUFFS | ☐ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| ☒ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☐ CLERKS | ☐ MODIFIED: _____ |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| ☐ OTHER: _____ | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| **FEEDING** | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: _____ |
| ☐ NORMAL | ☐ PORTERS | |
| ☒ CELL FEEDING | ☐ NO INMATE WORKERS | **CANTEEN** |
| ☐ CONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☒ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☒ ESCORTED | ☐ MODIFIED: _____ |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: _____ |
| **DUCATS** | **MEDICAL** | |
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | **PHONE CALLS** |
| ☒ MEDICAL DUCATS ONLY | ☒ PRIORITY DUCATS ONLY | ☐ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☐ MTA CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| ☐ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: _____ |
| **VISITING** | ☐ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING B, and D | ☐ OTHER: _____ | **RELIGIOUS SERVICES** |
| ☐ NON-CONTACT ONLY | | ☐ NORMAL |
| ☒ NO VISITING For Facility A | **LEGAL LIBRARY** | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER | ☐ NORMAL | ☐ MODIFIED: _____ |
| | ☒ APPROVED COURT DEADLINES | |

REMARKS:
Facility A, B, and D Modified Program, (see above).
All KVSP Gyms (A, B, C, D) on Normal Program.
Facility C, Normal Program.

| PREPARED BY: E. G. FLORES, Custody Captain Central Operations | DATE 2-23-07 | NAME / SIGNATURE (WARDEN) A. HEDGPETH, Warden (A) | DATE 2-23-07 |
|---|---|---|---|

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| TITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| Kern Valley State Prison | February 27, 2007 | KVP-CO-07-012 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☐ INITIAL | | ☒ UPDATE | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| REA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| | ☒ ALL | ☐ BATTERY |
| ISTITUTION | ☒ BLACK | ☒ DEATH |
| ☐ FACILITY: __A, B, D__ | ☒ WHITE | ☒ RIOT / DISTURBANCE |
| ☐ HOUSING UNIT: All | ☒ HISPANIC | ☐ GROUPING |
| ☐ VOCATION: _____ | ☒ OTHER | ☐ OTHER: _____ |
| ☐ EDUCATION: _____ | ☐ | |
| ☐ OTHER: _____ | | |

| OVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☒ NO HISPANIC CRITICAL WORKERS CAPTAINS WILL APPROVE ALL CRITICAL WORKERS | ☐ NORMAL |
| ☐ ESCORT Facility A, B, D (only) movement in indcuffs | ☐ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| ☐ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☐ CLERKS | ☐ MODIFIED. _____ |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | RECREATION |
| ☐ OTHER: | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| EEDING | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: _____ |
| ☐ NORMAL | ☐ PORTERS | |
| ☐ CELL FEEDING | ☐ NO INMATE WORKERS | CANTEEN |
| ☐ CONTROLLED FEEDING IN DINING ROOM | SHOWERS | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☐ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☒ ESCORTED | ☒ MODIFIED: critical workers only all yards |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | PACKAGES |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| ☐ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: _____ |
| UCATS | MEDICAL | |
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | PHONE CALLS |
| ☒ MEDICAL DUCATS ONLY | ☒ PRIORITY DUCATS ONLY | ☐ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☐ MTA CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| ☐ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: _____ |
| ISITING | ☐ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING B, C and D | ☐ OTHER: _____ | RELIGIOUS SERVICES |
| ☐ NON-CONTACT ONLY | | ☐ NORMAL |
| ☒ NO VISITING Hispanics Facility A | LEGAL LIBRARY | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER | ☐ NORMAL | ☐ MODIFIED: _____ |
| | ☒ APPROVED COURT DEADLINES | |

REMARKS:
Facility A, B, and D Modified Program, (see above).
All KVSP Gyms (A, B, C, D) on Normal Program.
Facility C, Normal Program.

| PREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| E. G. FLORES, Custody Captain – Central Operations | 2-27-07 | A. HEDGPETH, Warden (A) | 2-27-07 |

# PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| TITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| Kern Valley State Prison | March 1, 2007 | KVP-B-07-014 |

| | NORMAL PROGRAM | ☒ MODIFIED PROGRAM | | LOCKDOWN | | STATE OF EMERGENCY |
|---|---|---|---|---|---|---|

| ☒ INITIAL | | UPDATE | | CLOSURE |
|---|---|---|---|---|

RELATED INFORMATION (CHECK ALL THAT APPLY)

| EA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| | ☒ ALL | ☐ BATTERY |
| STITUTION | | |
| ] FACILITY: B | ☐ BLACK | ☒ DEATH on Facility A |
| ] HOUSING UNIT: 2-8 | ☐ WHITE | ☒ RIOT / DISTURBANCE on Facility A |
| ] VOCATION: | ☐ HISPANIC | ☐ GROUPING |
| ] EDUCATION: | ☐ OTHER'S: | ☐ OTHER: |
| ] OTHER: | ☐ | |

| OVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ].NORMAL: Blacks, Whites & Others | ☒ NO HISPANIC Blacks Whites and Others Only | ☐ NORMAL |
| ] ESCORT All Hispanics in handcuffs | ☒ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| ] UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☒ CLERKS | ☐ MODIFIED: |
| ] CONTROLLED MOVEMENT | ☒ VOCATION/EDUCATION | **RECREATION** |
| ] OTHER: | ☒ CANTEEN | ☒ NORMAL: Blacks, Whites &Others |
| | ☒ CLOTHING ROOM | ☒ NO-RECREATIONAL ACTIVITIES: Hispanics |
| EDING | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: |
| ] NORMAL | ☒ PORTERS | |
| ] CELL FEEDING | ☐ NO INMATE WORKERS | **CANTEEN** |
| ] CONTROLLED FEEDING IN DINING ROOM | SHOWERS | ☒ NORMAL: Blacks, Whites & Others |
| ☐ HOUSING UNIT/DORM AT A TIME | ☒ NORMAL Black Whites and Others | ☒ NO CANTEEN: Hispanics |
| ☐ DORM POD AT A TIME | ☒ ESCORTED Hispanics | ☐ MODIFIED: |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ] SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☒ NORMAL: Blacks, Whites & Others |
| ] SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES: Hispanics |
| ] SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: |
| JCATS | MEDICAL | |
| ] ALL DUCATS HONORED: Blacks, Whites & thers | ☒ NORMAL MEDICAL PROGRAM: Blacks, Whites & Others | **PHONE CALLS** |
| ] MEDICAL DUCATS ONLY Hispanics | ☒ PRIORITY DUCATS ONLY Hispanics | ☒ NORMAL: Blacks, Whites & Others |
| ] CLASSIFICATION DUCATS | ☐ MTA CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS: Hispanics |
| ] PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: |
| SITING | ☐ EMERGENCY MEDICAL ONLY | |
| ] NORMAL | ☒ OTHER: All nurses' call-ins will be honored. | RELIGIOUS SERVICES |
| ] NON-CONTACT ONLY | | ☒ NORMAL: Blacks, Whites & Others |
| ] NO VISITING | LEGAL LIBRARY | ☒ NO RELIGIOUS SERVICES: Hispanics |
| ] OTHER | ☒ NORMAL: Blacks, Whites &Others | ☐ MODIFIED: |
| | ☒ APPROVED COURT DEADLINES: Hispanics | |

EMARKS:

his Program Status Report (PSR) is the separation/continuation from PSR # KVP-CO-07-0012

acility B Gym is normal program, Hispanics include inmates living with Hispanics.

| REPARED BY | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| R. W. NIPPER, Facility Captain | 03-01-07 | A. HEDGPETH, Warden (A) | 03-01-07 |

# PROGRAM STATUS REPORT

## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| INSTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER |
|---|---|---|
| Kern Valley State Prison | March 13, 2007 | KVP-B-07-014 |

☒ NORMAL PROGRAM ☐ MODIFIED PROGRAM ☐ LOCKDOWN ☐ STATE OF EMERGENCY

☐ INITIAL ☐ UPDATE ☒ CLOSURE

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| | ☒ ALL | ☐ BATTERY |
| INSTITUTION | ☐ BLACK | ☒ DEATH on Facility A |
| ☒ FACILITY: B | ☐ WHITE | ☒ RIOT / DISTURBANCE on Facility A |
| ☒ HOUSING UNIT: 2-8 | ☐ HISPANIC | ☐ GROUPING |
| ☐ VOCATION: | ☐ OTHER'S | ☐ OTHER: |
| ☐ EDUCATION | ☐ | |
| ☐ OTHER: | | |

| MOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☒ NORMAL: | ☒ NORMAL | ☒ NORMAL |
| ☐ ESCORT: | ☐ CULINARY | ☐ NO DAYROOM ACTIVITIES |
| ☐ UNCLOTHED BODY | ☐ CLERKS | ☐ MODIFIED: |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| ☐ OTHER: | ☐ CANTEEN | ☒ NORMAL: |
| | ☐ CLOTHING ROOM | ☐ NO RECREATIONAL ACTIVITIES |
| **FEEDING** | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: |
| ☒ NORMAL | ☐ PORTERS | |
| ☐ CELL FEEDING | ☐ NO INMATE WORKERS | **CANTEEN** |
| ☐ CONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☒ NORMAL: |
| ☐ HOUSING UNIT/DORM AT A TIME | ☒ NORMAL | ☐ NO CANTEEN: |
| ☐ DORM POD AT A TIME | ☐ ESCORTED | ☐ MODIFIED: |
| ☐ TIER AT A TIME | ☐ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST: | ☐ DORM SHOWERING BY GROUP | ☒ NORMAL: |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☐ NO PACKAGES: |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: |
| **DUCATS** | **MEDICAL** | |
| ☒ ALL DUCATS HONORED: | ☒ NORMAL MEDICAL PROGRAM: | **PHONE CALLS** |
| ☐ MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☒ NORMAL: |
| ☐ CLASSIFICATION DUCATS | ☐ MTA CONDUCT ROUNDS IN UNITS | ☐ NO PHONE CALLS: |
| ☐ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: |
| **VISITING** | ☐ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL | ☐ OTHER: | **RELIGIOUS SERVICES** |
| ☐ NON-CONTACT ONLY | | ☒ NORMAL |
| ☐ NO VISITING | **LEGAL LIBRARY** | ☐ NO RELIGIOUS SERVICES: |
| ☐ OTHER | ☒ NORMAL: | ☐ MODIFIED: |
| | ☐ APPROVED COURT DEADLINES: | |

REMARKS:

On Monday, March 12, 2007, an administrative decision was made to return all in inmates on Facility B back to normal program on Tuesday, March 13, 2007.

| PREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| D. Soto, Facility Captain | 03-01-07 | A. Hedgpeth, Warden (A) | 03-12-07 |

# EXHIBIT COVER PAGE:

B-2

Description of this Exhibit:

Exhibit

Exhibit B-2 is a true/correct copy of an affidavit signed under the penalty of perjury with attached PSRs' estalbishing that KVSP officals are currently implementing "RACE BASE LOCKDOWNS/PREFERENTIAL PRACTICES ON THE BASIS OF ETHNICITY".

Number of pages to this Exhibit:    -11-    pages.

JURISDICTION: (Check only One)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United States Surpeme Court
☐ Grand Jury

I declare under the penalty of perjury I inmate Mandagie CDC#P-48233 am currenty incarcerated at Kern Valley State Prison (KVSP), and hereby declare and certify that the following statement/or declaration is true and correct including a true and correct set of copies of the program status report (PSR) surrounding this (RACE BASIS LOCK DOWN). (see Exhibit (aa) ).

Date: 7.9.07                                    Signature

I inmate Mandagie CDC#P-48233 am competent to testify to the matters set forthin this declaration, and if called upon to do so, I would and could so testify.

I inmate Mandagie declare that I was one of the Inmate Advisory Council (IAC) reprisentatives that spoke on behalf of the "SOUTHERN HISPANIC" Population after the initial riot disturbance had occurred.

As an I.A.C. reprisentative for the "SOUTHERN HISPANICS" I informed (KVSP) Captain J.D.Soto after the initial incident occurred that only the "SOUTHERN HISPANICS" were involved in this disturbance, and that the "NORTHERN HISPANICS" , and the "MEXICAN NATIONALS" were not involved in the initial incident and should not be lockdown.

KVSP officals however went on and generalized all other "HISPANIC SIGMENTS" despite the statement I made to Captain J.D.Soto.

KVSP officals went as far to include into the lockdown even the "NON AFFILI ATED INMATES" who were of "HISPANIC ORIGIN" even though they were not affiliated to the "SOUTHERN HISPANIC" group who was involved in the initial incident on June 2, 2007.

KVSP officals have been implementing unconstitutional policies where the Courts have undisputedly ruled that such policy practices of "RACE BASE" lock downs is unconstitutional and impermissible, however, KVSP officials have also implemented "PREFERENTIAL PRACTICES ON THE BASIS OF ETHNICITY", where the Courts have also ruled to "RERAIN" from such policy practices.

KVSP offficals have failed to implement an existing alternative polciy that allows prison officals to release inmates from locksdown based on individual behavior, rather than on the basis of ethnicity, of which has been brought to the attention of prison officals.

I hereby declare under the penalty of perjury that the foregoing is true and correct.

Date: 7.9.07                                    Signature

# EXHIBIT COVER PAGE:

(aa)

## Description of this Exhibit:

Exhibit

The following Program Status Report (PSR) will establish that (KVSP) Offical
s' have been implementing an unconstitutional polciy of segregating inmates
based upon ethnicity, and such action was constitutionally impermissible,
because it was preferential on the basis of ethnicity. The Courts have
ruled that such policies governing race relations resulted in a 'culture
of separation,' which is proven to contribute to inter-racial violence.
Citing Aaron Escalera Vs. Calvin Terhune.2004 WL 238763(Cal.App.1Dist.))

Number of pages to this Exhibit:   -5-   pages.

## JURISDICTION: (Check only One)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [x] United States District Court
- [ ] State Circuit Court
- [ ] United States Surpeme Court
- [ ] Grand Jury

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| ~UTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER |
|---|---|---|
| ᵊrn Valley State Prison | June 4, 2007 | KVP-B-07-024 |

| | | |
|---|---|---|
| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM · ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
| ☐ INITIAL | ☒ UPDATE | ☐ CLOSURE |

RELATED INFORMATION (CHECK ALL THAT APPLY)

| A AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| INSTITUTION | ☒ ALL | ☐ BATTERY |
| FACILITY: B_____ | ☐ BLACK | ☐ DEATH |
| HOUSING UNIT: 2 through 8_____ | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| VOCATION: _____ | ☐ HISPANIC | ☐ GROUPING |
| EDUCATION: _____ | ☐ OTHER | ☐ OTHER: |
| OTHER: _____ | ☐ | |

| 'EMENT | WORKERS | DAYROOM |
|---|---|---|
| NORMAL | ☒ CRITICAL WORKERS ONLY (NO Blk & His) | ☐ NORMAL |
| ESCORT ALL MOVEMENT (Black and Hispanic) | ☐ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☐ CLERKS | ☐ MODIFIED: |
| CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | RECREATION |
| OTHER: Escort in restraints _2UK + HBp_ | ☐ CANTEEN | ☐ NORMAL |
| _____ | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| ᴰING | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: |
| ᴺORMAL | ☐ PORTERS | |
| CELL FEEDING (All) | ☐ NO INMATE WORKERS | CANTEEN |
| CONTROLLED FEEDING IN DINING ROOM | SHOWERS | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☒ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☐ ESCORTED | ☐ MODIFIED: |
| ☐ TIER AT A TIME | ☐ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☒ CELL PARTNERS TOGETHER – OWN TIER | PACKAGES |
| SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES |
| SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: |
| ATS | MEDICAL | |
| ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | PHONE CALLS |
| MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☐ NORMAL |
| CLASSIFICATION DUCATS | ☒ MEDICAL CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: |
| ᵀING | ☐ EMERGENCY MEDICAL ONLY | |
| NORMAL VISITING (White and Others Only) | ☐ OTHER: _____ | RELIGIOUS SERVICES |
| NON-CONTACT ONLY | | ☐ NORMAL |
| NO VISITING (Black and Hispanic) | LEGAL LIBRARY | ☒ NO RELIGIOUS SERVICES |
| OTHER: _____ | ☐ NORMAL | ☐ MODIFIED: |
| | ☒ APPROVED COURT DEADLINES | |

ᴬARKS: On Saturday, June 2, 2007, at approximately 0645 hours, a riot occurred in Facility B, Building 6 between 7 Black ᵈ 8 Hispanic inmates. The involved inmates were being released for the morning meal and without provocation, became ᵒlved in a riot which entailed the use of numerous weapons inflicting serious injuries. 3 direct impact rounds were utilized ᵠuell the incident. Based in the aforementioned, Facility B was placed on a Modified Program. On Sunday, June 3, 2007, ᵗatement was made by an inmate in visiting indicating the issues have not been resolved and may affect the visiting ᵍram. Black and Hispanic visits have therefore been restricted in this Modification Order update. Program status will be ᵈing the completion of systematic searches, the interviews of all Facility B inmates and the completion of an investigation ᵒ this incident. Food Service cleared Facility B Gym inmates can be used in place of Level IV Culinary workers. Facility B m inmates are not affected by this Modification Order.

| ᴾREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| SOTO, Facility B Captain | June 4, 2007 | A. HEDGPETH, Warden (A) | 06/04/07 |

OF CALIFORNIA     DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PROGRAM STATUS REPORT**
**PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION**

| ∂TION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER |
|---|---|---|
| n Valley State Prison | June 7, 2007 | KVP-B-07-024 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☐ INITIAL | ☒ UPDATE | | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| NSTITUTION_____ | ☒ ALL | ☐ BATTERY |
| ACILITY: ____B____ | ☐ BLACK | ☐ DEATH |
| IOUSING UNIT: _2-B_____ | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| 'OCATION: _____ | ☐ HISPANIC | ☐ GROUPING |
| :DUCATION: _____ | ☐ OTHER | ☐ OTHER: _____ |
| )THER: _____ | ☐ | |

| :MENT | WORKERS | DAYROOM |
|---|---|---|
| JORMAL (Whites and Others) | ☒ CRITICAL WORKERS ONLY (No Blacks or Hispanics) | ☐ NORMAL |
| :SCORT ALL MOVEMENT IN RESTRAINTS :k and Hispanic) | ☐ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| JNCLOTHED BODY SEARCH PRIOR TO ESCORT :k and Hispanic) | ☐ CLERKS | ☐ MODIFIED: _____ |
| :ONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| )THER: _____ | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| )ING | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: _____ |
| \JORMAL | ☐ PORTERS | |
| :ELL FEEDING | ☐ NO INMATE WORKERS | **CANTEEN** |
| :ONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☒ NORMAL (Whites and Others) |
| -☐-HOUSING-UNIT/DORM AT-A-TIME. | ☒ NORMAL (Whites and Others) | ☒ NO CANTEEN (Blacks and Hispanics) |
| ☐ DORM POD AT A TIME | ☒ ESCORTED (In Restraints) | ☐ MODIFIED: _____ |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☒ NORMAL (Whites and Others) |
| SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES(Blacks and Hispanics) |
| SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: _____ |
| ATS | **MEDICAL** | |
| ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | **PHONE CALLS** |
| MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☒ NORMAL (Whites and Others, while unit'is. not being searched) |
| CLASSIFICATION DUCATS | ☒ MEDICAL CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS (Blacks and Hispanics) |
| PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☒ MODIFIED: No inmate movement within housing unit during search of building. |
| TING | ☒ EMERGENCY MEDICAL ONLY | |
| NORMAL VISITING | ☐ OTHER: _____ | **RELIGIOUS SERVICES** |
| NON-CONTACT ONLY | | ☐ NORMAL |
| NO VISITING | **LEGAL LIBRARY** | ☒ NO RELIGIOUS SERVICES |
| OTHER: _____ | ☐ NORMAL | ☐ MODIFIED: Whites and |
| | ☒ APPROVED COURT DEADLINES | |

**\MARKS:**

i Sunday June 2, 2007 at approximately 0645 hours, a riot occurred in Facility B, Building #6 between Black and Hispanic nates. If needed food handling cleared Facility B Gym inmates can be utilized in place of Level IV Culinary workers. White d Other IAC/MAC members can be used to communicate the PSR to the general inmate population. Two Black and Two panic IAC or MAC members may be used to communicate with staff and the General inmate population (These ethnics l not be allowed to be outside their cell/housing unit with eachother).

| REPARED BY | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| D. Solo Facility B Captain | June 7, 2007 | A. HEDGPETH, Warden (A) | June 7, 2007 |

STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS AND REHABILITATION

## PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| INSTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| Kern Valley State Prison | June 13, 2007 | IKVP-B-07-024 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☐ INITIAL | ☒ UPDATE | | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| ☐ INSTITUTION | ☒ ALL | ☐ BATTERY |
| ☒ FACILITY: ___B___ | ☐ BLACK | ☐ DEATH |
| ☒ HOUSING UNIT: _2-8_ | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| ☒ VOCATION: _____ | ☐ HISPANIC | ☐ GROUPING |
| ☒ EDUCATION: _____ | ☐ OTHER | ☐ OTHER: |
| ☐ OTHER: _____ | ☐ | |

| MOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☒ NORMAL (Whites and Others) | ☒ CRITICAL WORKERS ONLY (No Blacks or Hispanics) Black central kitchen workers approved to work effective 6-11-07, restraints are not required for critical workers. | ☐ NORMAL |
| ☒ ESCORT ALL MOVEMENT IN RESTRAINTS (Black and Hispanic) | ☐ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| ☒ UNCLOTHED BODY SEARCH PRIOR TO ESCORT (Black and Hispanic) | ☐ CLERKS | ☐ MODIFIED: |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | RECREATION |
| ☐ OTHER: | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| FEEDING | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: |
| ☐ NORMAL | ☐ PORTERS | |
| ☒ CELL FEEDING | ☐ NO INMATE WORKERS | CANTEEN |
| ☐ CONTROLLED FEEDING IN DINING ROOM | SHOWERS | ☒ NORMAL (Whites and Others) |
| ☐ HOUSING UNIT/DORM AT A TIME | ☒ NORMAL (Whites and Others) | ☐ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☒ ESCORTED (In Restraints) | ☒ MODIFIED: Black and Hispanic 45 dollar limit. |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | PACKAGES |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☒ NORMAL (Whites and Others) |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☒ NO PACKAGES (Blacks and Hispanics) |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☒ MODIFIED: (Critical Workers) |
| DUCATS | MEDICAL | |
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | PHONE CALLS |
| ☒ MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☒ NORMAL (Whites and Others, while unit is not being searched) |
| ☐ CLASSIFICATION DUCATS | ☒ MEDICAL CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS (Blacks and Hispanics) |
| ☐ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☒ MODIFIED: No calls during searches. |
| VISITING | ☒ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING (Whites and Others) | ☐ OTHER: | RELIGIOUS SERVICES |
| ☐ NON-CONTACT ONLY | | ☐ NORMAL |
| ☒ NO VISITING (Hispanics and Blacks) | LEGAL LIBRARY | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER: | ☐ NORMAL | ☐ MODIFIED: |
| | ☒ APPROVED COURT DEADLINES | |

REMARKS:

On Sunday June 2, 2007 at approximately 0845 hours, a riot occurred in Facility B, Building #8 between Black and Hispanic inmates. White and Other IAC members can be used to communicate the PSR to the general inmate population at any time. With the approval of the on duty Lieutenant Two Black and Two Hispanic IAC members from the approved Facility B memorandum dated 6-11-07 (Executive Committee or General Council members only – See Attached memorandum) may be used to communicate with staff and the General inmate population. These inmates may enter sections of the housing units together. All Hispanic and Black IAC movement shall be in waist restraints.

| PREPARED BY: | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| J. D. Soto Facility B Captain | June 13, 2007 | A. HEDGPETH, Warden (A) | June 13, 2007 |

# PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| NSTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER: |
|---|---|---|
| Kern Valley State Prison | June 20, 2007 | KVP-B-07-024 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☐ INITIAL | ☒ UPDATE | | ☐ CLOSURE |

| RELATED INFORMATION (CHECK ALL THAT APPLY) | | |
|---|---|---|
| **REA AFFECTED** | **INMATES AFFECTED** | **REASON** |
| ☐ INSTITUTION | ☐ ALL | ☐ BATTERY |
| ☒ FACILITY: ___B___ | ☒ BLACK | ☐ DEATH |
| ☒ HOUSING UNIT: __2-8__ | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| ☒ VOCATION: __I__ | ☒ HISPANIC | ☐ GROUPING |
| ☒ EDUCATION: ___ | ☐ OTHER | ☐ OTHER: |
| ☐ OTHER: ___ | ☐ | |

| **MOVEMENT** | **WORKERS** | **DAYROOM** |
|---|---|---|
| ☐ NORMAL | ☒ CRITICAL WORKERS Black _central kitchen_ workers approved to work effective 6-11-07, restraints are not required for critical workers. | ☐ NORMAL |
| ☒ ESCORT ALL MOVEMENT IN RESTRAINTS Black and Hispanic | ☐ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| ☒ UNCLOTHED BODY SEARCH PRIOR TO ESCORT Black and Hispanic | ☐ CLERKS | ☐ MODIFIED: |
| ☐ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | **RECREATION** |
| ☐ OTHER: | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| **EEDING** | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: |
| ☐ NORMAL | ☐ PORTERS | |
| ☒ CELL FEEDING (ALL INMATES) | ☐ NO INMATE WORKERS | **CANTEEN** |
| ☐ CONTROLLED FEEDING IN DINING ROOM | **SHOWERS** | ☐ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☐ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☒ ESCORTED (In Restraints) | ☒ MODIFIED: Black and Hispanic 45 dollar limit. |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PACKAGES** |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☐ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☒ MODIFIED: No packages excepted for processing with an order date after 6-20-07 for Black and Hispanics |

| **DUCATS** | **MEDICAL** | |
|---|---|---|
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | **PHONE CALLS** |
| ☒ MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☐ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☒ MEDICAL CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| ☐ PRIORITY DUCATS ONLY | ☐ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: |
| **ISITING** | ☒ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING (Whites and Others) | ☐ OTHER: | **RELIGIOUS SERVICES** |
| ☒ NON-CONTACT ONLY (Hispanics and Blacks) | | ☐ NORMAL |
| ☐ NO VISITING | **LEGAL LIBRARY** | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER: | ☐ NORMAL | ☐ MODIFIED: |
| | ☒ APPROVED COURT DEADLINES | |

**EMARKS:**

Visits are limited to one hour time slots. Visitors must pre-schedule in advance by contacting KVSP Visiting department. With the approval of the on duty Lieutenant Two Black and Two Hispanic IAC members from the approved Facility B memorandum dated 6-11-07 (Executive Committee or General Council members only – See Attached memorandum) may be used to communicate with staff and the General inmate population. These inmates may enter sections of the housing units together. All Hispanic and Black IAC movement shall be in waist restraints.

| PREPARED BY: J. D. Soto Facility B Captain | DATE June 20, 2007 | NAME / SIGNATURE (WARDEN) A. HEDGPETH, Warden (A) | DATE June 20, 2007 |
|---|---|---|---|

# PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| TION Valley State Prison | EFFECTIVE DATE OF PLAN July 5, 2007 | PROGRAM STATUS NUMBER: KVP-B-07-024 |
|---|---|---|

| ] NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|

| ☐ INITIAL | ☒ UPDATE | ☐ CLOSURE |
|---|---|---|

## RELATED INFORMATION (CHECK ALL THAT APPLY)

| AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| STITUTION | ☐ ALL | ☐ BATTERY |
| CILITY: ___B___ | ☒ BLACK | ☐ DEATH |
| OUSING UNIT: _2-B_ | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| OCATION: _____ | ☒ HISPANIC | ☐ GROUPING |
| DUCATION: _____ | ☐ OTHER | ☐ OTHER: |
| THER: _____ | ☐ | |

| MENT | WORKERS | DAYROOM |
|---|---|---|
| IORMAL | ☒ CRITICAL WORKERS Black *central kitchen* workers approved to work effective 6-11-07, restraints are not required for critical workers. | ☐ NORMAL |
| SCORT ALL MOVEMENT IN RESTRAINTS k and Hispanic) | ☐ CULINARY | ☒ NO DAYROOM ACTIVITIES |
| INCLOTHED BODY SEARCH PRIOR TO ESCORT k and Hispanic) | ☒ CLERKS – Critical Hispanic and Blacks | ☐ MODIFIED: |
| CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | RECREATION |
| OTHER: | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM. | ☒ NO RECREATIONAL ACTIVITIES |
| DING | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED: |
| NORMAL | ☒ PORTERS Visiting and Support Office Only | |
| CELL FEEDING (ALL INMATES) | ☐ NO INMATE WORKERS | CANTEEN |
| CONTROLLED FEEDING IN DINING ROOM | SHOWERS | ☒ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☐ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☒ ESCORTED (In Restraints) | ☐ MODIFIED: |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | PACKAGES |
| SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☒ NORMAL |
| SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☐ NO PACKAGES |
| SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: |
| CATS | MEDICAL | |
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | PHONE CALLS |
| ☐ MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☐ NORMAL |
| ☐ CLASSIFICATION DUCATS | ☒ MEDICAL CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| ☐ PRIORITY DUCATS ONLY | ☒ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED: . |
| SITING | ☒ EMERGENCY MEDICAL ONLY | |
| ☐ NORMAL VISITING | ☐ OTHER: | RELIGIOUS SERVICES |
| ☐ NON-CONTACT ONLY | | ☐ NORMAL |
| ☐ NO VISITING | LEGAL LIBRARY | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER: | ☐ NORMAL | ☐ MODIFIED: |
| | ☒ APPROVED COURT DEADLINES | |

EMARKS:
See attached Program Adjustment – Program Plan for specific information on day to day operations.

| PREPARED BY: J. D. Soto Facility B Captain | DATE July 5, 2007 | NAME / SIGNATURE (WARDEN) A. HEDGPETH, Warden (A) | DATE July 5, 2007 |
|---|---|---|---|

**FACILITY B GYM REMAINS ON NORMAL PROGRAMMING**

**EFFECTIVE JULY 5, 2007**
**THE FOLLOWING INFORMATION WILL PERTAIN TO**
**FACILITY B HOUSING UNITS 2,3,4,5,6,7,8**

## PROGRAM PLAN

| ACTIVITY: | WHAT TO DO: |
|---|---|
| **CANTEEN:** | Normal Program |
| **CHAPEL:** | Normal Program for Whites and Others<br>No Program for Hispanic and Blacks |
| **DAY ROOM:** | Normal Program for Whites and Others<br>No Program for Hispanic and Blacks |
| **EDUCATION:** | Normal Program for Whites and Others<br>No Program for Hispanic and Blacks |
| **FEEDING:** | All inmates will be cell feed – Sack Lunch |
| **INMATE ADVISORY COMMITTEE** | Normal Program for all IAC members |
| **LAUNDRY EXCHANGE:** | Normal Program for Whites and Others<br>Staff to facilitate Laundry exchange for Hispanic and Blacks. |
| **LAW LIBRARY:** | Normal Program for Whites and Others<br>Approved Court Deadlines for Hispanic and Blacks |
| **MAIN YARD:** | Normal Program for Whites and Others<br>No Yard for Hispanic and Blacks |
| **MEDICAL/DENTAL:** | Normal Program for Whites and Others<br>Escort in restraints for Hispanic and Blacks |
| **PSYCHIATRIC SERVICES:** | Normal Program for Whites and Others<br>Escort in restraints for Hispanic and Blacks |
| **R & R/PACKAGES:** | Normal Program |
| **SHOWERS:** | Normal Program for Whites and Others<br>Hispanic and Blacks one inmate per shower per tier. Escort in restraints<br>shower shoes, towel, washcloth, boxers and hygiene products only. |
| **TELEPHONES:** | Normal Program for Whites and Others<br>No phone calls for Hispanic and Blacks |
| **VISITING (FAMILY):** | Normal Program |
| **VISITING (REGULAR)** | Normal Program – Hispanic and Black inmates under escort in restraints<br>to and from visiting room. |
| **WORK ASSIGNMENTS:** | Normal Program for Whites and Others<br>Critical workers for Black inmates assigned to main kitchen is approved.<br>Critical Black and Hispanic Clerks is approved. Black and Hispanic<br>Visiting and Program Office Porters are approved. |

APPROVED/DISAPPROVED

J. D. Soto
Facility B Captain
Kern Valley State Prison

S. Kays
Associate Warden Complex I
Kern Valley State Prison

APPROVED/DISAPPROVED

A. HEDGPETH
Warden (A)
Kern Valley State Prison

cc:     Warden
        CDW
        Associate Warden, Complex I
        Facility B Secretary
        CCPOA
        Visiting
        All Units

# PROGRAM STATUS REPORT
## PART B – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

| ISTITUTION | EFFECTIVE DATE OF PLAN | PROGRAM STATUS NUMBER |
|---|---|---|
| Kern Valley State Prison | July 18, 2007 | KVP-B-07-024 |

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY |
|---|---|---|---|
| ☐ INITIAL | ☒ UPDATE | | ☐ CLOSURE |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| REA AFFECTED | INMATES AFFECTED | REASON |
|---|---|---|
| ☐ INSTITUTION | ☒ ALL Inmates assigned to B6 | ☐ BATTERY |
| ☒ FACILITY: ____B____ | ☒ BLACK Assigned to Buildings 2-8 | ☐ DEATH |
| ☒ HOUSING UNIT: _2-8_ | ☐ WHITE | ☒ RIOT / DISTURBANCE |
| ☒ VOCATION. _____ | ☒ HISPANIC Assigned to Buildings 2-8 | ☐ GROUPING |
| ☒ EDUCATION: _____ | ☐ OTHER | ☐ OTHER: |
| ☐ OTHER: _____ | | |

| IOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☒ CRITICAL WORKERS Black, central kitchen workers approved to work effective 6-11-07, restraints are not required for critical workers | ☐ NORMAL |
| ☐ ESCORT ALL MOVEMENT IN RESTRAINTS | ☒ CULINARY Critical workers as prescribed | ☒ NO DAYROOM ACTIVITIES |
| ☒ UNCLOTHED BODY SEARCH PRIOR TO ESCORT Black and Hispanic) | ☒ CLERKS – Critical Hispanic and Blacks | ☐ MODIFIED |
| ☒ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | RECREATION |
| ☒ OTHER: All Black and Hispanic movement under scort by Custody Staff | ☐ CANTEEN | ☐ NORMAL |
| | ☐ CLOTHING ROOM | ☒ NO RECREATIONAL ACTIVITIES |
| EEDING | ☐ RESTRICTED WORK PROGRAM | ☐ MODIFIED. |
| ☐ NORMAL | ☒ PORTERS Visiting and Support Office Only | |
| ☒ CELL FEEDING (ALL INMATES) | ☐ NO INMATE WORKERS | CANTEEN |
| ☐ CONTROLLED FEEDING IN DINING ROOM | SHOWERS | ☒ NORMAL |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ NORMAL | ☐ NO CANTEEN |
| ☐ DORM POD AT A TIME | ☐ ESCORTED | ☐ MODIFIED |
| ☐ TIER AT A TIME | ☒ ONE INMATE PER SHOWER – OWN TIER | |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ CELL PARTNERS TOGETHER – OWN TIER | PACKAGES |
| ☐ SACK MEAL BREAKFAST | ☐ DORM SHOWERING BY GROUP | ☒ NORMAL |
| ☒ SACK MEAL LUNCH | ☐ CRITICAL WORKERS ONLY | ☐ NO PACKAGES |
| ☐ SACK MEAL DINNER | ☐ NO SHOWERS | ☐ MODIFIED: |
| IUCATS | MEDICAL | |
| ☐ ALL DUCATS HONORED | ☐ NORMAL MEDICAL PROGRAM | PHONE CALLS |
| ☒ MEDICAL DUCATS ONLY | ☐ PRIORITY DUCATS ONLY | ☐ NORMAL |
| ☒ CLASSIFICATION DUCATS | ☒ MEDICAL CONDUCT ROUNDS IN UNITS | ☒ NO PHONE CALLS |
| ☐ PRIORITY DUCATS ONLY | ☒ INMATES ESCORTED TO SICK CALL | ☐ MODIFIED |
| ISITING | ☒ EMERGENCY MEDICAL ONLY | |
| ☒ NORMAL VISITING | ☐ OTHER: | RELIGIOUS SERVICES |
| ☐ NON-CONTACT ONLY | | ☐ NORMAL |
| ☐ NO VISITING | LEGAL LIBRARY | ☒ NO RELIGIOUS SERVICES |
| ☐ OTHER: | ☐ NORMAL | ☐ MODIFIED: |
| | ☒ APPROVED COURT DEADLINES | |

REMARKS.

Changes to this PSR are being made due to inmate manufactured weapons being found in the cells of inmate in housing unit #6 on Facility B.

See attached Program Adjustment – Program Plan for specific information on day to day operations.

| PREPARED BY. | DATE | NAME / SIGNATURE (WARDEN) | DATE |
|---|---|---|---|
| J. D. Soto Facility B Captain | July 18, 2007 | A. HEDGPETH, Warden (A) | July 18, 2007 |

**FACILITY B CYM REMAINS ON NORMAL PROGRAMMING**

**EFFECTIVE JULY 18, 2007**
**THE FOLLOWING INFORMATION WILL PERTAIN TO**
**FACILITY B HOUSING UNITS 2,3,5,6,7,8**

# PROGRAM PLAN

| ACTIVITY | WHAT TO DO |
|---|---|
| **CANTEEN:** | Normal Program |
| **CHAPEL:** | Normal Program for Whites and Others<br>No Program for Hispanic and Blacks and all inmates in B6 |
| **DAY ROOM:** | Normal Program for Whites and Others<br>No Program for Hispanic and Blacks and all inmates in B6 |
| **EDUCATION:** | Normal Program for Whites and Others<br>No Program for Hispanic and Blacks and all inmates in B6 |
| **FEEDING:** | All inmates will be cell feed – Sack Lunch |
| **INMATE ADVISORY COMMITTEE** | Normal Program for all IAC members. Executive body members not permitted beyond housing unit rotunda pending further review. Executive body may talk to unit IAC and staff via rotunda only. |
| **LAUNDRY EXCHANGE:** | Normal Program for Whites and Others<br>Staff to facilitate Laundry exchange for Hispanic and Blacks. |
| **LAW LIBRARY:** | Normal Program for Whites and Others<br>Approved Court Deadlines for Hispanic and Blacks |
| **MAIN YARD:** | Normal Program for Whites and Others<br>No Yard for Hispanic and Blacks and all inmates assigned to B6 |
| **MEDICAL/DENTAL:** | Normal Program for Whites and Others<br>Under Direct Custody Escort for all Hispanic and Blacks |
| **PSYCHIATRIC SERVICES:** | Normal Program for Whites and Others<br>Under Direct Custody Escort for all Hispanic and Blacks |
| **R & R/PACKAGES:** | Normal Program |
| **SHOWERS:** | Normal Program for Whites and Others<br>Hispanic and Blacks inmates not to be out of cell at the same time, movement permitted without restraints. Shower shoes, towel, washcloth, boxers and hygiene products only. |
| **TELEPHONES:** | Normal Program for Whites and Others<br>No phone calls for Hispanic and Blacks and all inmates assigned to B6 |
| **VISITING (FAMILY):** | Normal Program |
| **VISITING (REGULAR)** | Normal Program – Hispanic and Black inmates under direct custody escort to and from visiting room. |
| **WORK ASSIGNMENTS:** | Normal Program for Whites and Others<br>Critical workers for Black inmates assigned to main kitchen is approved. Critical Black and Hispanic Clerks is approved. Black and Hispanic Visiting and Program Office Porters are approved. Black critical satellite kitchen workers assigned to upper yard are approved. Hispanic critical satellite kitchen workers assigned to the lower yard are approved. |

# EXHIBIT COVER PAGE:

"A-3"

Description of this Exhibit:

Exhibit

A true/correct copy of the constructive notice that I filed to Captain J.D. Soto on June 3, 2007 regarding the continual 'RACE BASED LOCKDOWNS that were repeatedly being implemented. I enclosed with this notice two EX.'s' 'EX. A and EX. B' establishing appellant's NON-AFFILIATION to no Prison gang or groups, and that appellant was housed with an OTHER/was the OTHERS officially elected I.A.C. Rep....

Number of pages to this Exhibit:   -8-        pages.

JURISDICTION: (Check only One)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United States Surpeme Court
☐ Grand Jury

P-90434  62-21202

P.O. Box 5102
Delano Ca, 93216

To: Captain J.D. Soto
Kern Valley STATE PRISON
DELANO CA, 93216
Cecil AVENUE

DATE: JUNE 03, 2007

RE: Requesting REDRESS FROM PUNITIVE LockDown / Review Individual case factors.

Dear CAPTAIN J.D. SOTO,

The purpose of This Missive Is. To Request for Your Intervention
And Redress From Your Subordinates Continual Practice. In Locking ME Down
with The Hispanic DISRUPTIVE Prison Groups UNDER Investigations, for
Incidents That Have caused Disturbance within The facility.

MR. SOTO You ARE AWARE OF MY STATUS AS A "(NON-Affiliate OTHER)
of Hispanic Origin And MY NON-Affiliation To "ANY" DISRUPTIVE Prison gang
or GROUPS, However, I'm still Being Affiliated To These DISRUPTIVE HISPANIC
Prison Groups, By being subjected To Their Lock Counts and Being held To The
SAME STANDARD OF PUNISHMENT.

MR. SOTO I will ENCLOSE You A copy of superior court Judge Robert W. Weir
who ordered The Decision on The Escalera case Against Joe McGrath The Warden At
PBSP on Dec. 10, 2002 (see Exhibit A) copy of This Decision.

I Therefore Respectfully Request That You provide me with Alternative
Policy Classification And Release me From LockDown based on my Individual CASE
Factors And Behavior. I Declare That I Am NOT Affiliated To The HISPANIC
SOUTHERNS and/or ANY other HISPANIC DISRUPTIVE Prison GANG OR GROUPS That
were Involve In The Incident In "6 Block" And I will NOT Be A Problem
To The safety of This facility Nor will I HAVE ANY Problems with ANY Other
RACES or Segments Groups AT This Facility. (see EXHIBIT B) copies of R2B-Gs'.

Thank You For Your Time / I Await Your Prompt Response with The Relief I have
Requested, Sincerely  Alvaro Quintana

CC: Inmate A.Q P-36

# ·EXHIBIT COVER PAGE:



A

Description of this Exhibit:                    Exhibit

COPY of superior court Judge Robert W. Weir order To warden
Joe McGrath at PBSP ON Dec. 10, 2002. PP.-8-

Number of pages to this Exhibit: _____1_____ pages.

JURISDICTION: (Check only One)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court'
☐ United States Surpeme Court
☐ Grand Jury

1    However, after two years, eight months, the situation can no longer be considered an
2    emergency, but rather, the routine way things are done. Inmates have been transferred into PBSP
3    by CDC, with the knowledge that they would be locked down under a system that relied upon
4    ethnic discrimination, and inmates have waited months or years in a lockdown that relied upon
5    ethnic classification for an administrative determination of whether they could be released to the
6    yard to program like other inmates.

7

8    In January 2001, Warden McGrath announced his new policy of classifying inmates
9    based upon individual behavior, rather than ethnic grouping. Appendix B, which was Exhibit 3,
10   at the hearing, outlines the new policy. Despite this laudable change-of-policy, hundreds of
11   inmates remain locked down, and Southern Hispanics are heavily over-represented among them.
12   This is apparently because not enough resources have been provided by CDC to PBSP to
13   evaluate and classify the inmates who are locked down, to separate those who are willing to
14   program without violence, from those who are not. Because the lockdown is still based, in part,
15   on ethnic classification; and because the lockdown has lasted for a period of time longer than that
16   which can reasonably be considered an emergency, the Court finds that the failure to apply
17   sufficient resources to the classification process constitutes deliberate indifference to the
18   constitutional rights of Southern Hispanic inmates.

19

20   Further, CDC's policy of locking down inmates on the basis of ethnicity does not meet
21   the standards of Turner v. Safley 482 U.S. 78 (1987), because a ready alternative exists, which is
22   to release inmates from lockdown on the basis of their individual case factors and behavior,
23   rather than on the basis of ethnicity. As noted above, prison officials may lockdown the entire
24   prison population without discriminating on the basis of ethnicity. Safety considerations are
25   therefore met, and the process of releasing inmates from lockdown based upon individual
26   behavior may proceed without preferring one ethnicity over another, without unduly impacting
27   staff, other inmates, or the allocation of prison resources.

· 28

8

# EXHIBIT COVER PAGE:

$\mathcal{B}$

Description of this Exhibit:

Exhibit

COPIES OF my 128-G Informative chronos AMCLUISVELY established my NON-Affiliation STATUS TO "NO" PrISON GMNG AND OR GroUPS KNOWN TO COCR, AND That I ProGRAM AND House with NON-Affiliated (OTHERS) ONLY.

Number of pages to this Exhibit: _____2_____ pages.

JURISDICTION: (Check only One)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United States Surpeme Court
☐ Grand Jury

**NAME: NAVARRO, BENJAMIN.**   CDCR #: J55486   BED: FBB2-212U

### COMMITTEE ACTION SUMMARY

ANNUAL REVIEW:ABSENTIA: RETAIN KVSP-IV,GP, PSYC CLR, DOUBLE CELL CLR, CONTINUE PRESENT PROGRAM (CPP).

### COMMITTEE'S COMMENTS

Inmate NAVARRO, J55486 waived his appearance/72 hour advance notification before KVSP UCC on 5/16/06 per CDC 128B1 dated 5/9/06 for his Annual Review, therefore his case was seen in Absentia.

### COMMITTEE NOTES:

'S' is a 35 year old 1st termer received into CDC on 3/22/95 from Los Angeles County for the commitment offense of Murder 1st with Special Circumstances & Multiple Robberies 2nd. 'S' received a term of LWOP. 'S' arrived at KVSP on 7/11/05. CDC 127 & 840 were reviewed and updated. CDC 812 & 812C are clear. 'S' is assigned to B Fac. Clothing. 'S' currently has a preliminary score of 0 and received 2 qualifying periods without a serious CDC 115 and 2 periods of average or above performance in work/school/vocations. Due to a LWOP sentence, 'S' has a mandatory minimum placement score of 52. Classification score remains consistent with level IV placement ICE hold #A74180558 noted. Therefore, committee elects to RETAIN KVSP-IV, GP, PSYC CLR, DOUBLE CELL CLR, CONTINUE PRESENT PROGRAM (CPP).

### CELL STATUS REVIEW:

'S' is clear for Double Cell. 'S' has no history of in-cell predatory or assaultive behavior.

### INMATE COMMENTS/PARTICIPATION:

'S' was interviewed by CCI G. GARCIA prior to committee and 'S' stated he did not wish to attend. 'S' will be advised of committee's decision and right to appeal via his CCI and CDC 128G.

### CASE FACTORS ADDITIONAL:

Committee notes that all case factors remain the same as noted on CDC 128G dated 7/22/05.

PER CLR FORM IS 3 3378(B),(C),(S)(8)(A-M)

| USTODY | CS/LEVEL | WG/PG & Eff. DATE | RELEASE DATE | GPL | RECLASS | AGE | ETHNIC | PSYCH | NEXT BPT & DATE |
|--------|----------|-------------------|--------------|-----|---------|-----|--------|-------|-----------------|
| CLOB | 52/IV | A1A-1/17/1996 | LWOP :6/2/F | F.9 | 5/1/2007 | 35 | OTH | CLEAR | N/A |

### COMMITTEE MEMBERS

**CHAIRPERSON**
R. Fisher, FAC. Capt.

**MEMBERS**
R. Thomas, CCII

**RECORDER**
G. Garcia, CCI

Committee Date: 5/16/06   **UCC FACILITY B**

KERN VALLEY STATE PRISON

NAME and NUMBER ·· QUESADA · · — — P-90436 | · FRB2-212L CDC-128-B Rev. 4/7·

Inmate Quesada, P.-90436, B2-212L, worked for me, Sgt. Campagna, in 3C Dining at CSP-Corcoran for over two years. As his Supervisor I can confirm knowledge pertaining to who he associates with. Inmate Quesada is a "NON-AFFILIATED" Hispanic and only house's with "NON-AFFILIATED" others. A review of his C-File will reflect NO AFFILIATION with any disruptive groups. See General Chrono CSATF/SP signed C.J. SOTO, CCI, dated 6/29/01, also see Chrono from CCI R. HALL dated 1/13/04.

ORUG: C-File
CC: CCII
      Unit CCI
      Writer
      Inmate

E. CAMPAGNA, Correctional Sergeant
Facility "B"
CSP- Kern Valley

DATE 04/01/2006

···· GENERAL.CHRONO

le of California                                                    Department of Corrections and Rehabilitation

# lemorandum

le    February 6, 2006

: All Facility Staff & Inmates
Facility B
Kern Valley State Prison

ıbject : FACILITY B HOUSING IAC REPRESENTATIVE ROSTER

The following inmates have been officially elected (or temporarily appointed)
to the Inmate Advisory Council on Facility B, as housing unit representatives:

| Housing Unit B2 | | | Housing Unit B5 | | |
|---|---|---|---|---|---|
| (W) Scarbrough | (K-77106 | B2-231U) | (W) MacMillen | (P-55388 | B5-209U) |
| (M) Borruel | (K-68395 | B2-121L) | (M) Velasquez | (H-74826 | B5-101L)Tem |
| (B) Pickens | (T-81118 | B2-206L) | (B) Harris | (J-46320 | B5-208U)Tem |
| (O) Quesada | (P-90436 | B2-212L)Tem | (O) Contreras | (E-78122 | B5-104U) |
| (A) Fluette | (H-57322 | B2-229L) | | | |

| Housing Unit B3 | | | Housing Unit B6 | | |
|---|---|---|---|---|---|
| (W) Stephens | (P-17075 | B3-103U) | (W) Rackliff | (V-23754 | B6-213L) |
| (M) Mendoza | (J-45504 | B3-205L) | (M) Ojeda | (P-60849 | B6-230U)Tem |
| (B) Perkins | (E=30776 | B3=129L) | (B) Williams | (V-50787 | B6=1.25L)Tem |
| (O) Heu | (T-95110 | B3-231L) | | | |

| Housing Unit B4 | | | Housing Unit B7 | | |
|---|---|---|---|---|---|
| (W) Walker | (V-45349 | B4-221U)Tem | (W) Anderson | (P-83497 | B7-110U) |
| (M) Cherry | (H-80771 | B4-109U)Tem | (M) Arreguin | (H-86282 | B7-103L) |
| (B) Wilson | (P-56487 | B4-105L) | (B) Barnes | (H-92204 | B7-205L) |
| (O) Torres | (K-08328 | B4-103L)Tem | (O) Lavea | (P-63255 | B7-219L) |

| Housing Unit B8 | | |
|---|---|---|
| (W) Marthe | (H-54580 | B8-104U) |
| (M) Roman | (T-58949 | B8-225L) |
| (B) Byers | (E-57614 | B8-121L) |
| (O) Tuiasoa | (D-85968 | B8-125L) |

Staff, elected members and the general population are reminded that the functions of the Inmate Advisory Council are referenced in DOM §53120. These members are authorized to enter all sections of their respective housing units during IAC movement hours. Inmates shall submit to a cursory search of their person prior to, and after entering sections of their housing units.

J. D. Sobo
Facility B Captain
Kern Valley State Prison

TEF/brt

8/1/06, a thorough review of Inmate Quesada's central file was conducted to ascertain his gang involvement. esada is from Los Angeles County and of Hispanic descent but does not associate with the Southern Hispanic reno) population and wants to be housed with non-affiliated inmates (Others). According to his CDC 812 he is not liated with any disruptive group or prison gang. Noted are two (2) General Chrono's dated 4/17/06 and 6/29/01 oting no documented gang affiliation. I called KVSP's Institutional Gang Investigator O.C Harris to verify his g status and it was confirmed that he is not affiliated.

G. GARCIA
Correctional Counselor I
Approved/Denied

R. THOMAS
Correctional Counselor, II
Approved/Denied

R. FISHER
Correctional Captain Facility B
Approved/Denied

C-File
CCII
E      8/3/06                           **KVSP**                    **GENERAL CHRONO**