FILED

ORIGINAL

JUN 20 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| ALVARO QUEZADA, | CASEN No.1:08-cv-1404-FRZ |
| Plaintiff, | Honorable FRANK R. ZAPATA |
| vs. | COVER SHEET TO OPPOSITION MOTION FOR SUMMARY JUDGMENT |
| A. HEDGPETH, ET AL., | |
| Defendants' / | |

TO THE HONORABLE FRANK R. ZAPATA U.S. DISTRICT JUDGE, AND
TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:

TABLE OF CONTENTS

PAGES

Table of Contents,.................................... i,

Table of Authorities,................................. ii – v
Plaintiff's Response to summary judgment motion........ 1–4,
Plaintiff's Memorandum Of LAW Brief Point I. A–G,...... 1–49,,

Statement of the case................................. 1–2,

Statement of Facts.................................... 2–4,

POINT I. Genuine issue of material facts preclude
summary judgment on claims of 1st, 8th, and 14th,...... 4–6,

A. 1.through 3. plaintiff's procedural due process were
violated when confined/associated to a prison gang for
prolonged periods.................................... 7–18,

B. "I" through "V" Plaintiff's Equal Protection Claim.. 19–29,

C. The Defendants actions were not to advance penal
interest............................................. 29–30,

D. Defendants acted with deliberate indifference....... 30–33,

E. Plaintiff's 1st Amendment claim prevails summary
judgment and should deny qualified immunity............ 33–39,

F. defendants are not entitled to summary judgment or
qualified immunity on plaintiff's 8th amendment claims
to outdoor exercise/medical treatment................. 39–42,

G. "I" through "V", defendants' are not entitled to
qualified immunity on 14th amendment claims, including
Equal Protection Claims.............................. 42–49,

Plaintiff's declaration to oppose summary judgment
motion ¶s' 1 through 88.............................. 1–29 ,

Plaintiff's disputed facts (PDF) ¶s' 1 through 81..... 1–69,

## TABLE OF EXHIBITS

Exhibits listed as PDX I-Attachments 1-12, and PDX-II,
Ex.s' (1-a) through (76-a) will each have their own
attached list of 'Table of Exhibits'...................

MEMORANDUM OF LAW
TABLE OF AUTHORITIES

**PAGES**

### U.S. SUPREME CITATIONS

Anderson v. Liberty Lobby, Inc. 477 U.S. 247,248,106 S.Ct. (1986)........................................ 4,6,

Johnson v. California, 543 U.S. 499,512-13 (2005).. 6,24-25,27,30,48

Sandin v. Conner, 515 U.S. 472 (1995)............. 12,28,31,35,

Mathews v. Eldridge, 424 U.S. 319,333, (1976)...... 15,

Armstrong v. Manzo, 380 U.S. 545,552, (1965)....... 15,

Superintendent v. Hill, 472 U.S. 445,455, (1985)... 15,

Adarand Constructors Inc. v. Pena, 515 U.S. 200, 227 (1995)........................................ 23,24,

Grutter v. Bullinger, 539 U.S. 306,326-27, 336-37, (2003)................................... 24,

Gratz v. Bollinger, 539 U.S. 244,253,270 (2003).... 24,

Richmond v. J.A. Caroson Co., 488, U.S. 469,478, (1998)........................................... 25,30,

Hernandez v. Taxas, 347 U.S. 475,482, (1954)....... 25,

Shaw v. Reno, 509, U.S. 630,642, (1992)........... 25,27,

California v. Green, 399, U.S. 149,187 n.20, 90 S.Ct. 1930 (1970).................................. 28,

Thopson v. City of Louisvill, 362 U.S. 199,206, 80 S.Ct. 624, 1960.................................. 28,

Farmer, 115 U.S. at 825, 114 S.Ct. 1970............ 30,33,

Pell v. Procumier, 477 U.S. 817,822, 14 S.Ct. 2800, 41 L.Ed. 2d 495 (1974)........................... 35,

Rhodes v. Chapman, 452 U.S. 635,638, (1981)....... 40,

Anderson v. Creighton, 483, U.S. 635,638, (1987)... 43,

Saucier v. Katz, 533 U.S. 194,201, (2001).......... 43,

Harlow v. Fitzgerald, 457 U.S. 800,819, 102, S.Ct. 2727,2738, 73 L.Ed. 2d 396 (1982)........... 45,

MEMORANDUM OF LAW CITED   PAGES
TABLE OF AUTHORITIES

## CIRCUIT CITATIONS

1  Jackson v. Carey, 353 F.3d 750,755 (9th Cir. 2003)...   12,
   Resnick v. Hayes, 213 F.3d 443,448, (9th Cir. 2000)..   12,
2

3  Ramiez v. Galaza, 334 F.3d 850,861, (9th Cir. 2003)..   12,

4  Keenan v. Hall, 83 F.3d 1083,1089, (9th Cir. 1996)...   12,

5  Burns Warth v. Gunderson 179, F.3d 771,775,
   (9th Cir. 1999)....................................   14,28,
6

7  Bruce v. Ylst, 351, F.3d 1283,1288, (9th Cir. 2003)..   15,35,37,

8  Madrid v. Gomez, 889 F.Supp. 1146,1278 (N.D.Cal.1995).  15,
   Hunter v. Regents of Univ. of California, 190 F.3d
9  1061,1069,(9th Cir. 1999)............................   23,

10 Richardson v. Runnell, 594 F.3d 666,676
   (9th Cir. 2010....................................   23,24,26,
11

12 Monterey Mech. Co. v. Wilson, 125 F.3d 702,713,
   (9th Cir. 1997)...................................   23-25,

13 Oritz v. Voinovich, 211 F.Supp. 2d 917,928-29,
   (S.D. Ohoio 2002).................................   28,
14
   Smith v. Mensigner 793 F.3d 641,654, (3d Cir. 2002).  29,
15
   Thaddues-X v. Blatter, 175 F.3d 378 (6th Cir.1999).   29,
16

17 Lira v. Director Of Corrections, 2010 WL 727979....   30,

18 Lopez v. Smith, 203, F.3d 1122 (C.A.9 (Cal.) 2000)...   31,41,

19 Allen v. Sakai, 48 F.3d 1082,1088, (9th Cir. 1995)..   31,33,40,41,

20 Norwood v. Woodford 583, F.Supp. 2d 1200, (S.D.Cal.
   2008)................................................   31,
21 Hoptowit v. Ray, 682 F.2d 1237,1259 (9th Cir. 1982)..   31,

22 Norwood v. Vance, 572 F.3d 626,631 (9th Cir. 2009)...   31,

23 Spain v. Procunier, 600 F.2d 189,193-94 (9th Cir.
   1979)................................................   32,
24
   McQuillin Mckenzie, 547 35 Fed.Appx. (C.A.9 (Cal.)
   2008)................................................   34,
25 Brady v. Hall, 64 F.3d 1276,1279 (9th Cir. 1995).....   34,
   Riley v. Kurtz, 893 F.Supp. 709 (E.D.Mich. 1995).....   34,
26
   Hines v. Gomez, 108 F.3d 265,269, (9th Cir. 1997)...   35,
27
28 Schroedur v. McDonald, 55 802,806, n.4 (9th Cir. 1995).35,37,

                              iii

## CIRCUIT CITATIONS

1  Rhodes v. Robinson, (C.A.9 (Cal.) 2004)................  36,

2  Colli v. County of Orange, 351 F.3d 410,421,
   (9th Cir. 2003)........................................  43,
3

4  Wilkins v. City of Oakland, 350 F.3d 949,955-56
   (9th Cir. 2003)........................................  43,
5
   Serrano v. Franics, 345 F.3d 1071,1077 (9th Cir. 2003)..  43,44,
6
   Martinez v. Standard, 323 F.3d 1178,1183-85 (9th Cir.
7  2003).................................................  43,

8  Hydrick v. Hunter, 500 F.3d 978,988 (9th Cir. 2007)
   Petition for Cert. Denied, 76 U.S.L.W. 3410 (U.S. Jan.
9  2008) (No. 07-958)....................................  43,

10 Inouye v. Kemna, 504 F.3d 705, (9th Cir. 2006)..........  44,

11 Walkins v. City of Oakland Cal., 145 F.3d 977,979-80
   (9th Cir. 1996).......................................  44,

12 Jonhson v. Duffy, 588 F.2d 740,743, (9th Cir. 1978).

13 Alexander v. Perrill, (CA 9 (Ariz.) 1990)..............  45,47,

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW
TABLE OF AUTHORITIES, CONSTITUTIONAL PROVISIONS,
STATUTES, CCR TITLE 15, GOVT.SEC., (FRCP), (FRAP) (L.R.), (DOC.18)

|  | PAGES |
|---|---|
| 42 U.S.C. § 1983.............................. | 1,13,33, |
| Constitutional Amendments 1st, 8th, and 14th......... | 1,4,27,33,35,36, |
| DOC.18........................................ | 2,17, |
| FRCP Rule 56(c)................................. | 4, |
| FRAP, L.R. Rule 36-6............................ | 25,34, |
| State Superior Court Order Decision Unpublished....... | 25, |
| CCR Title 15 3000, 3004, 3044, 3375, and 3378........ | 8-10,15-18,46, |
| (DOM) § 52070.18.1.............................. | 11,34,46, |
| GOVT.SEC....................................... | 46, |
| 28 U.S.C. § PDX, PDF, and MEMO Of Law.............. | 33,69,49, |

v

P-90436 3B04-2421ow
Corcoran State Prison (CSP)
P.O. Box 3466
Corcoran, CA 93212
In Pro Se

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

ALVARO QUEZADA,                                    CASE NO. 1:08-cv-1404-FRZ

         Plaintiff,                                Honorable FRANK R. ZAPATA

    vs.                                            RESPONSE TO DEFENDANTS
                                                   SUMMARY JUDGMENT MOTION

A. HEDGPETH, ET AL.,

         Defendants'                   /

        TO THE HONORABLE FRANK R. ZAPATA U.S. DISTRICT JUDGE, AND

TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:

        Plaintiff files an 'Opposition Motion' pursuant to 'Federal

Rules of Civil Procedure' (FRCP) Rule 56 and 'Local Rules' (LR)

Rules 56-260(b)(d).

        Plaintiff will oppose and dispute the alleged undisputed

facts that the defendants' motion for summary judgment has stated,

where plaintiff will establish a 'Genuine Issue of Material Facts'

that might affect the outcome of this suit under the governing law.

        Plaintiff disputes and opposes the adequacy of the defendants'

factual presentation of their summary judgment motion. The defendants

arguments made are deceptive and unreasonably have miss stated the

facts of this case.

1

CI PAPER
OF CALIFORNIA
115 (REV. 3-95)

1    Plaintiff's 14th, 8th, and 1st Amendment rights were maliciou-
2    sly violated by the defendants' Hedgpeth, Flores, Nipper, and Soto.
3    Plaintiff was targeted and penalized for exercising a protected
4    activity specifically, complaining, criticizing KVSP policies, filing
5    numerous 'Constructive Notices' (CN) to top CDCR/KVSP Officials,
6    filing 602 appeals, and maintaining a civil 1983 civil complaint
7    case no. 1:06-cv-1088-OWW-GBC. As a direct result of exercising
8    these protected activities described supra, the Defendants' along
9    with KVSP Officials facilitated a scheme to further their personal
10   vindetta against plaintiff and any I/M who dared to complain and/or
11   challenge their policies.

12   Plaintiff's (Race) was used as a [Suspect] tool in bad faith
13   by the defendants' where plaintiff was punitively subjected to
14   prolonged [RACE] Based Lockdown Policies that was specifically
15   targeting  a [Hispanic Prison Gang or Disruptive Group] identified
16   as (Mexican Mafia) (EME) from herein, and (Southern Hispanic) (SH)
17   from herein, for alleged criminal activity.

18   (A) plaintiff was deliberately associated to these disruptive
19   prison gangs despite the fact that plaintiff did not affiliate,
20   associate, nor housed with such affiliated disruptive groups of
21   I/Ms'. The defendants' pretext to justify such punitive deprivations
22   of confining plaintiff to a prison gang  that were under criminal
23   investigations, was in bad faith and was based on plaintiff's
24   (Racial Origin) where the defendants' used plaintiff's race as
25   pretext to mask their retaliatory intent of unlawfully confining
26   plaintiff to a [H]ispanic Prison Gang's inquiry, of criminal activity.

27   (B) the defendants' had personal knowledge that plaintiff
28   was [NOT] affiliated, associated, nor did plaintiff house with [ANY]

2

(SH) I/M or any other I/M who was labeled as an affiliated I/M to any prison gang or disruptive group. The defendants' attempted to mask these retaliatory misdeeds by engaging in the scheme of 'Safety and Security' pretextes, even despite the facts that no evidence ever supported the defendants' pretextes that they alleged in their summary judgment motion. The mere allegation that plaintiff was an associate to the (SH) and the (EME), and thus was the reasons to subject plaintiff to same criminal investigations and punitive deprivations that was being imposed against the [H]ispanic population including plaintiff because he was of [H]ispanic Origin. See DUF ¶s' 10-16, and ¶ 56. See also Plaintiff's Disputed Facts (PDF) from herein, ¶s' 9, and 56.

(C) the defendants' also implemented unconstitutional race based lockdowns that were 'Impermissibly Preferential' based on race, where the defendants' granted greater A1/A privileges to [O]ther Races, e.g., whites, blacks, and others who were simularly situated or classified as A1/A, while preferentially depriving plaintiff of these same A1/A privileges solely because of plaintiff's (Race) being of Hispanic Origin.

Plaintiff communicated his serious medical needs for medical attention because plaintiff was suffering from Anxiety, Sleep,Depression, Headaches, Muscle Cramping, and Stress, all due to the prolong deprivations of punitively being confined for 24 hours a day with no outdoor exercise being afforded to plaintiff and for being affiliated to a prison gang's criminal investigation, and solely for being of Hispanic Origin.

(I) plaintiff was'denied both proper medical attention and access to outdoor exercise for prolonged periods of time, while the defendants' preferentially granted yard access to other races



IT PAPER
OF CALIFORNIA
113 (REV. 3-85)

1 | e.g., whites, blacks, and others. These animus discriminatory race
2 | based lockdown policies were never designed to serve a penal purpose.
3 | (II) these discriminatory lockdown policies that were imple-
4 | mented by the defendants', not only violated plaintiff's 14th and
5 | 8th Amendment rights, they also promoted discrimination and violence
.6 | that ultimately created a serious medical need to plaintiff's health
7 | and mental well being. These animus race based lockdowns created
8 | plaintiff's medical conditions due to being unlawfully confined
9 | for 24 hours a day, for prolonged periods of time without any outdoor
10 | exercise being afforded to plaintiff

11 | Plaintiff request the court to take notice that he will be
12 | introducing Exhibits' I, with attachments 1 through 12, and Exhibit
13 | II, with attached listed Exhibits' 1-a through 76-a, and plaintiff
14 | will be accompanying these Exhibits with attached declarations
15 | pursuant to (FRCP) Rule 56(e), and (LR) Rules 56-260(d).

16 | This motion is based on this notice of motion and motion
17 | of memorandum of points and authorities, statement of facts, and
18 | disputed facts, declarations, and any other documentary evidence,
19 | the pleadings, records, and files in this action and any other
20 | matters that may properly come before this court.

21 |
22 | Date executed on: 6/16/11 ,
23 |
24 | _____ ,
25 | ALVARO QUEZADA, IN PRO SE
26 |
27 |
28 |

4

P-90436 3B04-2421ow
Corcoran State Prison (CSP)
P.O. Box 3466
Corcoran, CA 93212
In Pro Se

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

ALVARO QUEZADA,                          CASE No. 1:08-cv-1404-FRZ

        Plaintiff,                       BRIEF IN OPPOSITION TO
                                         DEFENDANTS' SUMMARY JUDGMENT
    vs.                                  MOTION

A. HEDGPETH, ET AL.,

        Defendants'                  /

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' SUMMARY JUDGMENT MOTION

STATEMENT OF THE CASE

This is a civil rights case filed under 42 U.S.C. § 1983 by a state prisoner at Kern Vallye State Prison (KVSP) from herein asserting claims of unconstitutional acts that violated plaintiff's 1st, 8th, and 14th Amendment rights by the defendants', (1 through 4) cited in this complaint. The defendants' willfully implemented animus race based discriminatory lockdown policies, that deprived plaintiff of all outdoor exercise for prolonged periods of time where plaintiff was punitively confined to his cell for 24 hours a day for prolonged periods; plaintiff was also denied medical attention to his serious medical needs that was created from the prolonged periods of unlawful confinement of these invidious race based lockdown policies the defendants' imposed on plaintiff. Plaintiff was also targeted to

1

1  systematic retaliations simply of exercising a protected activity

2  where these race based lockdowns were used as a tool to inflict

3  invidious reprisals against plaintiff, in the hopes of discouraging

4  or deterring plaintiff, plaintiff demands a jury trial; See PDX

5  I-1 (DOC.18) D. Cause of Action Counts' 1 Through 3, P. 5 of 73

6  Through 20 of 73, and 23 of 73.

7  <u>STATEMENT OF FACTS</u>

8      The plaintiff's declaration submitted in response to the

9  defendants' motion states that plaintiff was pro-active as the

10  'Inmate Advisory Counsel Representative' (IAC) Rep. for the Others.

11      Plaintiff filed numerous constructive notices (CN), 602s',

12  and was maintaining a 1983 civil complaint filed against Kern Valley

13  State Prison (KVSP) officials. Plaintiff's declaration PDX from

14  herein, ¶s' 5-9.

15      As a result of plaintiff's engagement in exercising his

16  protected rights to complain, criticize, petition and/or maintain

17  a 1983 civil complain in the Federal Court's, plaintiff was subjected

18  to repeated acts of retaliations for this conduct. See Plaintiff's

19  disputed facts PDF from herein, ¶78, and PDX-II, Ex. (76-a).

20      The defendants' used plaintiff's [RACE] as a suspect tool

21  to maliciously associate plaintiff to a 'Hispanic Prison Gang' known

22  as the "Mexican Mafia" (EME), and a 'Disruptive Group' known as

23  "Southern Hispanic" (SH), who were under criminal investigations.

24  See PDF, ¶s' 4-11, see also DUF ¶s' 5-16.

25      Plaintiff was maliciously subjected to multiple back to

26  back race based punitive deprivations of confinements that was being

27  imposed against the (EME) and (SH) groups, groups that plaintiff never

28  affiliated too.

2

1    Plaintiff was denied outdoor exercise for months at a
2    and was confined to a cell for 24 hours a day, simply because
3    plaintiff was of (HISPANIC ORIGIN) and the defendants used plaintiff'
4    s race as a pretext, in order to justify their punitive confinement
5    of plaintiff and mask their true motives of vindictive retaliations.

6    Plaintiff sought for medical attention from his serious
7    medical needs that plaintiff was suffering from, and as a direct
8    result of the adverse conditions that the defendants' created against
9    plaintiff; and all due to the lack of outdoor exercise, and the
10   punitive punishment that was being imposed against plaintiff by
11   being deliberately associated to a prison gang or a group that
12   plaintiff did not affiliate with by any means. Plaintiff suffered
13   from 'Anxiety, Stress, Headaches, Muscle Cramping, etc., see PDX
14   ¶s' 34 and 37, see also PDX-II, Ex. (48-a).

15   The defendants' had personal firsthand knowledge of
16   plaintiff's current situation, that plaintiff was not by any means
17   affiliated or associated to the (EME) or the (SH) disruptive group
18   that they willfully associated plaintiff to, back in Jan.-Aug. of
19   2007.

20   In fact, the defendants' generated their own CDCR's 128-B
21   informative chronos confirming plaintiff's non-affiliated status
22   to [ANY] prison gang or disruptive groups. See PDX-II, Ex.s' (17-a),
23   and (32-a). Therefore, establishing their bad faith motives and
24   bring to light their true intent to aggravate plaintiff, based on
25   their adverse actions taken against plaintiff, when their actions
26   were never to serve a penal interest.

27   The defendants' declarations and undisputed facts tell
28   a very different story. They claim that plaintiff was subserviant



3

1  and under the authority to the (EME) and the (SH) disruptive groups.
2  They stated that plaintiff's confinement was designed to serve a
3  penal purpose and that plaintiff's confinement was never in bad
4  faith.

5      The defendants' do not even dispute the denial of
6  plaintiff's medical attention claim, therefore the defendants'
7  stipulate to all asserted in plaintiff's complaint, DOC.18, in PDX
8  I-1.

9      The defendants' further claim that they are entitled
10 to 'Qualified Immunity' to 8th and 14th amendment claims, and as
11 to the 1st Amendment claim, plaintiff fails because their Race Based
12 lockdowns were allegedly valid to serve a penal interest. Plaintiff
13 will be referring to the defendants' 'Undisputed Facts', (DUF) from
14 herein, and the 'Defendants Declaration' (DX) from herein, and
15 'Plaintiff's Disputed Facts' (PDF), and 'Plaintiff's Declaration'
16 (PDX) from herein.

17                          POINT 1

18          THERE ARE GENUINE ISSUES OF MATERIAL FACTS THAT
             PRECLUDE SUMMARY JUDGMENT FOR THE DEFENDANTS'
19   ON PLAINTIFF'S CLAIMS OF 1st, 14th, AND 8th AMENDMENT VIOLATIONS

20      Summary Judgment is to be granted only if the record before
21 the Court shows "that there is no genuine issue as to any material
22 fact and that the moving party is entitled to a judgment as a matter
23 of law". Rule 56(c) of Federal Rules of Civil Procedure (FRCP).
24 A "Material" fact is one that might affect the outcome the suit
25 under governing law" Anderson v. Liberty Lobby, Inc. 477 U.S. 242,
26 248, 106 S.Ct. (1986).

27      The declarations of the plaintiff and the defendants'
28 are squarely contradictory as to what the defendants' claimed in

                              4

1 their DUF and DX. The defendants' try to claim 'Quality Immunity'
2 to the Punitive Race Base Lockdown Policies, where plaintiff asserts
3 that such deprivation of outdoor exercise served no security purpose
4 but was simply instituted to cause extreme suffering. In addition,
5 the defendants motives were designed to deprive plaintiff of outdoor
6 exercise for great periods of time, as a means to punish plaintiff
7 for exercising a protected activity.

8     The defendants' try to claim a penal purpose in all their
9 actions, and they try to claim Qualify Immunity to the race based
10 lockdown policies, the denial of outdoor exercise, and as to the
11 retaliation claim, they stated that plaintiff allegedly fails due
12 to the fact that their actions were related to a penal interest.

13     Plaintiff assertions in PDX and PDF portray's a completely
14 different claim and lay down a foundation of their malicious motives
15 that were never intended to serve a penal interest.

16     In fact, the defendants' pretexts were quite the contrary
17 as to what they stated in their DUF and DXs'. Plaintiff will
18 introduce factual evidence that will contradict the defendants'
19 claims, thus establishing a clear genuine issue of material facts.

20     The factual dispute is also material. Under governing
21 Law, whether plaintiff's confinement was based on Race, and will
22 the practice withstand strict scrutiny. Plaintiff asserts that the
23 defendants' race based lockdown policies that plaintiff was subjected
24 to were race based motivated with bad faith intentions, solely
25 designed to retaliate, thus violating that standard that the Supreme
26 Court rendered in the Johnson's case, where ("[O]nly a social a
27 emergency raising to the [L]evel of [I]mminent [D]anger to [L]ife
28 and [L]imb-for example, a prison race riot, requiring [TEMPORARY]

1  segregation of I/Ms'"; can withstand strict scrutiny) (citations
2  Omitted). See Johnson v. California, 543 U.S. 499, 512-13, (2005).
3  The defendants' however claim that these actions were justifiable
4  and would satisfy the strict scrutiny.

5      Plaintiff asserts that the defendants' reasons for
6  confining plaintiff was purely motivated by retaliatory intent for
7  exercising a protected activity, and thus, they the defendants'
8  used plaintiff's [RACE] as a pretexts to be used a retaliatory tool
9  designed to mask their true malicious intentions, where the
10 defendants' scheme was tailored to discourage or deter plaintiff
11 from engaging in criticizing, complaining, and/or maintaining a
12 1983 civil complaint filed against the defendants' cronies.

13     The defendants' state quite the opposite of plaintiff's
14 claims, they state it was to [A]dvance a governmental goal to prevent
15 violence. Plaintiff asserted the violation of his 14th Amendment
16 rights to [E]qual [P]rotection [C]lause to be free from race based
17 discrimination policies.

18     The defendants' alleged that they never implemented race
19 based lockdown policies. These (GENUINE ISSUES OF MATERIAL FACTS)
20 are also in dispute as the issues raised supra, with regards to
21 plaintiff's 1st, and 8th amendment claims.

22     Plaintiff will argue below in more detail. A reasonable
23 jury could find for the plaintiff based on the facts and evidence
24 that will be introduced by plaintiff, i.e., declarations, Plaintiff's
25 disputed facts, and PDX I-1 through 12, PDX-II, Ex.s' (1-a) through
26 (76-a), where plaintiff has introduced them throughout his opposition
27 motion; therefore, summary judgment must be denied. Anderson v.
28 Liberty Lobby, Inc. 477 U.S. 242,248, 106 S.Ct. 2505 (1986).

() PAPER
IN CALIFORNIA
113 (REV. 3/08)

A, PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS WERE
VIOLATED WHEN PLAINTIFF WAS UNLAWFULLY CONFINED
FOR PROLONGED PERIODS THAT UNLAWFULLY SUSPENDED
PLAINTIFF'S PRIVILEGES WHILE PREFERENTIALLY
GRANTING OTHER RACES THESE SAME A1/A
PRIVILEGES, ON THE PRETEXTS THAT
IT WAS A CRIMINAL INVESTIGATION
THAT WAS RELATED TO THE
PRISON GANG
(EME OR SH)

The defendants' implemented their lockdown on Jan. 3, 2007 that generated PSR log# KVP-B-07-001, because allegedly members of the 'Institutional Gang Investigation' (IGI) Unit received information that various factions of the Mexican Mafia (EME) were engaged in a power struggle. DXB, ¶26, DXE, P. 1-4.

The defendants' also asserted or inferred in their summary judgment motion in DUF ¶s' 11-16 that KVSP 'SOUTHERN HISPANIC' (SH) [FROM HEREIN], is a disruptive group comprised primarily of Hispanic 'INMATES' (I/Ms') [FROM HEREIN], from 'Southern California'. DXB, ¶47, (SH), and its members and associates are referred to generally as (SOUTHERNS). Southerns are subservient to the prison gang (EME) DXB, ¶47. See DUF ¶10.

The defendants' reference in DUF ¶s' 13-16 that plaintiff being classified Hispanic, and if a (SH) I/M refuses to submit to the authority of the (EME) or (SH), he would be assaulted. DXB ¶48.

The defendant further make insinuating statements of plaintiff, that infers and association to a prison gang identified as the (EME), and a disruptive group identified as (SH). They also alleged that I/Ms' who consider themselves as "OTHERS" are often individuals of Hispanic ancestry from Central/South America DXB ¶49. The I/Ms' who desire to be labeled as "OTHERS" commonly have to abided by the authority of the most influential gang faction.

7

1  In KVSP's case that would be the (SH) I/Ms', or Southerns. DXB ¶50.

2         During 2007, the 'Leader, or "Shot-Caller"' of the group
3  of I/Ms' who identified themselves as (OTHERS), were working for
4  the (SH) DXB, ¶51, and DUF ¶s' 11-16.

5         The defendants' made inflameing statements such as the
6  one stated supra that alleged that plaintiff was confined as a direct
7  result of PSR Log# KVP-B-07-001, because plaintiff was classified
8  as Hispanic, and plaintiff was geographically from Southern
9  California, and had considered him self as Hispanic (OTHER), and
10 these were often individuals of Hispanic ancestry, and that an
11 alleged "shot-caller" for the Others was working for the (SH).

12        Therefore, if plaintiff [WAS] being placed under an
13 investigation pursuant to the defendants' allegations made supra,
14 of plaintiff being associated to the (EME) or (SH); then section
15 3378 require's the procedural safeguards to be afforded to plaintiff
16 under these alleged circumstances, if true.

17        The departments own regulations require that plaintiff
18 be [VALIDATED AS A MEMBER OR ASSOCIATE OF THE (SH) GROUP OR THE (EME)].
19 The regulation does not allow for an informal classification process,
20 nor do they afford an exception for "Affiliates", which in plaintiff's
21 case was exactly what the defendants' engaged in. Note, only if
22 plaintiff was truly suspected for being an associate to a prison
23 gang or associated to a disruptive group, then this procedural safe-'
24 guard was to be afforded to plaintiff.

## 1. SECTION 3378 REQUIRES VALIDATION

25

26        Section 3378, located in CCR Title 15 under Subchapter 4
27 (General Institutional Regulations), Article 10 (Classification),
28 requires that the defendants' who work for the department to validate

8

1  plaintiff. It is the only regulation applicable to how the defendants'
2  should have gone about classifying I/Ms' believed to be involved
3  with gangs.

4      As used in Section 3378, the [TERM "GANG"] includes
5  disruptive groups. See Section 3378(c)(1) which specifies that "GANG"
6  means (Prison Gang or "Disruptive Group") as defined in Section 3000
7  (emphasis added). Under Section 3000, a gang is "ANY ONGOING FORMAL
8  OR INFORMAL ORGANIZATION, ASSOCIATION OR GROUP OF THREE OR MORE
9  PERSONS"'... which has a common [N]ame or [I]dentifying sign or symbol
10 whose members and/or associates, individually or collectively, engage
11 or have engaged, on behalf of that organization, associations' or
12 group, in two or more acts [OF MISCONDUCTS] CCR § 3000.

13     A disruptive group is "ANY GANG; OTHER THAN A PRISON GANG".
14 Id. Accordingly, the defendants' have alleged in their (DUF) ¶s'
15 11-16 that plaintiff was allegedly under the authority of the most
16 influential gang faction. In KVSP's cas that would be (SH). DXB ¶50,
17 see PDX I-9, CCR § 3375.3(a)(4)(A)-(B); and PDF ¶9.

18     In the validation process is governed by 'Subsection(c)'.
19 This subsection (c) says that if the department alleges an I/M is
20 involved in a [GANG], it [M]ust investigate the allegations.

21     The purpose of this investigation is to collect information
22 that will ["VALIDATE"] the I/M:

23     Subsection (3), a member is an I/M/Parolee who has been
accepted into membership by a gang. [T]his [I]dentification
24 requires at least (THREE (3) Independent Source Items Of
Documentation Indicative Of Actual Membership). Validation
25 of an I/M/Parolee as a member of a prison gang [SHALL]
require that at least one (1) source item be direct link
26 to a current of former validated member or associate of
the gang.

27     Subsection (4), An [ASSOCIATE] is an I/M/Parolee who is
28 involved periodically or regularly with members or associates



9

of a gang. This identification requires at leas three (3) independent source items of documentation indicative of association with validated gang members or associates. Validation of an I/M parolee as an associate of a prison gang [SHALL] require that at least (1) source item be direct link to a current or former validated member or associate of the gang Id. § 3378(c)(3)-(4) (emphases added).

It is to be noted that the specific reference to "PRISON GANGS" in the second sentence of subsection (3)-(4) under scores that the general reference to [GANG] in the prior sentence regarding three independent source applies not just to prison gangs, but to all gangs this includes disruptive groups. See PDX I-10.

The defendants already admitted supra that plaintiff who was considered an "OTHER" who allegedly, commonly abide by the authority of the most influential gang faction. In KVSP's case that would be the (SH) I/Ms'. Further, during 2007; the Leaders, or "Shot-Callers" of the group of I/Ms' who identified themselves as the "OTHERS" were allegedly working for the (SH). DXB ¶51, and DUF ¶11-16.

Plaintiff also asserts that all the PSRs' stated "Hispanic And/Or I/Ms' Housed With Hispanic", thus willfully associating plaintiff to the (SH) or the (EME's) criminal investigation. See DXE P. 1, PSR Log# KVP-B-07-001. See portion remarks below of PSR. Therefore the defendants' have called plaintiff an [AFFILIATE] and this does not allow the defendants' to [E]vade Section 3378's validation [R]equirement.

Title 15 says members and associates must be validated. The term an [AFFILIATE] is a general term that includes both members and associates, i.g., CCR §3378(c)(5) ("A dropout is an I/M/Parolee who was either a gang member or associate and has discontinued gang affiliation"); id. 3(c)(8)(D), (referring to "Validated gang affiliates"). See PDX I-10, the Department Operations Manual (DOM)

10

1  where this sections also requires affiliates to be validated. See

2  DOM § 52070.18.1. See PDX I-11, documenting gang affiliation on

3  a CDC Form 812-A or 812-B. ("if, after the thorough investigation

4  and documentation prescribed by DOM, Chapter 6, Article 2, the

5  gang investigator concludes the I/M/Parolee is gang affiliated

6  (active or inactive) or has had a change in gang status, the

7  investigator shall complete either a CDC Form 812-A, Notice of

8  Critical Case Information-Prison Gang Identification, or a CDC Form

9  812-B, Notice of Critical Case Information-Disruptive Group

10  Identification: on the form, the gang investigator shall document

11  the affiliation, category of involvement, and the original,

12  independent source items of information contained in the Central

13  file, which were used to support the conclusion"). (emphases added).

14      The defendants' have failed to follow these procedures

15  described above with regards to plaintiff:

16      (1) plaintiff was never provided any of these procedural

17  due process safeguards that CCR § 3378 and the 14th Amendment requires

18  and mandates the defendants' to afford plaintiff under such set of

19  alleged circumstances made by the defendants' against plaintiff.

20      (2) plaintiff was confined for allegedly being an  associate

21  or affiliated under the authority of the (SH) or the (EME) who were

22  under a criminal investigation; and

23      (3) since plaintiff was confined and associated to the

24  same criminal investigation that was being imposed against the (SH)

25  and (EME), then plaintiff's "Equal Protection Claims" mandates the

26  protection of plaintiff's protected liberty interest rights, to be

27  adequately accorded.

28

## 2. PLAINTIFF HAS A PROTECTED LIBERTY INTEREST IN NOT BEING PLACED ON MODIFIED PROGRAMMED OR LOCKDOWN

A procedural due process violation results if there has been (1) a deprivation of a protected liberty interest, (2) without adequate process. See Sandin v. Conner, 515 U.S. 472 (1995). Plaintiff as a prisoner, to establish a deprivation of a protected liberty interest, plaintiff must show he has suffered an "Atypical and Significant Hardship... in relation to the ordinary incidents of prison life". Jackson v. Carey, 353 F.3d 750,755 (9th Cir. 2003) (quoting Resnick v Hayes, 213 F.3d 443,448 (9th Cir. 2000). Sandin requires a "factual comparison... Examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." Id. In addition, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards". Ramirez v. Galaza, 334 F.3d 850,861, (9th Cir. 2003) (quoting Keenan v. Hall, 83 F.3d 1083,1089 (9th Cir. 1996)).

The defendants' malicious actions to take retaliatory acts or omissions against plaintiff for exercising a protected activity, where the defendants' used plaintiff's [RACE] as a retaliatory tool to deliberately punish plaintiff by maliciously associating plaintiff to a prison gang known as the (EME), or the (SH) disruptive group who is subservient to the (EME). See DUF ¶s' 10-16; see PDX ¶s' 5-18, and PDF ¶s' 4-9(B)...

In addition, the mere fact that plaintiff was being vindictively retaliated for engaging in a protected activity, the defendants' also subjected plaintiff to [BOTH] the [S]everity and the [D]uration of the modified programs established by the defendants' materially changed the conditions of plaintiff's confinement solely

12

1 for being of a [SPECIFIC RACE], where plaintiff's race was used as
2 a retaliatory tool where the defendants' motives were to use depriv-
3 ation periods as a means to punish plaintiff in the hopes of
4 deterring plaintiff from a protected activity.

5      Plaintiff has asserted in his complaint and the exhausted
6 602 appeal in PDX I-1 DOC.18 where the defendants' placed plaintiff
7 on lockdown or modified program, it denied plaintiff movement, outdoor
8 exercise, packages, visiting, canteen, access to the telephone, daily
9 showers, religious services, access to work assignments, and/or any
10 other rehabilitational programs. Plaintiff suffered substantial
11 deprivations that other general population I/Ms' were spared.

12      The PSRs' confirm that the defendants' indeed denied the
13 [H]ispanic I/Ms' these privileges. See PDX-II, Ex. (17-a), see the
14 defendants' response letter postdated Feb. 2, 2007, see PDX-II, Ex.
15 (24-a), the defendants' response letter postdated March 19, 2007;
16 see also PDX-II, Ex. (27-a), P. 2 of the 2nd Level response. Here
17 the defendants' have repeatedly admitted the practice of such
18 impermissible Race Based Practices. Furthermore, the defendants'
19 have implemented the lockdowns for months at a time, sometimes for
20 as long as (90 DAYS STRAIGHT FOR 24 HOURS A DAY WITH NO OUTDOOR
21 EXERCISE BEING AFFORDED TO PLAINTIFF, WHILE PREFERENTIALLY GRANTING
22 THESE SAME A1/A PRIVILEGES TO OTHER RACES OF THE SAME A1/A CLASSIFIC-
23 ATION). See PDX-II, Ex.s' (50-a), (62-a), (66-a), (68-a), (69-a),
24 (74-a), and (75-a).

25      Therefore, the defendants' knowingly deprived plaintiff
26 of [L]iberty in retaliation for criticizing the defendants' policies
27 and for maintaining 1983 civil complaint against them, where plaintiff
28 was maliciously associated to a prison gang or disruptive group that
that ultimately deprived plaintiff of outdoor exercise for months

TI PAPER
OF CALIFORNIA
113 (REV. 5-95)

1  at a time, where these adverse conditions created a 'Serious Medical
2  Need to Plaintiff's Health'. See PDX-II, Ex.s' (48-a), (68-a), and
3  (76-a). Plaintiff was never afforded the entitled due process. In
4  addition to being maliciously associated to a prison gang's criminal
5  investigation, the defendants' placed plaintiff's well being at risk
6  with regards to the prison politics by the defendants' calculated
7  acts to discourage plaintiff from complaining and/or criticizing
8  their policies.

9        The mere fact that plaintiff was [PUNISHED] by the
10 defendants' deliberate association to the prison gang despite the
11 fact that plaintiff was not affiliated nor associated to [ANY] prison
12 gang or disruptive groups. The defendants' had 'Personal Firsthand
13 Knowledge' of these facts, and still proceeded to subject plaintiff
14 to these retaliatory conditions of confinements.

15       The mere acts of the defendants' to [PENALIZE] plaintiff
16 by unlawfully confining him to his cell for 24 hour a day for months
17 at a time, and subjecting him to several criminal investigations
18 associated to a prison gang, based on such a retaliatory motives,
19 as opposed to a legitimate penal interests, and this,amounts to an
20 atypical hardship. See Burns Warth v. Gunderson 179 F.3d 771,775 (9th Cir. 1999).
21 Here the Court has held that weather good time is lost or not when an I/M is found
22 guilty of a misconduct, prison officials will always violate the
23 Sandin requirement if they find someone guilty of a misconduct  when
24 there is [NO EVIDENCE] of guilt.

25       In plaintiff's case, plaintiff was unlawfully confined
26 for months at a time and held to the same punitive measures associated
27 to a prison gang or disruptive group affiliate, groups that plaintiff
28 [NEVER] affiliated with by any means. Plaintiff was arbitrarily and

14

1 capriciously subjected to punitive conditions of confinement

2 associated with a guilty findings of misconduct with no evidence

3 of being guilty of any wrong doing. In plaintiff's case, the only

4 thing plaintiff was guilty of, was that plaintiff exercised a

5 protected activity and plaintiff was of Hispanic origin.

6    The defendants' used a pretext of plaintiff's race where

7 plaintiff was accused of being an associated to a prison gang or

8 disruptive group without ever being afforded the basic due process

9 that CCR Title 15 § 3378 mandates the defendants' to accord plaintiff.

10 Note, the sole reason for justifying the confinement of plaintiff

11 was because plaintiff was of Hispanic origin, and this was used as

12 retaliatory tool to advance the defendants' malicious scheme of

13 premeditated retaliation.

### 3. THE DEFENDANTS' USED PLAINTIFF'S CLASSIFICATION AS "HISPANIC" TO ASSOCIATE HIM TO A PRISON GANG OR DISRUPTIVE GROUPS' CRIMINAL INVESTIGATION WITHOUT ADEQUATE PROCESS

17    An I/M must receive opportunity to be heard "AT A MEANINGFUL

18 TIME AND IN A MEANINGFUL MANNER". Mathews v. Eldridge, 424 U.S. 319,

19 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545,552 (1965)).

20 There must also be evidence wich "sufficient indica of reliability",

21 and periodic review of the classification subjecting the I/M to the

22 [DEPRIVATION]. See Bruce v. Yist, 351 F.3d 1283,1288 (9th Cir. 2003);

23 Madrid v. Gomez, 889 F.Supp. 1146,1278 (N.D.Cal. 1995), See also

24 Superintendent v. Hill, 472 U.S. 445, 455 1985).

25    Section 3378 responds to these requirements—it establishes

26 that the defendants' [C]an [N]ot classify I/Ms' as gang affiliates

27 on [MERE ALLEGATIONS]. Rather, gang affiliation [M]ust be documented,

28 and "gang involvement allegations ["SHALL BE INVESTIGATED"]. See

15

IT PAPER
OF CALIFORNIA
115 (REV. 3-95)

1  CCR § 3378(a) and (c).

2       Pursuant to those investigations, the defendants' may
3  classify I/Ms' as members or associates of gangs, though the I/Ms'
4  involvement must be "CURRENT" (defined as within the past 'Six Years')
5  and there must be independent sources evidence to support the
6  classification. CRR § 3378(c)(1)(3), and (4). The sources may not
7  be based entirely on [HEARSAY] information from confidential
8  informants'. CCR § 3378(c)(8)(H).

9       Therefore, before the allegations against an I/M can be
10  ["VERIFIED"] or ["VALIDATED"], an (IGI) must interview the I/M,
11  providing [24 HOURS' NOTICE], must disclose any nonconfidential source
12  items that will be used against the I/M, and then for disruptive
13  group affiliates document the information on a Form 812-B. Id § (c)
14  (6). The Form 812-B must be reviewed annually. Id § (c)(7).

15       Plaintiff asserts that he was never accorded any of these
16  due process protections. In fact, the defendants' have documented
17  quite the opposite with respects to plaintiff's "AFFILIATION" or
18  "ASSOCIATION" status. The defendants' have repeatedly documented
19  in their own CDCR 128-B chronos' that plaintiff is a (non-affiliated
20  Hispanic Other) that is [N]ot affiliated nor associated to [ANY]
21  disruptive group or prison gangs. See PDX-II, Ex.s' (17-a), (27-a)
22  attached appeal response First Level Response, and Ex. (32-a) the
23  informative Chronos', and PDF ¶6

24       In addition, specifically, the defendants' never notified
25  plaintiff that it had intentions to use any of the above-described
26  incidents as evidence of disruptive group affiliation. In fact the
27  defendants' never classified plaintiff as a gang affiliate to begin
   with at any of his annual classifications, much less the

28                                  16

71 PAPER
(I) CALIFORNIA
113 (REV. 3-08)

1   classification   was   never   reviewed.   See   CCR   §   3375.2(b)(11)

2   3375.4(k)(1)(A) (requiring three-letter code for **"GAN"** to be entered

3   for gang members and/or associates' under box for **"Administrative**

4   **Determinants"** on form 840; (No "GAN" code was ever entered on any

5   form 840's for plaintiff. See PDX, I-9 through I-11.

6        The defendants' have also violated their own procedural

7   safeguards that CCR Title 15 §   3375(f)(1)(A)-(E)   mandates   to   be

8   afforded to any I/M who is going to be effected adversely.

9   3044(c)(2)-(5)_ also requires the procedural safeguards to be

10  afforded to plaintiff. The defendants' have clearly violated their

11  own regulations that specifically instructs the defendants'

    the following:

12

13        (5) "No I/M or group of I/Ms' **"SHALL"** be granted
          privileges not equally available to other I/Ms' of the
14        [S]ame custody classification and assignment who would
          otherwise be eligible for the same privileges".

15

16        Plaintiff was repeatedly deprived of these [S]ame custody

17  classification A1/A privileges that was being preferentially afforded

18  to other races, i.e., Blacks, Whites, and Others. See PDX I-1, DOC.18

19  P. 5 of 73 through 9 of 73. Furthermore, California Law grants

20  plaintiff a protected liberty interest in remaining **[FREE]** from

21  confinement or restraint, **[UNLESS]** plaintiff is found guilty of a

    prison rule or regulation. See PDX I-1, P. 12 of 73.

22

23        In plaintiff case, the only thing plaintiff is guilty of,

24  is that he is of 'Hispanic Origin', and that plaintiff exercised his

    right of complaining and criticizing the defendants' policies.

25

26        **4. PLAINTIFF WAS NEVER PROVIDED THE
          OPPORTUNITY FOR ADEQUATE REVIEW**

27        The defendants' have gone to the extent to informally

28                              17

1  associate plaintiff as a gang affiliate to a prison gang, DUF ¶s'
2  10-16, DXB, ¶47-51. Therefore, it was mandated to periodically
3  review that classification during the course of these Race Based
4  Lockdowns, when plaintiff was being confined along with the (EME)
5  and the (SH) disruptive groups from Jan. through Aug. 2007. The
6  Defendants [Failed] to do so.

7       As mentioned supra, Title 15 presumes gang affiliates will
8  receive a form 812-B and that the form 812-B's will be reviewed
9  at the annual classification hearings. But in plaintiff's case,
10 **"HE NEVER"** received a form 812-B, plaintiff's annual classification
11 forms do not reflect [[A]any [G]ang] associations or affiliations
12 labeling plaintiff to a [G]ang, and thus, his purposed disruptive
13 group label was never reviewed.

14      The defendants' have also subverted the review process
15 known as debriefing, or disaffiliation in practice, this process
16 should be afforded to all I/Ms' who desire to challenge their gang
17 classification, this includes I/Ms' like plaintiff who the defendants
18 have attempted to link plaintiff to prison gang (EME) or a disruptive
19 group (SH). See CCR § 3378(c)(5). However, the defendants' never
20 afforded this process to plaintiff because plaintiff was [NEVER]
21 really an associate nor an affiliate to the [EME] or the [SH]
22 disruptive group. As stated above, the defendants' had [P]ersonal
23 [F]irsthand [K]nowledge that plaintiff was a (Non-Affiliated Hispanic
24 Other) who was not associated to [ANY] gang or group.

24      Therefore, the defendants' actions to unlawfully confined
25 plaintiff back in Jan. 2007 through Aug. 2007, was never really
26 designed for a penal purpose, other than to advance a retaliatory
27 scheme solely designed to deter and/or discourage plaintiff from
28 exercising a protected activity. See PDX I-12, P. 2 of 2 of appeal

1  response by Sgt. M. Jones, where he stated in part:

2           "A [T]horough inquiry has been conducted into your claim
            including a personal interview and review of your C-file.
3           On Aug. 9, 2001 you claimed affiliation with "OTHERS"
            group on a CDC 114-D administrative segregation placement
4           Notice, and during Initial Classification Committee (ICC).
            On July 14, 2005 a CDC 128-G denotes your claim that you
5           are [MEXICAN WITH NO AFFILIATIONS] etc., see PDX-II, Ex.s'
            (16-a) attached Ex.s' "A"/"B" the filed 602s', see PDX-II,
6           Ex. (17-a), see notice with attached informative chronos'
            and the defendants' response, see PDX-II (24-a), the
7           Feb. 5, 2007 complaint and their response, see PDX-II,
            Ex. (31-a), the 602 appeal, and Ex. (32-a), and their
8           response,".

9           Therefore plaintiff's claims of the defendants' implementing

10  preferential Race Based Lockdown Policies that were for prolonged

11  periods of time, that substantially deprived plaintiff of all Al/A

12  privileges who was of Hispanic Origin, while they impermissibly

13  granted these same Al/A privileges to other races, i.e., Blacks,

14  Whites, and Others. Plaintiff's 'Equal Protection Claims' have been

15  established.

16                    B. PLAINTIFF'S EQUAL PROTECTION CLAIM SHOULD
                         STAND BASED ON THE DEFENDANTS'
17                            ANIMUS RACED BASED
                              LOCKDOWN POLICIES

18           Plaintiff has asserted that the defendants' have implemented

19  a systematic practice of animusly targeting the Hispanic I/M

20  populations to repeated back-to-back lockdowns or modifications

21  of program on the basis of [RACE].

22           This systematic practice also extends to other racial

23  groups i.e., Whites, Blacks, and Others. See DXE, P. 1 through 86.,

24  see also PDX-II, Ex. (17-a) the defendants' response letter postdated

25  Feb. 2, 2007. The letter states in part:

26           "Your [ETHNIC IS MEXICAN], as you have admitted, which
            is also documented on all official departmental documenta-
27          tion as such. It is your personal choice not to affiliate
            with other Hispanics or Mexicans. However, this does not
28

                                    19

change your ethnicity. Your contention of being targeted and singled out by the administration of KVSP, due to your filing of civil actions, is without merit. You have not been targeted or singled out, as the [R]estrictions of the Modified Program applied to all I/Ms' who met the criteria outlined ·in the program status report PSR. [ALL HISPANIC I/Ms', AND THOSE HOUSED WITH HISPANICS WERE, PLACED ON MODIFIED PROGRAM AS A RESULT OF AN INCIDENT WHICH HISPANICS], wherein the specific segments of, or disruptive groups within the Hispanic population could not be readily [I]dentified.or [I]solated. Therefore, [ALL] [H]ispanics [WERE PLACED ON MODIFIED PROGRAM] etc." See PDX-II, Ex. (24-a), the March 19, 2007 response to the Feb. 5, 2007 complaint on the practice of Race Based Lockdowns of plaintiff, where it states in part:

"The memo's subject: LOSS OF PRIVILEGES BASED ON ETHNICITY DURING A MODIFIED PROGRAM SCHEDULE". The defendants responded· in part "A review of the Facility B program within the Jan. 15, 2007 and Jan. 26, 2007, time frame you provided was conducted. During this interview it was noted that Facility B reflects a Modified Program for the [H]ispanic I/M Population based on a·[H]ispanic related incident. Therefore, your [Hispanic Origin] was in fact taken into consideration during this modified program schedule etc".

See PDX-II, Ex. (27-a) Second Level Response to appeal Log# KVSP-O-07-00822 P. 2 ¶s' 1 and 2. The defendants' responded further in part:

"It is noted that Facility B was placed on modified program affecting [H]ispanic I/Ms' on March 1, 2007 (refer to PSR Log# KVP-B-07-014), the appellant has provided no verifiable documents to indicate he is a member of an [E]thnic group other than Hispanic. The California Department of Correction and Rehabilitation require that institutional security and safety of persons shall take precedence over all other considerations. It is [STANDARD PRACTICE] in the Dept. to place a facility on modified program after disturbances. It is appropriate for staff to investigate and question the I/M population to ascertain the current safety of staff and other I/Ms' on a given facility. The management of I/M populations by [ETHNICITY] and/or [SUBCULTURES] has long been [R]ecognized by correctional professionals as an effective technique for establishing and maintaining control of I/M populations during periods of emergency" etc.

Therefore the record contains countless admissions such as cited above that the defendants' relies on the (RACE FACTOR) when·ever placing the Hispanic I/Ms' on modified program. This practice is not limited to the [H]ispanic population, this animus

20

1  race based lockdown policies was also punitively imposed on the

2  Whites, Blacks and Others; each group being selectively targeted

3  because of their [RACE] where they were all placed on lockdown for

4  prolonged periods. See DUF ¶s' 57,59,63,65,66,69,70, and 74. See

5  also PDX-II, Ex. (61-a) attached Ex. "A" the PSRs' that will list

6  all the [AFFECTED RACES] that at one point or another these races

7  were subjected to these systematic [R]ace [B]ased [L]ockdowns. See

8  PDX-II, Ex. (62-a) plaintiff's 'Daily Logs' where they described

9  theses types of animus race based lockdowns mentioned throughout

10 this brief of memorandum of law. See PDX-II, Ex.s' (66-a), (68-a),

11 (69-a), (74-a), and (75-a).

12     Regardless whether it was the (Hispanic), (Whites), (Blacks)

13 and (Others) when ever a specific [G]roup and/or [R]ace was placed

14 on modified program, it was [A]llways based on [RACE]./

15     The 'Program States Reports' (PSRs') determine which group

16 of I/Ms' are placed on modified programming, and clearly shows that

17 the determination is based on Race. See DXE P. 1-86, PDX-II, Ex.

18 (61-a).

19     The PSR form contains a 'Box Titled' "I/Ms' Affected", the

20 PSR identify which I/Ms' are going to be placed on 'Modified Program'.

21 That marked box places officials on notice who's affected by this

22 modified program. This box also list options that refer to "RACE":

23 "BLACK", "WHITE", "HISPANIC", AND "OTHER".

24     The PSR form describes the reasons for the modified programs,

25 and the comments, which are reviewed for accuracy, unambiguously

26 state that modified programs are applied to the [HISPANIC] population.

27 However, the defendants' have deceptively 'Modified' the program

28 targeting the (SH) disruptive group and the prison gang known as

21

the (EME). See DUF ¶s' 10-16, 52-57, and see DXE, P. 1 at PSR Log# XVP-B-02-001, the PSR states in part, (See the PSR specifically the portion checked off I/M Affected Box, (Hispanic and I/Ms' Housed with Hispanics), see also the suspended A1/A privileges which are [All Movement, Yard, Dayroom, Feeding, Showers, Visiting, Medical, Canteen, Packages, Phones, and Religious Services]; the remarks portion states the following: **"Effective Jan. 4, 2007, all Hispanic I/Ms' housed on Facility B, Buildings 2 thru 8 will be placed on modified program. The aforemention is due to an ongoing investigation of [CRIMINAL ACTIVITY] on Facility B, by the Hispanic population""**.

This PSR specifically targets the [H]ispanic [R]ace, and the defendants' animusly confined and suspended all A1/A privileges for that specific Race, while they preferentially granted these same A1/A privileges to other [R]aces, e.g., Whites, Blacks, and Others.

Therefore, the defendants' treated plaintiff and the Hispanic population different from other [RACIAL GROUPS] that were simílariĺy situated by "CUSTODY AND CLASSIFICATION" of A1/A privileges.

The defendants' lockdown policies were "UNEQUAL" towards plaintiff and the Hispanic population, where the treatment of plaintiff was preferentially impermissible based on [RACE]. Further the defendants lockdown policies were animus and race based [M]otivated solely designed to discriminate against plaintiff because of plaintiff's race.

The defendants' [U]sed plaintiff's [RACE] as a retaliatory tool that maliciously associated plaintiff to the (EME) and the (SH) disruptive groups despite the fact that plaintiff was not associated nor affiliated to neither groups.

This unlawful association to these groups in itself demonstrates the bad faith acts or omissions that was taken against

22

1  plaintiff was without any penological interest, and was solely to
2  discourage plaintiff from a protected activity.

3        Plaintiff as a direct [R]esult of the defendants' retaliatory
4  associations to these prison gangs, suffered both [PHYSICAL AND
5  PSYCHOLOGICAL ADVERSE EFFECTS] that developed into "Headaches, Muscle,
6  Atrophy, Anxiety, Sleep Deprivation, Stress, and the consistent [FEAR]
7  of being once vindictive associated to a Hispanic Prison Gang or
8  Disruptive Groups, all as a means to coerce plaintiff under duress
9  by means of punitive prolonged periods of race based confinements.

10              ARGUMENT OF EQUAL PROTECTION CLAIM
                I. APPLICABLE LEGAL STANDARD
11

12        "[A]ll racial classifications [imposed by government]...
13  must be analyzed by a reviewing court under strict scrutiny". Johnson
14  v. California, 543 U.S. 499,505 (2005) (quoting Adarand Constructors
15  Inc. v. Pena, 515 U.S. 200, 227 (1995)); Hunter v. Regents of Univ.
16  of California, 190 F.3d 1061,1069 (9th Cir. 1999). Specifically,
17  prison policies that treat inmates differently by race—including
18  policies adopted to prevent racial violence—are subjected to strict
19  scrutiny. Johnson, 543 U.S. at 505 ("The need for strict scrutiny
20  is no less important here, where the defendants' cited racial violence
21  as their pretexts for such animus lockdown policies"); Richardson
22  v. Runnell, 594 F.3d 666,671 (9th Cir. 2010).

23        To satisfy scrutiny, the government actor must establish
24  that its actions are narrowly tailored to serve a compelling govern-
    mental interest. Johnson, 543 U.S. at 505 (governmental actor "has
25  the burden" of proof); Monterey Mech. Co. v. Wilson, 125 F.3d 702,713
26  (9th Cir. 1997); Hunter, 190 F.3d at 1063. Defendant's actions are
27  per se violations if they do not meet this burden. See e.g., Monterey
28
                              23

1  Mech., 125 F.3d at 713 ("Because the State made absolutely no attempt
2  to justify the ethnic and sex discrimination it imposed", the Court
3  was ["COMPELLED"] by firmly established law to conclude that the
4  Statute violates the 'Equal Protection Clause'); accord, Adarand,
5  515 U.S. at 227 (racial classifications are constituted ["ONLY"]
6  if they withstand strict scrutiny).

## II. RACE WAS THE RETALIATORY FACTOR, SO STRICT SCRUTINY APPLIES

9   Strict scrutiny applies even if race is not the sole basis
10  for governmental action. Even those classifications that are [O]nly
11  partially based on race, are also subjected to strict scrutiny.
12  Grutter v. Bullinger, 539 U.S. 306,326,-27, 336-37 (2003) (Strict
13  Scrutiny) applies to admissions policy where race was a potential
14  ["PLUS"] factor, but not "the defining feature"). Gratz v. Bollinger,
15  539 U.S. 244,253, 270 (2003) (strict scrutiny applied to admission
16  policy based on "a number of facts" including race); Johnson, 543
17  U.S. at 527 (strict scrutiny applied to prison housing policy where
18  housing classification was based on "number of factors", including
19  race); Richardson, 594 F.3d at 669 (applying strict scrutiny even
20  though prison implemented an "incremental release" of I/Ms' from
21  lockdown).

22  The defendants' policy of applying modified programs in
23  [general to a specific [RACE] or [GROUP] that a [r]ace is the
24  identifying factor to justify the confinement phase of these races
25  or groups, is expressly racial. See supra Johson, 543 U.S. at 502
26  (applying strict scrutiny to housing classifications that segregated
27  all Hispanics and I/Ms' Housed with Hispanics DXE P. 1); Anarand,
28  515 U.S. at 205 (applying strict scrutiny to [FEDERAL FUNDING]

24

1. incentives to contractors hiring subcontracting companies contorlled
2. by "Hispanic Americans... and other minorities"); Richmond v. J.A.
3. caroson Co., 488 U.S. 469,478 (1998) (applying strict scrutiny to
4. municipal funding plain requiring prime set aside 30% of public
5. funding to minority-owned subcontractors including "Spanish-Speaking"
6. subcontractors); Hernandez v. Texas, 347 U.S. 475,482, (1954)
7. (invalidating systematic exclusion of persons of Mexican decent in
8. jury services); Monterey Mechanical Co., 125 F.3d at 714-15 (invalid-
9. ating Statute providing differential treatment for, inter alia,
10. "Hispanic" businesses). Because race is an express factor in applying
11. modified programming, by the defendants', the policy is "IMMEDIATELY
12. SUSPECT" and subjected to strict scrutiny. Johnson, 543 U.S. at 509
13. (quoting Shaw v. Reno, 509 U.S. 630,642 (1992)).

14. ### III. THE DEFENDANTS DID NOT SATISFY STRICT SCRUTINY

15. Strict scrutiny "ensures that the means chosen ["FIT"]
16. ["the government's."] compelling goal so closely that there is little
17. or no possibility that the motive for the classification was illegiti-
18. mate racial prejudice or stereotype". Richmond, 488 U.S. at 493.
19. Although institutional security is a compelling governmental interest,
20. the defendants' have failed to establish that race-based programming
21. is actually furthers the interest or is narrowly tailored. Johnson,
22. 543 U.S. at 509. (noting representation by the U.S. that the Federal
23. government can "address concerns of prison security through
24. individualized consideration without the use of racial segregation,
25. unless warranted as a [N]ecessary and [T]emporary response to a race
26. riot or other serious threat of [RACE-RELATED VIOLENCE"]].

27. Plaintiff present's a case on point, pursuant to (9th Cir.
28. Local Rules [L.R.] Rule 36-6), where plaintiff will reference to



25

1  an unpublished State Court Order surrounding a case that is almost

2  identical to plaintiff's, where the 'Del Norte Superior Court' stated

3  in part:

4          "The lockdown of (SH) I/Ms' was preferential this is
           was based upon the premise that members of a particular

5          ethnic group, simply by reason of their membership in
           that group, were more dangerous, and posed a greater

6          management problem than I/Ms' of other ethnic cities".
           The Court further stated the following:

7          "The Court concludes, based upon the evidence at the
           hearing that:

8

9          1). Respondents do have a policy of segregating I/Ms'
               based upon ethnicity, and although such a policy

10             is constitutionally permissible on a [SHORT TERM
               EMERGENCY] basis respondents have exceeded the time

11             that may reasonably be considered a short-term
               emergency.

12

13         2). Respondents did lockdown all Facility-A (SH) I/Ms'
               at PBSP, from May 10 through June 20, 2000, and such

14             action was constitutionally impermissible, because
               it was preferential on the basis of ethnicity.

15

16         3). Respondents' policies governing race relations
               resulted in a ["CULTURE OF SEPARATION"], which

17             contributed to inter-racial violence, creating a
               situation where it became necessary to impose segreg-

18             ation to stop the violence, and the establishment
               of the "culture of separation" constituted deliberate

19             indifference to the constitutional rights of I/Ms'
               to live in an environment free of ethnic discrimination

20             etc.", see PDX-II, Ex. (61-a) attached Ex. "C", P. 2
               and P. 9 ¶#s' 1-3, see also PDF ¶s' 18-22.

21         The defendants' acts or omissions have created a "culture

22 of separation", rather than protecting institutional security, based

23 on the defendants' overbroad reliance on racial programming only

24 to inflame and serve to perpetuate dangerous and ["FLATLY RACIST"]

25 notions. Richardson, 594 F.3d at 672. As the Supreme Court has

26 repeatedly recognized, racial classifications ["THREATEN TO STIGMATIZE

27 INDIVIDUALS"] by reason of their membership in a racial group and

28

                                   26

to incite racial hostility". Johnson, 543 U.S. at 507 (quoting Shaw, U.S. at 643). "When government officials are permitted to use race as proxy for gang membership and violence", as is the case with plaintiff being invidiously punished by the defendants' simply for exercising a protected activity, where race was used in bad faith by the defendants' in their attempts to maliciously affiliate plaintiff to a prison gang (EME) and (SH) groups, solely using or relying on plaintiff's race to justify their invidious actions. Therefore, "society as a whole suffers". Johnson, 543 U.S. at 571.

## IV. PROCEDURAL DUE PROCESS

The Court must address the Procedural Due Process which is an integral part of the case, the "Defendants' in retaliation subjected ["Plaintiff"] to unjust deprivation(s) where plaintiff was deprived of his State Created Liberty Interest Rights and Authorized A1/A privileges without ever being afforded the basic due process of law").

Additionally, the defendants' failed to adequately accord plaintiff the [M]andated [D]ue [P]rocess of [L]aw that CCR Title 15 § 3378 requires the defendants' to afford when ever an I/M is being subjected to such allegations of association to a prison gang or disruptive groups. See PDF ¶9, and supra Point 1. subsection A. through B. When ever the defendants' engage in such type of allegations such as the one's described above, this automatically triggers and  sets forth the procedural safeguards relevant to the due inquiry. Accordingly, plaintiff has raised these issues in detail supra in Point 1. Subsections A. Through B., and PDF ¶9.

27

1

2

## V. SANDIN'S ATYPICAL STANDARD DOES NOT APPLY
## WHEN NO EVIDENCE OF GUILT

3          Plaintiff asserts that ["Non-Misconduct Actions"] taken
4 by prison officials which impose punishment can be found "Atypical"
5 and subjected to due process protections. In plaintiff's case,
6 plaintiff was subjected to punitive Race Based Confinement for
7 repeated prolonged periods of time, in relations for plaintiff
8 exercising a 1st Amendment right. See Oritz v. Voinovich, 211 F.Supp.
9 2d 917,928-29 (S.D. Ohoio 2002).

10         Th 9tn Cir. Court has held whether good time is lost or
11 not when an I/M is found guilty of a misconduct, prison officials
12 will always violate the Sandin requirement if they find someone guilty
13 of a misconduct when there is no evidence of guilt. Burnswarh v.
14 Gunderson, 179 F.3d 771,775 (9th Cir. 1999), See also California
15 v. Green, 399 U.S. 149, 187 n. 20, 90 S.Ct. 1930 (1970) (Harlan, J.,
   concurring) ("[d]ue process does not permit a conviction based on
16 ["NO EVIDENCE"]; Thompson v. City of Louisvill, 362 U.S. 199,206,
17 80. S.Ct. 624 (1960), ("just as [C]onviction upon a charge not made
18 would be sheer denial of due process, so is it a violation of due
19 process to convict and punish a man without evidence of his guilt")
20 (quotation citation, and footnotes omitted)).

21

22         Here the court's have held that due process is violated
23 if the I/M is [C]onvicted and [P]unished [W]ithout [E]vidence of
24 his guilt Id. The defendants in retaliation imposed a punitive
25 disciplinary conditions of confinement without a charge or any
26 evidence to rely or support such adverse deprivations of punitive
27 confinement. The only pretexts fallaciously provided by the defendants

28

MEMORANDUM OF LAW

1  where they attempted to mask their misdeed by attempting to justify

2  their bad faith actions taken against plaintiff was, they attempted

3  to maliciously associate plaintiff to a prison gang known as the

4  (EME) and the (SH) disruptive group. Note, these action derived from

5  two key factors', (1), because plaintiff exercised his right to

6  complain/petition for redress or grievance when utilizing his

7  ["GOD"] given right to exercise the ["VOICE"] of the people, and

8  (2), was because plaintiff's ["RACE"] being of Hispanic Origin, where

9  the defendants' used this as a retaliatory tool to punish plaintiff

10 for engaging in a protected activity.

11         Plaintiff was subjected to harsher punitive deprivations

12 of confinement that lasted for prolonged periods of time without

13 any ["OUTDOOR"] exercise ever being afforded to plaintiff throughout

14 the duration of these punitive confinements. See Smith v. Mensinger,

15 793 F.3d 641, 654 (3d Cir. 2002); (filing of false misconduct does

16 not violate due process unless filing was one to retaliate for

17 exercising 1st amendment right); Thaddues-X v. Blatter, 175 F.3d

18 378 (6th Cir. 1999).

19         **C. THE DEFENDANTS' ACTIONS WERE NOT TAILORED**
           **TO ADVANCE A PENAL INTEREST**

20

21         Plaintiff was targeted to malicious retaliations simply

22 for criticizing the defendants' animus policies. Plaintiff's race

23 was used as a retaliatory tool where the defendants' out of disparte

24 attempts went as low as maliciously attempting to associate plaintiff

25 to the Prison Gang known as the (EME) and the (SH), a disruptive

26 group. See PDF ¶s': 4-21.

27         These new [L]ow's by the defendants' places plaintiff

28 in a very vulnerable position where the defendants' can attempt to

29

1   ["V"]alidate plaintiff by fallaciously affiliating plaintiff to the
2   (EME) or (SH) groups, placing plaintiff in the same position that
3   I/M "Ernesto Lira" was placed, where he was incorrectly **"VALIDATED"**
4   as an associate of a violent California Prison gang, and after having
5   spent eight years in the [SHO] an isolation unit. See Lira v. Director
6   of Corrections, 2010 WL 727979. See PDF ¶9.

7          The defendants' actions were retaliatory, and after their
8   punitive actions against plaintiff they attempted to mask their
9   misdeeds by manipulating their policies and attempt to find refuge
10  under the overly exploited umbrella of 'Safety/Security'. See PDF
11  ¶s' 16. (A)-(C), through ¶34, and see PDF ¶s' 72-81. Johnson, 543
12  U.S. at 509, and Richmond, 488 U.S. at 493.

13         Plaintiff asserts that once strict scrutiny is applied
14  in this case these levels of scrutiny ["WILL"] "smoke out illegitimate
15  uses of race, proving plaintiff's claims that the defendants' animus
16  race based lockdowns of plaintiff was never closely fitted to the
17  compelling goals that Johnson 543, at 499, and 509, and Richmond
18  488 at 469, and 493 required the defendants' to-adhere-too. Plaintiff
19  will prove that the defendants acted in bad faith, solely motivated
20  by retaliatory intent to cause severe adverse effect toward plaintiff,
21  and simply for engaging in a protected activity. See PDX ¶s' 1-33,
22  see also PDX ¶s' 70-87.

23              **D. DEFENDANTS' ACTED WITH DELIBERATE INDIFFERENCE**

24         "[A] fact finder may conclude that the defendants' knew
25  of a substantial risk [To plaintiff's health] from the very fact
26  that the risk was obvious". Farmer, 511 U.S. at 825. As the Ninth
27  Circuit has held, the risk of substantial health from prolonged
28  deprivations of exercise is obvious. Thomas, 611 F.3d at 1152. Here

30

it is undisputed that the defendants' knew the length and conditions of modified programs. Like wise, it is undisputed that outdoor exercise was frequently deprived from plaintiff as a means to punish plaintiff for exercising a protected activity. The animus confinement was from Jan. - Aug., note these lockdowns or modifications never arising in response to an [E]mergency lockdown situation. See PDX ¶s' 11-12, 25-30. Therefore, any argument that the risk to plaintiff's health was not ["OBVIOUS"] or that it was necessary to prevent violence, fails as a matter of law. Thomas, 611 F.3d at 1152, Lopez v. Smith, 203, F.3d at 1133.

In Lopez's case, the Ninth Circuit found that a complete denial f exercise lasting 6-½ weeks (i.e., 46 days) was sufficient to invoke 8th Amendment protection. In Allen, the Ninth Circuit found that permitting I/Ms' only 45 minutes of outdoor exercise per week period, (i.e., 42 days) was also sufficient to meet the objective element of an 8th amendment claim. Allen, 48 F.3d at 1086-87 (citation original Norwood, 583 F.Supp.2nd at 1209.

Moreover, the defendants' has no reasonable justification for prolonged deprivation of outdoor exercise, while prisons may [T]emporaraily curtail outdoor exercise ["WHEN A GENUINE EMERGENCY EXIST'S"], the defendants' does not limit modified programming to cases of genuine emergencies or outbreaks of ["EXTRAORDINARY LEVELS OF VIOLENCE"] Id. at 1154 (quoting Hoptowit v. Ray, 682 F.2d 1237,1259 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995), and Norwood v. Vance, 572 F.3d 626,631 (9th Cir. 2009)). Rather, the defendants' institutes modified programming as routinely as part of investigating ordinary institutional disturbances. Moreover, even if security concerns might justify

31

1 limitations on permitting I/Ms' from "mingl[ing] with the general
2 prison population", such concerns "do not explain why other exercise
3 arrangements [are] not made as jut as the one's arranged in AD-SEG,
4 SHU, and PHU Housing Units". Id. at 1155 (citing Spain, 600 F.2d
5 at 200; Lopez 203 F.3d at 1133 (holding that even if denying lopez
6 access to the general recreation yard was reasonable, "it does not
7 explain why Lopez was not given some other alternative yard policy
8 for outdoor exercise"). Therefore, even assuming that the defendants'
9 had a reasonable basis to segregate plaintiff, it failed to offer
10 any alternative means of providing out-of-cell exercise. Id. at 1156.
11 　　　　　In plaintiff's case the defendants' themselves admit that
12 ["TRUE LOCKDOWNS ARE [R]ARE OCCASIONS AND GENERALLY ARE IMPOSED AFTER
13 [S]ERIOUS THREATS TO INSTITUTIONAL SECURITY AND THE SAFETY OF I/Ms'
14 AND STAFF"]. See DXB ¶7, see also PDF ¶s' 11-12, and 30-34.

15
16
### THE DENIAL OF MEDICAL ATTENTION
### VIOLATING THE BASIC HUMAN NEED

17 　　　　　Plaintiff suffered from anxiety, sleep depression,
18 emotional distress, severe headaches, and muscle cramping etc., all
19 due to the defendants' animus deprivations of outdoor exercise that
20 was simply instituted to cause extreme suffering. The modifications
21 the defendants' implemented were [NEVER] in response to an emergency
22 lockdown situation, thus never serving a security purpose or interest.

23 　　　　　Plaintiff on two occasions requested for medical attention
24 from the symptoms described supra. The defendants' failed to
25 adequately [D]iagnose and [T]reat plaintiff's medical conditions
26 that he was suffering from as a direct result of the deliberate
27 indifference by the defendants' acts or omissions to knowingly
28 disregard the excessive risk to plaintiff's health and safety.

32

1    The defendants' animus race base lockdowns created
2  plaintiff's medical condition by punitively depriving plaintiff of
3  the "'Minimal Civilized Measure of Life's Necessities'". Allen, 48
4  F.3d at 1087 (citation omitted). Plaintiff [M]eets the [O]bjective
5  requirement by asserting the deprivation of yard and medical
6  attetion to plaintiff's serious medical needs, of what the court's
7  have defined as a basic human need. Id. at 1088.

8    The defendants state of mind was "deliberate hy
9  indifferent", where the defendants [K]new [O]f, and [D]isregarded
10 an excessive risk to plaintiff's health and safety. Id. at 1087.
11 See PDF ¶23 (A)-(D), see PDX-II, Ex. (57-a) where the defendants'
12 had an established yard policy for G.P. I/Ms' that afforded A1/A's
13 67.5 hours a month of yard. Hence, the defendants' both were aware
14 of facts which the inference could be drawn that a substantial risk
15 of serious harm existed, and they also could have drawn such
16 inference". Farmer, 511 U.S. at 837, 114 S.Ct. 1970. See PDX-II,
17 Ex. (48-a). Therefore, the defendants' punitive prolonged denial
18 of-out-of cell exercise, and the denial of being adequately diagnosed
19 and treated, and for plaintiff's serious medical needs, clearly
20 violates the guarantees of the 8th amendment. See PDX ¶50.

21    E. PLAINTIFF'S FIRST AMENDMENT CLAIM PREVAILS BASED
         ON THE SUSPECT PRETEXTS THE DEFENDANTS CITED
22       SOLELY DESIGNED TO MASK THEIR TRUE RETALIATORY MOTIVES

23    Plaintiff was punished as a direct result for exercising
24 a protect activity as (IAC) Rep., where plaintiff complained,
25 criticized, and/or maintained a 1983 civil complaint in the Federal
26 Court's. Plaintiff was an elected 'Inmate Advisory Council' (IAC)
27 Rep. for the Others, where plaintiff as the (IAC) Rep. was mainly
28 responsible for providing the I/Ms' of the housing unit      with

33

1  adequate representation and a [V]ioce in administrative deliberations
2  and decisions affecting the welfare and best interest of all I/Ms'.
3  See 'Departmental Operations Manual (DOM) § 53120.2.

4       Plaintiff was the elected voice that represented the
5  (Others) population surrounding adverse conditions that directly
6  impacted the G.P. I/Ms'. See DOM § 53120.4.

7       Plaintiff's (IAC) activities are not only protected by
8  the 1st amendment, but the (DOM) also provides a 1st amendment
9  protection from employee retaliation. See DOM § 53120.6.2.

10      Plaintiff will be referencing to an unpublished Federal
11  Reporter case pursuant to CTA9 Rule 36-3, and/or 9th Cir. Local Rule
12  (L.R.) Rule 36-3... where this case is relevant under the doctrine
13  of law of the case, and a case that is on point relating to the facts
14  surrounding plaintiff's. Plaintiff's service as an (IAC) Rep. is
15  protected activity under the 1st Amendment. See 35 Fed.Appx. 547,
16  McQuillin v. McKenzie, (C.A.9 (Cal.) 2002); Brady v. Hall, 64 F.3d
17  1276,1279 (9th Cir. 1995) (retaliation against the exercise of the
18  1st amendment right of the 1st amendment right of petition, is itself
19  a violation of the 1st amendment). 893 F.Supp. 709 Riley v. Kurtz
   (E.D.Mich. 1995).

20      Plaintiff's race was used as a retaliatory tool by the
21  defendants', their motives were to use prolonged deprivation periods
22  as a means to punish plaintiff for exercising a protected activity,
23  all in part of the defendants' scheme to attempt to discourage
24  plaintiff from exercising his protected activity. See PDX ¶s' 2-41,
25  46, 48-49, 53, 56-59, 61-64, 69-76, and 77-86; see also PDF 6-15,
26  24-38, 46-53, 65-79, and see cited PDX-I and PDX-II, all Ex.s' cited
27  through out these ¶s'; where these declarations with attached evidence

28                              34

1 will contradict and produce direct evidence that plaintiff was
2 vindictively penalized for exercising his right of petition as an
3 (IAC) Rep.; in addition, the defendants' actions were never designed
4 to serve a penal interest. Their actions of abusing their power by
5 using their positions to infringe upon plaintiff's 1st amendment
6 rights, including plaintiff's right of petition government officials
7 for redress of grievances. See PDX ¶s' 1-16.

8 Even where conditions of confinement do not implicate
9 a prisoner's due process rights, I/Ms' "retain other protections
10 from arbitrary State action... within the expected conditions of
11 confinement. They may invoke the 1st/8th amendments and the Equal
12 Protection Clause of the 14th amendment where appropriate, and may
13 draw upon internal prison grievance procedures and State Judicial
14 review where available". Hines v. Gomez, 108 F.3d 265,269, (9th Cir.
15 1997). (quoting Sandin v. Conner, 515 U.S. 472,487 n.11, 115 S.Ct.
16 2293, 132 L.Ed. 2d 418 (1995); see also Pell v. Procunier, 417 U.S.
17 817,822, 94 S.Ct. 2800, 41 L.E.d 2d 495 (1974). ("A prison I/M retains
18 those 1st amendment rights that are not inconsistent with his status
19 as a prisoner or with the legitimate penological objective of the
20 corrections system").

21 Of fundamental import to prisoners are their 1st amendment
"right[s] to file prison grievances," Bruce v. Ylst, 351 F.3d 1283,
22 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the
23 Court's ". Schroeder v. McDonald, 55 802, 806, and n.4 (9th Cir.
24 1995) ("[T]he prohibition against retaliatory punishment is clearly
25 established law in the 9th Circuit Court for qualified immunity
26 purposes.

27 Plaintiff's claims before this Court is an archetype.
28

35

1  cognizable 1st amendment retaliation claim, based on the following:
2  (1) the defendants' on Jan. 11, 2007 arbitrarily confined plaintiff
3  and deliberately associated him to a criminal investigation that
4  was targeting a prison gang known as the (EME) and a disruptive
5  group (SH) for criminal activity, a group that plaintiff did not
6  affiliate nor associate too. See PDX ¶s' 8-18, PDF ¶s' 15(C)-(D),
7  (2) because plaintiff (3) exercised his voice as an (IAC) Rep. where
8  plaintiff complained, criticized, and petition for redress through
9  the filing of "Constructive Notice" (CN) reporting the facility
10 Captains and the Chain of Command, where plaintiff reported them
11 to the Warden; then plaintiff sought for outside assistance to
12 Agencies set-up to investigate CDCR administrators, where plaintiff
13 requested help from the ingrained culture of Race Based Discrimin-
14 ations and punitive policies that promoted bad behavior; plaintiff
15 also criticized the (CCPOA) Union and all their adverse influence
16 in policies. See PDX ¶s' 6-18; and that (4) beyond imposing those
17 tangible harms, the defendants' actions chilled plaintiff's 1st
18 amendment rights by maliciously associating plaintiff to a prison
19 gang's criminal investigation and all other punitive measures
20 associated with these gangs, where plaintiff was confined for prolong
21 periods of time; Note, the sole evidence that the defendants'
22 relied on was ["PLAINTIFF'S RACE"] where the defendants' use this
23 as the pretexts in order to justify the confinement or association
24 to these groups that plaintiff did not even associate nor house
25 with. See PDF ¶s' 4-9; and (5) the defendants' actions described
26 through this motion were not undertaken in narrowly tailored
27 furtherance of legitimate penological purpose. USCA.Const.Amend.1,
28 See 408 F.3d 559, Rhodes v. Robinson, (C.A.9(Cal. 2004).

36

1    Plaintiff has a fundamental import which is his 1st
2  amendment "right[s] to file prison grievance". Bruce v. Ylst, 351
3  F.3d 1283,1288 (9th Cir. 2003), and to "pursue civil rights litiga-
4  tion in the Courts". Schroder, 55 F.3d 454,461, (FN10), without
5  those bedrock constitutional guarantees, I/Ms', would be left with
6  no viable mechanism to remedy prison injustices. And because purely
7  retaliatory actions taken against a prisoner for having exercised
8  those rights necessarily under mind those protections, such actions
9  [V]olate the constitution quite apart from any underlying misconduct
10  they are designed to shield. Plaintiff's set of circumstances are
11  no different than those Rhodes was subjected to by State officials.
12  Plaintiff was vindictively punished for exercising his right of
13  complaining and petition, when plaintiff engaged in his right to
14  file (CNs') to Top KVSP/CDCR Administrators, criticizing B-facility's
15  Chain of Command. See PDX-II, Ex. (76-a), PDF ¶77 and the cited
16  Ex.s', and DPX ¶s' 6-9.

17    Plaintiff can actually prove that prior to Jan. 3, 2007
18  and after Aug. 2007, plaintiff was never affected nor associated
19  to the (EME) or (SH) scenario whenever they were placed on lockdown.
20  See PDX ¶s' 52-75, and PDX-II, Ex.s' (51-a)-(52-a). Here plaintiff's
21  cellmate was allowed out to work during the time when plaintiff
22  was being punitively confined in retaliation for exercising his
23  right to complain. In addition, these Ex.s' will demonstrate that
24  [P]ior and [A]fter Jan. through Aug. 2007, plaintiff was never
25  associated to the (EME) or (SH) gangs when they were placed on lock-
26  down at KVSP.  Therefore, demonstrating the true motives of the
27  defendants' where their pretextes' cited in their summary judgment
28  motion were all made in bad faith and designed to cover-up their

1  scheme of retaliations, all tailored to serve their malicious acts
2  or omissions where they knowingly assisted or induced another to
3  do so, or do so through the acts of retaliations by deliberately
4  associating plaintiff to a prison gang criminal investigations and
5  their prolonged lockdowns associated to these groups; this continued
6  despite the fact that plaintiff was not affiliated to any of these
7  groups, where through these acts of another reflects adversely on
8  the defendants' honesty, trustworthiness, or fitness as Correctional
9  Officers for CDCR in other respects.

10  The defendants engaged in bad behavior where retaliatory conduct
11  involving malicious abuse of power specifically tailored to retaliate
12  against plaintiff or any I/M who dare's exercise a right of petition
13  or criticizes the defendants' policies. The defendants' used their
14  positions to imply or influence improperly their co-workers to
15  further or continue the vengeful retaliations that Captain R. Fisher
16  commenced back in Jan. 10, 2007. See PDX-II, Ex. (76-a), PDF ¶s'
   23-24, 27(B), 34(D), 55-57, 72(A)-(F), and 74(A)-(D).
17

18        Plaintiff should ["NEVER"] have been subjected to these
   animus race based lockdowns in the first place. The defendants'
19  actions were ["NEVER"] designed to serve a penal purpose, other than
20  to fulfill their scheme of retaliation against plaintiff. These
21  assertions' are made when plaintiff is no longer being maliciously
22  associated nor confined to the (EME) or (SH) groups when ever they
23  went on lockdown or modification. In addition, plaintiff can prove
24  with undisputed facts that the defendants' had firsthand knowledge
25  that plaintiff was ["NEVER AN ASSOCIATE OR AFFILIATE TO [ANY] PRISON
26  GANG OR GROUPS"], and that plaintiff was ["HOUSED WITH A NON-
27  AFFILIATED HISPANIC OTHER DURING THE RETALIATORY CONFINEMENT OF
28  PLAINTIFF"]. Now the mere racist argument that the defendants' have

CT PAPER
OF CALIFORNIA

1  activity where plaintiff where plaintiff was subjected to wanton
2  infliction of pain". Rhodes v. Chapman, 452 U.S. 337,347 (1981),
3  see Section D. of Memorandum of Law supra. Plaintiff establishes
4  both ["OBJECTIVE AND SUBJECTED"] requirements to state an 8th
5  Amendment claim.

6          The defendants' attempt to justify their 'Bad Faith'
7  actions against plaintiff by stating that their motive were to
8  ["ALLEGEDLY"] to [P]revent violence. However this pretext fails
9  for the following reasons:

10         One, plaintiff should never have been subjected to these
11  animus race based discriminations and criminal investigations that
12  was specifically targeting the (EME) and (SH) groups based on the
13  fact that plaintiff was not an associate nor affiliate to neither
14  groups, and plaintiff was also not [H]oused with [A]ny affiliated
15  (EME) or (SH) member;

16         And two, the assertions made by the defendants' that there
17  was going to be violence had nothing to do with plaintiff based on
18  the undisputed facts that plaintiff was not affiliated nor associated
19  to these two groups that were in question!, therefore, the defendants
20  true motives to use deprivation periods as a means to ["PUNISH"]
21  plaintiff was all in [B]ad [F]aith designed to discourage plaintiff
22  from complaining or criticizing their policies, e.g., their acts
23  or omissions were motivated to punish plaintiff.

23         Plaintiff asserts that the defendants' arguments made
24  in their attempts to justify the unlawful confinement of plaintiff
25  for months at at time for 24 hours a day straight, based on the
26  pretexts that "they were necessary to prevent violence", this fails
27  the objective component of the 8th amendment claim. See Allen, 48
28  F.3d at 1088. The defendants' attempt to compare their argument with

the fact that the periods of deprivation of outdoor exercise **that** was punitively imposed against plaintiff from Jan. Through Aug. 2007, ["EXCUSING"] them from the punitive deprivation of plaintiff ["BASIC HUMAN NEEDS"]. Plaintiff asserts that the defendants' have not cited any supporting authority to their argument that a [N]eed [T]o [P]revent a [S]ituation [E]xecuses the defendants' actions of depriving plaintiff from outdoor exercise for prolonged periods of time, all the while they preferentially granted these same AI/A privileges to other races, e.g., Whites, Blacks, and Others. The Court's have repeatedly found it to be a ["BASIC FUNDAMENTAL RIGHT TO A HUMAN NEED"] under the [O]bjective component of 8th amendment claim.

In the Lopez case, the Ninth Circuit found that a complete denial of exercise lasting 6-$\frac{1}{2}$ weeks (i.e., 46 Days) was sufficient to invoke 8th amendment protections. See Lopez v. Smith, 203 F.3d 1122, (C.A.9(Cal.) 2000 at 1133. In Allen, the Ninth Circuit found that permitting I/Ms' only 45 minutes of outdoor exercise per week over a 6 week period (i.e., 42 Days) was also sufficient to meet the [O]bjective [E]lement of an 8th amendment claim. Allen, 48 F.3d at 1086-87.

In plaintiff's case plaintiff was subjected to punitive deprivations [T]otaling 139 days of vindictive confinement, solely designed to repay plaintiff for reporting Capt. R. Fisher and the chain of command for underground policies and a disregard of the (IAC) Representatives. Plaintiff also criticized the (CCPOA) Union, and KVSP/CDCR Administrators surrounding the 'Practices of Race Based Lockdown Policies', the lack of rehabilitative programs, etc. See PDX ¶s' 6-53.

41

1          Furthermore, plaintiff ultimately suffered from 'Anxiety,

2    Sleep Depression, Headaches, etc., all due to the defendants' punitive

3    race based lockdowns or modified programs that confined plaintiff

4    to 24 hours a day for a prolonged period of time with no outdoor

5    exercise being afforded, however, all the while preferentially

6    granting these same 'Basic Human Needs' to other races, e.g., Black,

7    Whites, and Others. The Defendants' punitive lockdown policies,

8    and/or modified programs are capable of being solely depended upon

9    these animus lockdown policies that created plaintiff's serious

10   medical needs described in PDX ¶s' 34 and 37. See PDX I-2. Plaintiff

11   asserts that it was clearly established law in 2008 that 'State Prison

12   Officials' denial of outdoor exercise for I/Ms' for extended period

13   of time could constitute an 8th amendment violation, and thus the

14   defendants' are not entitled to qualified immunity from liability

15   in I/Ms' action alleging that 139 day period of deprivation violates

16   plaintiff's 8th amendment rights.

17                 G. DEFENDANT'S ARE NOT ENTITLED TO QUALIFIED IMMUNITY
                        ON 14th AMENDMENT CLAIMS
18                         INCLUDING EQUAL
                          PROTECTION CLAIMS

19

20                 I. SUMMARY JUDGMENT SHOULD NOT BE GRANTED
                       DUE TO THE FACTUAL DISPUTES.
21

22          Plaintiff asserts that summary judgment should not be

23   granted towards the defendants based on the following: although both

24   the ["CLEARLY ESTABLISHED RIGHT"] and ["REASONABLENESS"] inquiries

25   are questions of law, where there are factual disputes as to the

26   parties' conduct or motives, this case cannot be resolved at summary

27   judgment on qualified immunity grounds. See Colli v. County of Orange,

28                                    42

1  351 F.3d 410,421 (9th Cir. 2003); Wilkins v. City of Oakland, 350
2  F.3d 949,955-56 (9th Cir. 2003), Serrano v. Francis, 345 F.3d 1071,
3  1077 (9th Cir. 2003), and Martinez v. Stanford, 323 F.3d 1178,1183-
4  85 (9th Cir. 2003).

5      **II. THE DEFENDANTS' PERFORMING DISCRETIONARY FUNCTIONS**

6          The defendants' who perform discretionary functions [A]re
7  entitled to a qualified, shielding them from civil damages liability
8  [as long as their actions could reasonably have been thought consisent
9  with the rights they are alleged to have violated]. Anderson v.
10 Creighton, 483 U.S. 635,638 (1987) (citations omitted);

11         Qualified immunity is [O]nly an immunity from suit for
12 damages, it is not an immunity from suit for declaratory or
13 injunctive relief. See Hydrick v. Hunter, 500 F.3d 978,988 (9th Cir.
14 2007), petition for certified, 76, U.S.L.W. 3410 (U.S. Jan. 2008)
   (No. 07-958).

15

16                              **III.**

17         The Supreme Court has clarified that the qualified immunity
18 analysis is a two-part inquiry. First, the Court must consider whether
19 the facts "[t]aken in the light most favorable to the party asserting
20 the injury... show [THAT] the [defendants'] conduct violated a
21 constitutional right[.]" Saucier v. Katz, 533 U.S. 194,201 (2001).
22 Second, the Court must determine whether the right was clearly
23 established at the time of the alleged violation. Saucier, 533 U.S.
24 at 201; [Therefore, i]f the [defendants'] mistake as to what the
25 law requires is reasonable... the [defendants] are entitled to the
26 immunity defense". Saucier, 533 U.S. at 205; Kennedy, 439 F.3d at
27 1061; see also Hydrick v. Hunter, 500 F.3d 978, 1000 (9th Cir. 2007),
28 petition for cert. filed 76, U.S.L.W 3410 (U.S. Jan. 17, 2008) (No.

1  07-958) (noting that the entitlement to qualified immunity for a

2  reasonable mistake is a ["LIMITED EXCEPTION"]... [and] if the law

3  is clearly established, the immunity defense, 'ordinarily should

4  fail, since a reasonably competent public official should know the

5  governing [the officials] conduct". citation omitted)); cf. Inouye

6  v. Kemna, 504 F.3d 705, (9th Cir. 2006) at 712 n.6 (explaining that

7  the inquiry into the reasonableness of the defendants mistakes is

8  not the "third" step in the saucier analysis, but rather, is part

9  of the second step of Saucier's two-step analysis).

10        The law also clearly states ["IGNORANTIA LEGIS NON EXCUSAT;

11  OR IGNORNATIA JURIS HAUD EXCUSAT"], "ignorance of the law excuses

12  no one. The defendants' have no excuse with regards to their actions

13  they punitively imposed against plaintiff. Their 'Centralized Training'

14  cover's these legal issues, see PDF ¶15(A)-(G).

15        However, "[i]f a genuine issue of material fact exist

16  that prevents a determination of qualified immunity at summary

17  judgment, the case must proceed to trial" Serrano, 354, F.3d at 1077;

18  see also Martinez, 323, F.3d at 1183-85 (holding that the district

19  court erred by granting summary judgment where there were genuine

20  issues of material facts regarding the reasonableness inquiry of

21  the Second Saucier prong). Where in plaintiff's case, such applies

22  therefore summary judgment should be denied.

23        When identifying the right that was allegedly violated,

24  a Court must defined the right more narrowly than the constitutional

25  provision guaranteeing the right, but more broadly than all of the

26  factual circumstances surrounding the alleged violation. See Watkins

27  v. City of Oakland Cal., 145 F.3d 977,979-80 (9th Cir. 1996).

28        The defendants' were required and had a duty to protect

44

1   plaintiff's rights, and the defendants' failure to act was
2   inconsistent with their duties. See PDF ¶15(A)-(G).

3          The Alexander Court held that under §1983 the qualified
4   immunity defense is inapplicable whenever an official "does an
5   affirmative act, participates in another's affirmative acts, or omits
6   to perform an act which he is legally required to do that causes
7   the deprivation [of an individuals rights]". Johnson v. Duffy, 588
8   F.2d 740,743 (9th Cir. 1978) (emphasis added). Under §. 1983 when
9   an official fails to take an action that he has a clearly established
10  duty to take and that failure is a foreseeable contributing factor
11  to the violation of a plaintiff's constitutional rights, the defense
12  is similarly unavailable. Id. The question that is before this Court
13  is whether the defendants' failed to perform a 'Clearly Established
14  Duty' that they were required to perform in order to [Protect] the
15  Constitutional rights of the plaintiff and others like him.

16         The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800,819
17  102 S.Ct. 2727, 2738 73 L.Ed 2d 396 (1982) explained that the
18  qualified immunity defense is not intended to provide a [L]icense
19  to engage in lawless conduct. Similarly, that defense the defendants
20  have cited in their summary judgment motion does not constitute a
21  license to refrain from carrying out one's lawful duties. Rather,
22  it is intended to allow a public official to act with "independence
23  and without fear of consequences" when his actions are not clearly
24  contrary to the law. Harlow 457 U.S. at 819, 102 S.Ct. at 2738.
25  Harlow tells us that where an official ["CAN BE EXPECTED TO KNOW"]
26  that-certain conduct would violate Statutory or Constitutional rights,
27  "he should be made to hesitate; and a person who suffers injury caused
28  by such conduct may have a cause of action" Id.

45

In plaintiff's case, the defendants' have been placed on ["NOTICE"] by their duties which are clearly established by virtue of [C]alifornia [C]ode [R]egulations [T]itle [1]5 [C]rime [P]revention and [C]orrections (CCR) [D]ivisions [R]ules/[R]egulations and [D]epartmental [O]perations [M]anual (DOM), where the defendants by virtue of these [C]odfied Rules/Regulations were legally obligated to perform their duties, and they also had a duty to refrain from retaliating against plaintiff, discriminating against plaintiff on the basis of plaintiff's race, and they also had duty to protect plaintiff from adverse conditions of confinement, and deliberate affiliation to a [P]rison [G]ang's criminal investigations.

The defendants' were also placed on [N]otice by virtue of [G]overnment [C]ode [T]itl 2 [D]ivision 5 [P]ersonnel [P]art 2 [S]tate [C]ivil [S]ervice [C]hapter 7 [A]rticle 1. § 19572 [C]ause [F]or [D]iscipline § (w), GOVT.Sec. 12940, and GOVT.Sec. 11135, where State officials have a duty to refrain from discriminatory acts or omissions against ["ANY"] [I]ndividual in the State of California on the basis of one's race, national origin, ethnic group indentifica- tion etc., see also (DOM) §,§, 33030.3.1, and CCR § 3004(c). Here in these clearly established statutes, Rules, Regulations, and GOVT. Sec.s' cited supra, not only places the defendants' on Notice, they also provide plaintiff with the 'Equal Protection of The Laws', and as GOVT.Sec. 11135 states, that State Officials have a [D]uty to [R]rain from discriminatory acts or omissions against any individual in the State of California. Now just because plaintiff is incarcerated this does preclude plaintiff from the Equal Protection Clause being afforded to plaintiff under this GOVT.Sec.

In addition, the defendants' were placed on [N]otice by virtue of State Decisional Law where a case on point was decided



46

1  back in 2002 by a State Superior Court [O]rdering CDC to refrain
2  from implementing policies governing race relations that segregated
3  I/Ms' based upon ethnicity,,for prolonged periods of time. This case
4  is almost identical to plaintiff's case. See PDX-II, Ex. (61-a),
5  attached Ex. "C".

6       Plaintiff cites from the Alexander Court, 916 F.2d 1395
7  (FN8) where Judge Bilby made an observation that would strike a
8  responsive chord in the Hearts of most citizens'. "You see, that's
9  one of the things about bureaucrats that bothers me. You just can't
10 sit on your duff and do not do anything". He then announced that
11 "[i]f you just sit around and don't do anything, you do run a chance
12 of being responsible".

13      The defendants' actually admit in one of their interrogatory
14 responses ["THAT [ALL] EMPLOYEES PARTICIPATE IN TRAINING TO ACCOMPLISH
15 THE MISSION, GOALS, AND OBJECTIVE OF CDCR. THE TRAINING INCORPORATES
16 COURSES COVERING [A]LL DEPARTMENTAL POLICIES, PROCEDURES, AND STATE
17 AND FEDERAL [L]EGAL ISSUES, INCLUDING TRAINING WITH REGARDS TO THE
18 [CIVIL RIGHTS OF THE INMATES"]. See PDF ¶15(A)-(G).

19      The defendants' were also placed on [N]otice by plaintiff's
20 602 appeals that plaintiff repeatedly filed along with the repeated
21 (CNs') that plaintiff filed to the defendants advising them that
22 pursuant 'Civil Code Sections' 18/19, that their lockdown policies
23 were unconstitutional and preferentially by race, and that plaintiff
24 was not affiliated to the (EME) or the (SH) Prison Gangs' or Groups'.

25      The defendants' were also placed on [N]otice by virtue
26 of the United States Supreme Court's Decision rendered back in 2005,
27 where the Law was clearly established, that State Officials could
28 not implement discriminatory Race Based Lockdown policies, and that

47

1  Race Based Classifications were subjected to the "Strict Scrutiny
2  Standard". See Johnson v. California, 543 U.S. 499,512-13 (2005).
3  In 2002 the California Superior Court entered an Order concerning
4  a [Q]uestion of [F]ederal [L]aw regarding a case on point that is
5  nearly identical to plaintiff's case/circumstances. See PDX-II, Ex.
6  (61-a), attached Ex. "C". Lastly, the Supreme Court has established
7  clearly that Racial Discrimination is unconstitutional and violates
8  the 14th Amendment, this includes a prison setting. See supra PONIT
9  I. "B" and sub-sections "I-V", through "G".

10
## IV. THE DEFENDANTS HAVE UNDISPUTEDLY VIOLATED
## PLAINTIFF'S EQUAL PROTECTION RIGHTS

11      It is clearly establish law that plaintiff has a right
12 to Equal Protection under the Laws of this State and the Federal
13 Constitution. It is an undisputed fact that plaintiff was targeted
14 and singled out for specifically being of Hispanic Origin, and was
15 maliciously penalized by vindictively being associated to a prison
16 gang's criminal investigations. See PDX ¶s' 1-22. Furthermore, the
17 defendants' were not only placed on Notice by virtue of their
18 Centralize Training's, they were also repeatedly being required new
19 updated training's that covered State/Federal Legal issues. See PDX
20 ¶s' 7-9, PDF ¶s' 15(A)-(G), and 29(A)-(C).

21      Therefore, the defendants fail in their arguments made
22 in summary judgment, and must be held to answer for their wrongs
23 and the malicious violations of plaintiff's constitutional rights;
24 thus, the defendants are not entitled to judgment based on qualified
25 immunity nor any other attempted failed arguments made.

26      I declare under the penalty pursuant to 28 U.S.C. § 1746
27 that the foregoing is true and correct, and I swear under the penalty
28 of perjury as to the authentications of all produced and mentioned

48

1 documents, declarations, and Exhibits are true and correct set of

2 copies. Respectfully submitted,

3

4

5 Date executed on: 6/14/11

6

7

8

9 ALVARO QUEZADA, In Pro Se

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                49