KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Supervising Deputy Attorney General
KELLI M. HAMMOND, State Bar No. 217485
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-4638
 Fax: (916) 324-5205
 E-mail: Kelli.Hammond@doj.ca.gov
*Attorneys for Defendants*
*Hedgpeth, Nipper, Flores, and Soto*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **ALVARO QUEZADA,** | 1:08-CV-1404 FRZ |
| Plaintiff, | **REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **A. HEDGPETH, et al.,** | |
| Defendants. | |

## INTRODUCTION

In this action, Quezada asserts causes of action for violation of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, based on allegations that Defendants placed him on lockdown and modified program because of his ethnicity, and denied him all access to outdoor exercise for seven months. Defendants Hedgpeth, Soto, Flores, and Nipper moved for summary judgment on the grounds that: (1) Defendants did not violate Quezada's Fourteenth Amendment rights to equal protection when they placed all Southern Hispanic inmates housed in B-Facility at Kern Valley State Prison (KVSP) on lockdown status at various times between January and August 2007; (2) Defendants did not violate Quezada's Eighth

Amendment rights by denying outdoor exercise during a period of extreme inmate violence; (3) Defendants Hedgpeth and Soto did not retaliate against Quezada in violation of the First Amendment by locking him down with other Hispanic inmates; and (4) Defendants are entitled to qualified immunity.

In opposition to Defendants' motion, Quezada filed several documents, including a "Response to Defendants Summary Judgment Motion," "Plaintiff's Disputed Facts," and a "Declaration in Opposition to Defendants' Motion for Summary Judgment." Each of these documents fails to comply with procedural requirements for opposing a motion for summary judgment.

Aside from the procedural defects, Quezada's "opposition" provides no evidence to controvert any of the evidence supporting Defendants' motion. Defendants' motion was supported by ninety-eight undisputed facts, with references to supporting evidence. In opposing Defendants' motion, Quezada disputes, or partially disputes, most of these facts, but he does not controvert the evidence presented by Defendants in support of their motion. Rather, Quezada merely adds immaterial or unfounded information, conclusory opinions, questions about Defendants' facts, or he provides other inadmissible statements.

The uncontroverted evidence and undisputed facts show that the lockdowns at KVSP were properly imposed and maintained in the interest of safety and institutional until the inmates fomenting the violence were identified and removed from the general population. Defendants also offered uncontroverted evidence that groups not subject to the lockdown, such as inmates classified as "Others," were working with the inmates who were subject to the initial lockdowns. This necessitated broadening the scope of the lockdowns to include additional inmates.

Defendants were charged with the responsibility to restore institutional security and assure the safety of inmates and staff. Their judgments deserve deference. The Court should grant Defendants' motion for summary judgment.

/ / /

/ / /

/ / /

**ARGUMENT**

**I.   QUEZADA HAS PRESENTED NO EVIDENCE TO RAISE A TRIABLE ISSUE OF MATERIAL FACT.**

In the scheduling order, the Court set forth the requirements for opposing a motion for summary judgment. (*See* Scheduling Order of Aug. 18, 2010, ECF No. 45.) The Court stated in the order that to oppose a motion for summary judgment, Plaintiff must "set out specific facts in declarations, depositions, answers to interrogatories, or documents that contradict the facts shown in the defendant's declarations and documents." (*Id.* at 3:2-4.) The Court further noted that if Plaintiff failed to submit his own evidence in opposition to Defendants' motion, that Defendants' evidence might be taken as truth, and those claims addressed in the motion would be dismissed without trial. (*Id*. at 3:15-17.)

Quezada failed to satisfy the requirements specified in the Court's order. He submitted no evidentiary support for his opposition. Quezada cited to several exhibits, none of which were attached to the opposition. Assuming that the referenced exhibits are those attached to the complaint, those exhibits have not been authenticated. Quezada's failure to authenticate is significant in this case because some of the documents attached to the complaint are altered documents from Quezada's central file.

In addition to Quezada's lack of any documentary evidence, all of the statements made in an attempt to raise dispute factual issues are not given in any form that satisfies the requirements set forth in the Court's order, or Local Rule 260(b). Moreover, Quezada's statements are also not based on personal knowledge, or are based on unqualified opinion, and are irrelevant. Thus, the Court should disregard Quezada's statements as well as any unauthenticated documents attached to the complaint.

Quezada purports to dispute all or part of most of Defendants' ninety-eight undisputed facts supporting their motion. But the purported disputes are illusory because Quezada has presented no admissible evidence to controvert any undisputed facts. Therefore, in accordance with the scheduling order of August 18, 2010, the Court should disregard Quezada's evidence, accept the undisputed facts as given, and grant Defendants' motion.

**II.   GIVEN THE DEFICIENCIES IN QUEZADA'S EVIDENCE, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BASED ON THE UNDISPUTED FACTS.**

Here, the undisputed facts show that none of the Defendants violated Quezada's rights, under the First, Fourteenth or Eighth Amendments to the United States Constitution. Quezada was not placed on lockdown because of his race, but rather, because inmates who identified as "Other" were working in concert with the Southern Hispanic inmates. Quezada was also placed on lockdown with the Southern Hispanics because staff were concerned that his safety could be jeopardized if he refused to submit to their authority. Moreover, the lockdowns and modified programs that reduced Quezada's access to outdoor exercise were based on the legitimate penological goal of maintaining institutional safety and security. Finally, the undisputed evidence shows that Quezada was documented as "Hispanic" before his incarceration with the California Department of Corrections and Rehabilitation (CDCR), and that this classification continued upon his arrival at KVSP. Quezada was not classified as "Hispanic" by Defendants Soto and Hedgpeth in retaliation for filing grievances or participating on inmate committees.

**A.   Defendants Did Not Violate Plaintiff's Right to Equal Protection of the Laws by Placing Him on Lockdown with Other Hispanic Inmates.**

In support of their motion, Defendants presented uncontroverted evidence that, between January and August 2007, there was nonstop violence among the inmates housed on B-Facility at KVSP. (Facts 52-92.) Each time a violent episode occurred, the group that engaged in the violence was placed on lockdown or modified program. (Facts 52-92.) All inmates within the particular group were placed on lockdown or modified program to ensure the integrity of the subsequent investigations, and to reduce the possibility that those inmates not involved in the violent incident would be recruited to carry out the activities of those inmate who were involved in the violence. (Fact 55.) Because Quezada is classified as "Hispanic," he was placed on lockdown with the other "Hispanic" inmates. (Fact 93.)

In addition, during 2007, the leaders of the group of inmates who identified themselves as "Others," were working for the Southern Hispanic inmates. (Fact 16.) This caused "Others" to be placed on modified program along with the Southern Hispanic inmates. Thus, even if Quezada

4

had been classified as "Other," as he alleges he should have been, Quezada would have been subjected to the lockdowns.

Quezada argues that the lockdowns at KVSP violated his rights to equal protection and due process because the modified programs were being applied to him on the basis of race or ethnicity. Defendants provided uncontroverted evidence establishing that Quezada was locked down because staff believed he might pass information, or be assaulted if he refused to pass information. (Facts 10-16.)

Even if the Court determines that Quezada was placed on modified program, in part, because of his ethnicity, that determination does not end the equal protection inquiry.  Under *Johnson v. California*, 543 U.S. 499 (2005), the government may take actions affecting an inmate's conditions of incarceration based on race if it survives strict scrutiny.  Here, Defendants' actions survive the strict scrutiny test.

Unlike *Johnson*, in which the Supreme Court found unconstitutional the practice of routinely celling inmates together based on race because of a generalized fear that this practice might minimize the potential for violence, the Defendants in this case imposed the modified programs and lockdowns in response to actual violence.  The threats and violent incidents for which Quezada was locked down all involved inmates classified as Southern Hispanic.  A review of the documentary evidence offered by Defendants shows that the program modifications were reviewed on an ongoing basis, and that the restrictions were lifted as soon as Defendants believed possible. (Facts 52-92).  Defendants had an obligation to protect those housed at KVSP from the threat of substantial violence.  Defendants' evidence demonstrates that their actions were taken in fidelity to that obligation, and were necessary to serve that compelling state interest.

Defendants' evidence also demonstrates that the actions taken were as narrowly tailored as reasonably possible to accomplish the objective of stemming the ongoing violence.  The modified programs put into operation were in response to acts of violence.  (Facts 52-92.)  The inmates who were locked down were either involved in the violence, working in concert with those involved in the violence, or likely to be recruited to work for those inmates involved in the violence.  Quezada's admission that he might pass information for the Southern Hispanic inmates

if he, himself, were not placed on lockdown, demonstrates that Defendants' actions were as narrowly tailored as possible to effectively to control specific acts or threats of violence existing at KVSP.   In this case, the modified programs imposed on Quezada from January through August 2007 were narrowly tailored to serve a compelling state interest.  Accordingly, Defendants are entitled to summary judgment on Quezada's Fourteenth Amendment claims.

**B.    Quezada Was Not Classified as a Member or Associate of the Mexican Mafia.**

Throughout his opposition, Quezada argues that he was not provided with the due process protections required when an inmate is classified as a member of a prison gang.  Quezada contends that the validation and verification requirements of California Code of Regulations, title 15, Section 3378(c), apply because he was classified as an associate or affiliate of the Mexican Mafia.  This Section sets forth in detail the required procedures for validating an inmate as either a member or associate of a gang.  However, there was no such validation in this case.  The undisputed evidence establishes that Quezada was classified as "Hispanic" by the CDCR because that is how he was classified on his rap sheet. (Facts 5-7.)  There is no evidence that Defendant ever validated, or tried to validate, Quezada as a member of a prison gang or disruptive group.  Thus, no such protections were required.

Moreover, Quezada does not allege that he was subjected to any of the additional restrictions placed on validated gang members or associates, such as placement in the Security Housing Unit.  There is no evidence to support Quezada's assertion that he was entitled to the due process requirements of a formal gang validation process.  Accordingly, Defendants are entitled to summary judgment on this claim.

**C.    Because of the High Risk of Serious Injury, Quezada Was Denied Outdoor Exercise Only When Necessary to Quell Violence.**

Prison officials may violate the Eight Amendment's prohibition on cruel and unusual punishments if they deprive the inmate of "a single, identifiable human need such as food, warmth or exercise."  *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Thomas v. Ponder*, 611 F.3d 1144, 1151–52 (9th Cir. 2010) ("[E]xercise is one of the most basic human necessities protected by the Eighth Amendment.")

However, to sufficiently allege an Eighth Amendment violation, Quezada must "objectively show that he was deprived of something 'sufficiently serious,' "and "make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"[O]rdinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes. *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). A prohibition on outdoor exercise of six weeks is a "sufficiently serious" deprivation to support an Eighth Amendment claim. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000); *Allen v. Sakai*, 48 F.3d 1082, 1086 (1994).

If the inmate alleges facts sufficient to show that his deprivation was objectively sufficiently serious, he must next "make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." *Foster*, 554 F.3d at 812 (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference involves a two part inquiry. First, the inmate must show that the prison officials were aware of a "substantial risk of serious harm." *Thomas*, 611 F.3d at 1150 (quoting *Farmer*, 511 U.S. at 837). This part of the inquiry may be satisfied if plaintiff "shows that the risk posed by the deprivation is obvious." *Id.* Second, the inmate must "show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Id.* (quoting *Farmer*, 511 U.S. at 844).

The Ninth Circuit has identified outdoor exercise claims as "context-sensitive," *Richardson v. Runnels*, 594 F.3d 666, 673 (9th Cir. 2010), for they require consideration of the "individual facts of each case," including the length and severity of the deprivation, the circumstances giving rise to it, and the deference owed to prison officials charged with both a "duty to keep inmates safe" and the need to establish order and security, which must be "balance[d] . . . against other obligations that our laws impose." *See Norwood v. Vance*, 591 F.3d 1062, 1068–1070 (9th Cir. 2010.) Thus, because "a prisoner's right to outdoor exercise is [not] absolute and indefeasible, [nor does] it trump all other considerations," it usually "require[s] a full consideration of context." *Richardson*, 594 F.3d at 672 (citing *Norwood*, 591 F.3d at 1068).

In this case, the lockdowns and modified programs that Quezada experienced meet neither the subjective or objective elements of an Eighth Amendment claim. First, the lockdowns or modified programs between January and August 2007 generally lasted no more than two to three weeks. These are not sufficiently "substantial" deprivations to satisfy the objective component of an Eighth Amendment claim. *See Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980) (thirty-day emergency lockdown held not to violate the Eighth Amendment); *May*, 109 F.3d at 565 (22 days).

One lockdown lasted sixty days, however, during this time there was ongoing inmate violence, weapons found, and information was uncovered that there was an impending "war" between the Black and Hispanic inmates. (Facts 74-92.) These facts, all of which are supported by uncontroverted evidence, make clear that the inmates in B-Facility were not permitted to leave their cells for outdoor exercise during the lockdown because of the perceived high risk of renewed violence and the actual violence that did occur. Prison officials have some leeway in assessing when an inmate's outdoor exercise right may be temporarily denied in the interests of prison security or inmate safety. *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982). Measured objectively, Defendants did not violate Plaintiff's right to outdoor exercise under the circumstances because Defendants' actions were taken "to reestablish order in [the] prison . . .." *Id.* For these reasons, Defendants' are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

**D.  Defendants Had a Valid Penoligical Reason for Placing Quezada on Lockdown with Other Hispanic Inmates.**

Defendants provided uncontroverted evidence that inmates classified as Hispanic or Mexican by arresting agencies are classified the same way by CDCR. (Fact 5.) Quezada was admitted to the custody of CDCR on August 15, 2000, and was classified as "Mexican" at intake. (Fact 6.) When Quezada transferred to KVSP in 2005, he was classified as "Hispanic."

Quezada was placed on modified program with other Hispanic inmates in an effort to preserve institutional security. At KVSP Southern Hispanic is a disruptive group comprised primarily of Hispanic inmates from Southern California. (Fact 10.) Because of the size of their

8

membership at KVSP, the "Southern Hispanic" inmates are extremely influential and use their members, associates, and the "Southerners" to exercise control over all inmates from Southern California, whether or not they consider themselves to belong to the group. (Fact 11.) Quezada is from Southern California, and would be subject to the influence or control of this group. (Fact 12.) If Quezada failed to submit to the "Southern Hispanic" inmates, he would be subject to retribution and assault. (Facts 11-13.)

Inmates who consider themselves as belonging to the group classified as "Others" are often individuals of Hispanic ancestry. (Fact 14.) The "Others" generally have to abide by the authority of the most influential group, and at KVSP, that is the "Southern Hispanic" inmates. (Fact 15.) In fact, during 2007, many of the inmates classified as "Others" were working for the "Southern Hispanic" inmates. (Fact 16.)

Defendants did not act to affiliate or restrict Quezada because he engaged in protected activity. Quezada was placed on modified program and lockdown with the Hispanic inmates because that is how he was classified when he came to KVSP, and to do otherwise would have subjected either the institution, or Quezada, to an unnecessary risk.

E. **All Defendants Are Entitled to Qualified Immunity Because They Did Not Violate Quezada' Constitutional Rights and Their Conduct Was Reasonable.**

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

All of the Defendants are entitled to qualified immunity because the undisputed facts show that Defendants violated no constitutional right. And, assuming they did violate such a right, they are entitled to qualified immunity because their conduct was objectively reasonable. For this reason too, the Court should grant this motion.

///

///

## CONCLUSION

Quezada has presented no evidence to raise any issue of triable fact. The undisputed facts establish that Defendants did not violate Quezada's First, Fourteenth, or Eighth Amendment rights. Moreover, Defendants are entitled to qualified immunity. Accordingly, the Court should grant this motion for summary judgment.

Dated: July 29, 2011

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
MONICA N. ANDERSON
Supervising Deputy Attorney General

*/s/ Kelli M. Hammond*

KELLI M. HAMMOND
Deputy Attorney General
*Attorneys for Defendants
Anthony Hedgpeth, Ronald Nipper and John Soto*

SA2009313562
31310220.doc