IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alvaro Quezada,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>A. Hedgpeth, et al.,<br><br>　　　　Defendants. | No. CV 1-08-1404-FRZ<br><br>**ORDER** |

　　　　Plaintiff Alvaro Quezada filed this civil rights action pursuant to Title 42 U.S.C. § 1983. The Second Amended Complaint (Doc. 18) filed June 1, 2009 is the operative complaint, alleging three grounds for declaratory relief and monetary damages as follows:

> (1) Plaintiff's Fourteenth Amendment equal protection rights were violated when Defendants placed Plaintiff and other Hispanic inmates on lock-down for an extended period of time but did not subject inmates of other races to the same treatment, conspired to violate Plaintiff's constitutional rights, and failed to correct the constitutional violations by denying his grievances;
>
> (2) Plaintiff's Eighth Amendment rights were violated when Defendants subjected Plaintiff to a lock-down lasting approximately 8 months during which he was confined to his cell for 24 hours per day with no outdoor exercise, conspired to violate Plaintiff's Eighth Amendment rights, and failed to correct the constitutional violations by denying his grievances; and
>
> (3) Defendants Hedgpeth, Soto, and Grannis violated Plaintiff's First Amendment rights when they retaliated against Plaintiff - for filing grievances and acting as an "I.A.C. Rep." [Inmate Advisory Council representative] - by "affiliating" Plaintiff with the criminal investigation of a prison gang to which he did not belong, and by denying Plaintiff's grievances related to the retaliation.

The Court's screening order (Doc. 19) dismissed the conspiracy claims set forth in the three counts and dismissed Defendant Grannis.

Before the Court for consideration is Defendants' Motion for Summary Judgment, whereby Defendants Hedgpeth, Flores, Nipper and Soto seek judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that the facts as presented and viewed in the light most favorable to the Plaintiff show that Defendants (1) did not violate Plaintiff's Fourteenth Amendment right to equal protection when they subjected Hispanic inmates to lock-down following assaults on staff by members of the Southern Hispanic ("SH") disruptive group; (2) did not violate Plaintiff's Eighth Amendment right to outdoor exercise by placing Hispanic inmates on lock-down and modified program for eight months, during which SH inmates engaged in violent activities; and further because (3) Defendants Hedgpeth and Soto did not retaliate against Plaintiff in violation of the First Amendment by classifying him as Hispanic. Defendants also argue that they are entitled to qualified immunity because the challenged conduct was objectively reasonable and not in violation of Plaintiff's constitution rights.

**Factual Background**

Plaintiff was committed to the California Department of Corrections and Rehabilitation (CDCR) in 2000, and was classified as "Hispanic" or "Mexican" as referenced in his criminal history documentation. [Defendants' Statement of Undisputed Facts, Exhibit A-1; A-3]

Plaintiff was transferred to Kern Valley State Prison ("KVSP") in 2005. [Id., A-4]

During 2007, Plaintiff was housed on Facility B at KVSP, where all named Defendants were prison officials.

Between January 3, 2007 and August 20, 2007, several violent incidents occurred at KVSP, which necessitated the modification of inmate programming on Facility B, which resulted in the curtailment of privileges for the affected inmates, which included, but was not limited to, inmates being fed in their cells and the denial of dayroom, outdoor recreational activities, phone calls, visiting, and religious services. Inmates were further escorted to and

1   from showers, and were generally required to be placed in restraints whenever they left their
2   cells. [Id., Exhibit E]
3       The 2007 lockdowns/modified programming that affected Plaintiff resulted from the
4   violent acts by inmates, including but not limited to, riots between inmates, the murder of
5   an inmate, a serious stabbing assault that necessitated the use of deadly force, attempted
6   murder, conspiracy to assault inmates and correctional staff, civil unrest amongst inmates,
7   as well as the introduction of narcotics and other contraband into the prison.
8       The correctional staff and administrators proclaim to take all threats of violence and
9   disruptions seriously, a concern that is heightened if there is evidence or information that
10  attacks or disruptions may be part of an institution or system wide scheme because it could
11  lead to a large-scale riot situation, creating a more serious threat to the safety and security of
12  the prison.
13      Based on information gathered during investigations, and the experience of prison
14  officials, the Defendants determined that the violent activities underlying the modified
15  programming posed serious threats to institutional safety and security. The restrictions on
16  Facility B at KVSP in 2007, were approved to ensure the safety and security of inmates and
17  staff, and to enable prison staff to investigate the unusually high level of violence,
18  disruptions, planned violence, attempted murder and murder by inmates.
19      When investigations yielded a degree of certainty that further violence would not
20  develop, Defendants implemented the gradual and incremental return to normal
21  programming.  For each of the modified programs implemented, Defendants express that
22  they believed that the restrictions imposed would be effective at stopping the violence and
23  helping to restore order.  Defendants assert that at no time were any of the restrictions that
24  were imposed meant to be punitive or implemented in bad faith.

### Legal Standard

26  Summary judgment is appropriate pursuant to Rule 56(a), Fed.R.Civ.P., when there
27  exists "no genuine dispute as to any material fact and the moving party is entitled to
28  judgment as a matter of law."  The moving party bears the responsibility of informing the

district court of the basis for its motion and identifying what matters demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute does exist as to a material fact. *Matsushita Elec. Industry Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). The opposing party need not establish that a material issue of fact is conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec/ Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Material facts are those that may affect the outcome of the case; any dispute thereto is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); *Long. v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

For purposes of reviewing a motion for summary judgment, all facts and evidence are viewed in the light most favorable to the nonmoving party. *Id.*; *Olsen v. Idaho State Bd of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004). To demonstrate that a genuine dispute exists, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

**Discussion**

**I. Equal Protection**

Defendants assert that they are entitled to summary judgment on Plaintiff's equal protection claim based on Plaintiff's failure to state a claim. Defendants further assert that the measures taken are shown to have been narrowly tailored to further a compelling government interest. To allege an equal protection violation under 42 U.S.C. § 1983, Defendants submit that Plaintiff must prove:

>(1) the defendants treated plaintiff differently from others similarly situated; (2) the unequal treatment was based on an impermissible classification; (3) the defendants acted with discriminatory intent in applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory classification. *Moua v. City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D.Cal. 2004); *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (a § 1983 plaintiff alleging denial of equal protection "must show that the defendants acted with an intent or purpose to discriminate against plaintiff based on membership in a protected class"); *Van Pool v. City and County of San Francisco*, 752 F.Supp. 915, 927 (N.D. Cal. 1990) (§ 1983 plaintiff must prove purposeful discrimination by demonstrating that he "receiv[ed] different treatment from that received by others similarly situated," and that the treatment complained of was under color of state law).[1]

Defendants argue that the undisputed facts do not support Plaintiff's constitutional violation claim, alleging that his inclusion in the lockdowns for Hispanic inmates housed at Facility B of KVSP constitutes racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, because the program modifications that occurred between January and August 2007 at Facility B were imposed to be effective at stopping the violence and helping to restore order each time an identified group of inmates engaged in violent behavior or staff received information that a group was planning an assault. Defendants argue that the evidence shows that the program modifications were not imposed to punish any particular inmate or ethnic group, conceding that when Hispanic inmates engaged in acts of violence, they were placed on modified program, whether engaged in violent acts within their group or whether the violence involved other groups. Defendants emphasize that when more than one group was involved, both groups were placed on modified program.

Defendants argue that Plaintiff does not identify how the policy of placing the involved groups on modified program burdened Hispanic inmates more than inmates of other races as alleged; nor can the Plaintiff establish that any of the Defendants acted with an intent or purpose to discriminate against him based upon his membership in a protected class. Defendants assert that the undisputed evidence shows that the Defendants treated all groups equally, and that while some groups may have been subjected to a modified program for a

---

[1] Defendants' Notice and Motion for Summary Judgment, page 3.

- 5 -

1  longer period of time, there is no evidence to indicate that the length of any modified
2  program was based on race or ethnicity of a particular group, but rather on the legitimate
3  penological interest of maintaining the security of the institution.

4　　　　Defendants further contend that the measures taken were narrowly tailored to the
5  compelling government interest of preventing prison disturbances and reducing further
6  violence associated therewith, and thus, under the standard of strict scrutiny which applies
7  to racial classifications, the Defendants have shown that reasonable minds could not differ
8  regarding the necessity of the racial classification in response to the subject prison
9  disturbance, and that the modified programs implemented were the least restrictive
10 alternative and narrowly tailored to achieve legitimate prison goals as required under *Johnson*
11 *v. California*, 543 U.S. 499, 504, 125 S.Ct. 1141 (2005) and *Richardson v. Runnels*, 594 F.3d
12 666, 672 (9th Cir. 2010).

13　　　　Defendants conclude that Plaintiff cannot show that inmates of other races were
14 treated differently than the Hispanic inmates with regard to the modified programs; nor is
15 there any evidence that the Defendants acted with discriminatory intent.

16　　　　Plaintiff argues in opposition that he "was denied outdoor exercise for months at a
17 [time] and confined to a cell for 24 hours a day, simply because [he] was of (HISPANIC
18 ORIGIN) and the defendants used plaintiff's race as a pretext, in order to justify their
19 punitive confinement of plaintiff and mask their true motives of vindictive retaliations."[2]

20　　　　Plaintiff argues repeatedly that he "was maliciously subjected to multiple back to back
21 race based punitive deprivations of confinements that was being imposed against the (EME)
22 [Mexican Mafia] and (SH) groups, groups that plaintiff never affiliated too."[3]

23　　　　Plaintiff claims a protected liberty interest in not being placed on a modified program
24 or lock-down and asserts that his rights were violated when prison officials unlawfully
25 suspended Plaintiff's privileges while preferentially granting inmates of other races the same

---

[2] Brief in Opposition to Defendants' Summary Judgment Motion, page 3.

[3] Id., page 2.

privileges, based on the pretext of conducting a criminal investigation related to prison gang violence.

Setting forth the correct standard for strict scrutiny, Plaintiff argues that Defendants do not meet the burden to show that the actions imposed, applying modified programs on the basis of racial classification, are narrowly tailored to serve a compelling penal interest, and surmises that race was the retaliatory factor.

The Court finds the recent district court opinions of *Martinez v. Allison*, 2014 WL 1102704 (E.D.Cal.) and *Rhinehart v. Cate*, 2014 WL 573495 (N.D.Cal.), from the Eastern and Northern Districts of California, particularly instructive for this Court's review, in providing a background for modified programming within the California Department of Correctional and Rehabilitations system. In *Rhinehart*, the court explained that "evidence of inmate violence or potential violence sometimes requires the restriction of inmate privileges at the prison for the security and safety of both inmates and staff" specifically at KVSP, the correctional institution at issue in the case at bar.

The State is required to treat all similarly situated people equally. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013)(citing *City of Cleburne v. Cleburne Living Ctr.*, 743 U.S. 432, 439, 105 S.Ct. 3249 (1985))  It is well established that prisoners are protected under the Equal Protection Clause from invidious discrimination based on race. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann*, 707 F.3d at 1123 (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2, 92 S.Ct. 1079 (1972))(citations omitted).

When a claim of equal protection violation has been raised, a court must determine whether the regulation or practice, claimed to have violated the prisoner's equal protection rights, is reasonably related to legitimate penological interests under the balancing test set forth in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254 (1987); see also *Washington v. Harper*, 494 U.S. 210, 223-25, 110 S.Ct. 1028 (1990).

A review under strict scrutiny applies to racial classifications in prisons, especially if the plaintiff comes forward with evidence of intentional race-based discrimination by prison officials. See *Johnson*, 543 U.S. at 505-09. Thus, Defendants must show that reasonable minds could not differ regarding the necessity of the racial classification at issue in response to the subject prison disturbances and violence, and further that it imposed the least restrictive alternative and that the action taken was narrowly tailored to achieve the legitimate penological goals of the institution.

The Court finds that the Defendants have presented evidence which "amply demonstrate[s] that the race-based security measures complained of by Plaintiff were narrowly tailored and were implemented to resolve the compelling government interest of restoring prison security and discipline." *Martinez*, 2014 WL 1102704, *18 (citations omitted).[4]

As further explained by the court in *Martinez*, "[n]o dispute exists that the state has a compelling interest in prison security, nor can there be such a dispute." *Id*, *16 (citing *Greene v. Solano County Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (in turn citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13, 125 S.Ct. 2113 (2005). "Indeed, 'deference is due to institutional officials' expertise in this area." *Id*. (quoting *Cutter*, 544 U.S. at 725 n. 13.)

Based on the facts and evidence submitted by the Defendants for review, and absent Plaintiff presenting any evidence or factual allegations to controvert such, the Court finds that the Defendants have shown that the modified programming imposed and the measures taken by the Defendants were narrowly tailored to establish control and to maintain security at KVSP in the interest of the safety of the institution and all inmates, including the Plaintiff.

Accordingly, the Court finds that Plaintiff has failed to raise a triable issue of fact that he was subjected to racial discrimination in violation of his rights to equal protection under the Fourteenth Amendment. Defendants are therefore entitled to judgment as a matter of law on this claim.

---

[4]Defendants' Statement of Undisputed Facts, Exhibit E.

**II. Eighth Amendment Claim**

Defendants argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim against cruel and unusual punishment, which alleges that Plaintiff's rights were violated when Defendants subjected Plaintiff to a lock-down which lasted approximately 8 months during which Plaintiff was confined to his cell for 24 hours per day with no outdoor exercise. Plaintiff further alleges that the Defendants also conspired to violate Plaintiff's Eighth Amendment rights, and failed to correct the constitutional violations by denying his grievances.

Defendants cite Ninth Circuit law that recognizes that some form of outdoor exercise is important to maintaining the physical and mental health of prisoners. *Spain v. Procunier,* 600 F.2d 198, 199-200 (9th Cir. 1979). Outdoor exercise, however, can be restricted and/or suspended under certain circumstances. *Id.*; *Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982). Defendants argue that concurrent to the obligation to provide some form of outdoor exercise, prison officials have a duty to prevent violence within the prison. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970 (1994). Thus, prison officials are accorded wide deference in determining the methods necessary to restore and maintain order. *Hayward. V. Procunier*, 629 F.2d 559, 603 (9th Cir. 1980).

In conclusion, Defendants contend that Plaintiff can offer no admissible evidence to contradict that the actions taken were reasonable and necessary or to show Defendants acted with any wanton intent.

In response, Plaintiff argues that he was denied medical attention for "anxiety, sleep depression, emotional distress, severe headaches, and muscle cramping etc., all due to the defendants' animus deprivations of outdoor exercise that was simply instituted to cause extreme suffering" and that the modifications that the Defendants implemented were never in response to an emergency lockdown situation or to serve a security purpose or interest.

Plaintiff fails, however, to present any evidence or facts to support his contentions and establish that a genuine dispute exists, such that a reasonable jury could return a verdict in his favor. See *Long,* 442 F.3d at 1185.

Again, the district court's analysis in *Rhinehart* is instructive on the analysis of a deprivation of outdoor exercise claim for purposes of Eighth Amendment review of conditions and confinement.  As the court explained, the Ninth Circuit, though recognizing "that prolonged deprivations of outdoor exercise, *when combined with other serious deprivations*, may give rise to an Eight Amendment claim ... has also concluded that the deprivation of outdoor exercise for long-periods of time does not offend the Eight Amendment when curtailment of such privileges are necessary to prison security." 2014 WL 573495, *8 (citing *Spain*, 600 F.2d at 199; *LeMaire*, 12 F.3d at 1458).

*Rhinehart* relies in part on the holding of *Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1465 (2011), in which the Ninth Circuit found defendants were entitled to qualified immunity for deprivation of outdoor exercise during four extended lockdowns over the course of two years because a reasonable officer could have believed that restricting a plaintiff's outdoor exercise in the midst of ongoing prison violence was consistent with the Eight Amendment, *Id*. at 1068-70; and that "[t]he court also concluded that prison officials' judgment was reasonable in concluding that permitting outdoor exercise carried a greater risk of harm than denying outdoor exercise for extended periods of time. *Id.* at 1070.  Moreover,

> Finally, the court mentioned several California district court cases which have similar fact patterns to Rhinehart's in support of the fact that no authority has clearly established a contrary conclusion that a reasonable officer could believe that restricting an inmate's outdoor exercise was inconsistent with the Eighth Amendment. *Id*. ("Not surprisingly, our district courts have found an absence of Eighth Amendment liability on facts similar to these. *See, e.g. Jones v. Garcia*, 430 F.Supp. 2d 1095, 1102-03 (S.D.Cal. 2006) (finding no Eighth Amendment violation where prisoner was denied outdoor exercise for ten months - double the longest single period that Norword's exercise was restricted-because of ongoing violence);  *Hayes v. Garcia*, 461 F.Supp.2d 1198, 1201, 1207-08 (S.D.Cal. 2006) (same for nine-month denial of outdoor exercise); *Hurd v. Garcia*, 454 F.Supp.2d 1032, 1042-45 (S.D.Cal.2006) (same for five-month denial).").

2014 WL 573495, *8.

The district court's opinion in *Martinez* further explains that "[a] prisoner's claim does not rise to the level of an Eight Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the

- 10 -

1 prison official 'acted with deliberate indifference in doing so.'" 2014 WL 1102704, *15
2 (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citations omitted).

3       Upon review of the facts and the evidence presented in light of the legal authority
4 cited, the Court finds that Plaintiff has failed to show that the Defendants "were aware of a
5 'substantial risk of serious harm" to [Plaintiff's] health or safety and that there was no
6 'reasonable justification for the deprivation in spite of that risk." *Id.* (citing *Thomas v.*
7 *Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quoting *Farmer*, 511 U.S. at 844).

8       The Court further finds that "[t]he circumstances, nature, and duration of the
9 deprivation" of which Plaintiff complains, balanced with the prison officials substantial
10 compelling interest to maintain the safety and the security at KVSP, and based on the
11 evidence submitted and the history of violence at the institution, do not rise to the level of
12 being "grave enough to form the basis of a viable Eight Amendment claim." *Id.* (citing
13 *Johnson*, 217 F.3d at 731). Accordingly, Defendants are entitled to summary judgment on
14 Plaintiff's Eighth Amendment claim.

15 **III. First Amendment Retaliation Claims**

16       Defendants argue that for Plaintiff to prevail on his First Amendment retaliation
17 claim, alleging that Defendants Soto and Hedgpeth retaliated against him by affiliating him
18 with the criminal activities of a prison gang and for the filing of grievances and participating
19 as a representative on the Inmate Advisory Counsel, Plaintiff must show that the Defendants
20 took adverse action against him because he engaged in protected conduct; that such action
21 would chill or silence a person of ordinary firmness from further First Amendment activities,
22 and that the action did not reasonably advance a legitimate penological goal. *Rhodes v.*
23 *Robinson*, 408 F.3d 559, 567-69 (9th Cir. 2005).

24       Defendants concede that prisoners may not be retaliated against for exercising their
25 right of access to the courts, *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995); nor
26 do Defendants dispute that the filing of grievances and serving on prisoner advisory
27 committees are protected conduct. Defendants argue however, that the actions that were
28 taken are insufficient to give rise to a First Amendment claim as a matter of law as alleged,

1  because no action was taken against the Plaintiff because of such conduct, but rather to serve
2  a legitimate correctional goal.

3      Defendants argue that to present a *prima facie* claim of retaliation, Plaintiff has the
4  burden of showing that the "substantial" or "motivating" factor behind the alleged conduct
5  was retaliation for the exercise of the protected activity.  *Soranno's Gasco, Inc. v. Morgan*,
6  874 F.2d 1310, 1314 (9th Cir 1989).   Defendants further argue that courts, in reviewing a
7  claim of retaliation,  must "'afford appropriate deference and flexibility' to prison officials
8  in the evaluation of proffered legitimate penological reasons for conduct alleged to be
9  retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)(quoting *Sandin v. Conner*,
10  515 U.S. 472, 482, 115 S.Ct. 2293 (1995)).

11      Citing *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) and *Rizzo v. Dawson*,
12  778 F.2d 527, 532 (9th Cir. 1985), Defendants further argue that an action taken to advance
13  a legitimate penological goal, including but not limited to, the preservation of institutional
14  order, discipline and security, is not retaliatory conduct.

15      Defendants emphasize that the undisputed evidence shows that Plaintiff came into
16  KVSP classified as "Hispanic" and that he remained classified as "Hispanic" for purposes
17  of the modified programs, and that he was placed on the modified program along with all
18  other "Hispanic" inmates in an effort by prison officials to preserve the security of the
19  institution by preventing the Southern Hispanic inmates from exercising control over Plaintiff
20  or assaulting him if he refused to carry out the group's orders, irregardless of whether he
21  considered himself as belonging to the group.

22      Defendants conclude that because Plaintiff was placed on a modified program with
23  other Hispanic inmates based on his classification, and not based on his filing of grievances
24  or participation in a program, they are entitled to summary judgment on Plaintiff's First
25  Amendment retaliation claim.

26      Plaintiff opposes the Defendants' arguments by contending that he was punished as
27  a direct result for exercising a protected activity of serving as a representative on the Inmate
28  Advisory Council, and that Defendants' modified program was merely a means to punish the

Plaintiff and designed to retaliate and discourage him from complaining or criticizing prison policies in violation of his First Amendment rights.

The Court finds that Plaintiff has failed to raise a triable issue of fact in regard to his claim of First Amendment retaliation.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)(citations omitted).

Plaintiff bears the burden of showing that the restrictions imposed were the "substantial" or "motivating" factor behind the Defendants' actions, and in retaliation for the exercise of protected conduct, and that the actions by the Defendants "advanced no legitimate penological interest." *Williams v. Miller*, 2013 WL 1089708, *6 (N.D.Cal.))(citing *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997)).

Moreover, as Defendants assert, the Court must "'afford appropriate deference and flexibility' to prison officials in the valuation of proffered legitimate penological reasons for conduct alleged to be retaliatory." This is especially important when "state officials [are] trying to manage a volatile environment." *Pratt*, 65 F.3d at 807 (citation omitted).

The Court finds that Plaintiff has failed to meet his burden to show that his serving as a representative on the Inmate Advisory Council or filing grievances "was a substantial or motivating factor for the alleged retaliatory action." See *Hines*, 108 F.3d 267-68. Defendants do not dispute that the filing of grievances, questioning of prisoner policy, or serving on prisoner advisory committees are protected conduct. Plaintiff has failed, however, to show by specific facts or evidence that his placement on modified program with other Hispanic inmates was connected to, or for the purpose of having a chilling effect on, Plaintiff's exercise of his First Amendment rights. Accordingly, Defendants are entitled to summary judgment on this claim.

## IV. Qualified Immunity

Defendants argue in the alternative that they are entitled to qualified immunity on Plaintiff's Eight and Fourteenth Amendment Claims based on the fact that they acted in an abundance of caution to maintain the safety and security of the institution and "were continuously, prudently, and successfully looking out for the safety, security, and welfare of all involved, staff and prisoners alike. This scenario is precisely what the doctrine of qualified immunity is designed to cover." *Noble v. Adams*, 646 F.3d 1138, 1148 (9th Cir. 2011). Defendants contend that the conduct at issue does not constitute a violation of a clearly established constitutional right of which a reasonable person would have known, based on the fact the undisputed evidence shows that Hispanic inmates were not treated differently from other similarly situated inmates, and because Plaintiff has not established that Defendants acted with discriminatory intent in locking down the groups of inmates who were involved in violent behavior.

In response, Plaintiff argues, under the two-part inquiry set forth in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001), that whether the facts, [t]aken in the light most favorable to the party asserting the injury"show that the Defendants' conduct violated a constitutional right; and whether the right was clearly established at the time of the alleged violation. Under this analysis, Plaintiff argues that the Defendants were required and had a duty to protect his rights, and that the Defendants' failure to act accordingly was inconsistent with this duty, and therefore they are not entitled to immunity.

The defense of qualified immunity shields prison official from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Plaintiff correctly sets forth the two-part analysis set forth in *Saucier*, which requires the Court to determine (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show Defendants' conduct violated a constitutional right; and (2) whether the right(s) was clearly established when viewed in the context of the case at bar. See *Saucier*, 533 U.S. at 201.

Because the Court has determined in its review of Plaintiff's claims on the merits that no constitutional right has been violated based on the allegations and facts established on the record, "there is no necessity for further inquires concerning qualified immunity." *Id*.

**Conclusion**

The Court finds that Defendants are entitled to summary judgment. The evidence and facts as presented show that the modified programs imposed were reasonable in response to the reoccurring violent incidents and served a compelling government interest. There is no evidence to suggest that Defendants were deliberately indifferent to Plaintiff; nor has Plaintiff shown that the Defendants imposed the modified program with an intent to discriminate. Moreover, Plaintiff has failed to factually dispute that the modified program imposed was the least restrictive means available under the circumstances.

Furthermore, there is no evidence to support that the Defendants retaliated against Plaintiff by classifying him as Hispanic for purposes of modified programs, but rather, the classification was assigned to Plaintiff prior to his commitment to CDCR.

Defendants have also shown that they are alternatively entitled to judgment on the basis of qualified immunity.

Based on the foregoing,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. #68) is GRANTED and this action is hereby dismissed;

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly.

DATED this 24th day of September, 2014.

_____
Frank R. Zapata
Senior United States District Judge